1  THOMAS E. MONTGOMERY, County Counsel
   County of San Diego
2  By ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
   Telephone:  (619) 531- 5279
4  E-mail: robert.ortiz@sdcounty.ca.gov

5  Attorneys for Defendants County of San Diego, William Gore and Alfred Joshua, M.D.

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 THE ESTATE OF PAUL SILVA by and )      No. 18cv02282-MMA-MSB
   through its successors-in-interest LESLIE )
12 ALLEN and MANUEL SILVA,         )      **MEMORANDUM OF POINTS AND**
   MANUEL SILVA, and LESLIE ALLEN, )      **AUTHORITIES IN SUPPORT OF**
13                                  )      **DEFENDANTS' MOTION TO**
              Plaintiff,            )      **DISMISS PLAINTIFF'S COMPLAINT**
14                                  )
        v.                          )      [Fed.R.Civ.P., 12(b)(6)]
15                                  )
   CITY OF SAN DIEGO, SHELLEY       )
16 ZIMMERMAN in her individual      )      Date:, January 7, 2019
   capacity, ANDREW MURROW in his   )      Time: 2:30 p.m.
17 individual capacity, COUNTY OF SAN )     Courtroom: 3D
   DIEGO, WILLIAM GORE in his       )      Judge:  Hon. Michael M. Anello
18 individual capacity, ALFRED JOSHUA, )
   an individual, LIBERTY HEALTHCARE )     NO ORAL ARGUMENT PURSUANT
19 CORPORATION, a Pennsylvania      )      TO LOCAL RULE 7.1(D)(1)
   Corporation, COMMUNITY           )
20 RESEARCH FOUNDATION, a           )
   California Corporation, and DOES 1 - )
21 100                              )
                                    )
22            Defendants.           )
23 ─────────────────────────────── )

24 ///

25 ///

26 ///

27 ///

28 ///

# TOPICAL INDEX

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.    INTRODUCTION .................................................................1

II.   FACTUAL ALLEGATIONS ...................................................2

III.  LEGAL STANDARD ...........................................................3

IV.   ARGUMENT.......................................................................4

   A. The Claims Against Dr. Joshua And Sheriff Gore In Their
      Individual Capacities Should Be Dismissed Because They Are
      Duplicative Official Capacity Claims And There Is No Plausible
      Basis For Personal Liability ...................................................4

   B. The Second Cause Of Action (Deliberate Indifference To Serious
      Medical Needs) Against Dr. Joshua Should Be Dismissed. ................5

   C. The Sixth Cause Of Action (Failure To Train) Should Be Dismissed
      Because The Complaint Lacks Plausible Allegations To Support
      Liability. ............................................................................7

      1. The Complaint Contains Improper and Insufficient Conclusory
         Allegations .....................................................................7

      2. The Complaint Lacks Factual Allegations to Support
         Causation…………………………………………………………..8

      3. No Pattern of Prior Similar Constitutional Violations……………9

   D. The Seventh And Eighth Causes Of Action (Failure To Supervise,
      Discipline And Investigate) Should Be Dismissed Because The
      Complaint Lacks Plausible Allegations To Support Liability…… ….11

   E. The Ninth Cause Of Action (*Monell*) Should Be Dismissed
      Because The Complaint Lacks Facts To Support Municipal
      Federal Civil Rights Liability….……………………………………..12

   F. The Tenth Cause Of Action (Wrongful Death-CCP § 377.60) By
      The Estate Fails As A Matter  Of Law………………………………13

   G. The Eleventh Cause Of Action (Negligence) By Manuel Silva And
      Leslie Allen Fails As A Matter Of Law………..................................13

H. The Twelfth Cause Of Action (Unruh Civil Rights Act - CC § 51) By The Estate Fails As A Matter Of Law And Should Be Dismissed…………………………………………………………...14

1. Jails Are Not Business Establishments……………………………14

2. Decedent's Disability Is Not Causally Linked to Any Purported Disparate Treatment or Action………………………………………..15

I. The Fourteenth And Fifteenth Causes Of Action (ADA And Rehabilitation Act) By The Estate Fail As A Matter Of Law And Should Be Dismissed……………………………………………………..16

J. The Requests For Declaratory And Injunctive Relief Are Moot And Should Be Dismissed……………………………………………………17

1. Plaintiff's Prayer for Injunctive  Relief Should be Dismissed……..18

2. Plaintiff's Prayer for Declaratory Relief Should be Dismissed.........18

V.    CONCLUSION……………………………………………………19

ii

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Addison v. California Institution for Men,* 2016 WL 8732476 (E.D. Cal. 2016).............. 16

*Alvarez v. Hill,* 667 F.3d 1061 (9th Cir. 2012) ................................................................20

*Arreola v. California Dep't of Corr. & Rehab.,* 2017 WL 1196802, at *2 (N.D.
    Cal. Mar. 31, 2017)..................................................................................................18

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) .......................................................4, 5, 13, 14, 16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)................................................4, 5, 13, 16

*Brown v. Brown,* 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) ............................17

*Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996) .............................................................17

*Castillo v. City of Sutter,* 2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015) ...............17

*Cholla Ready-Mix Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004).  .....................................4

*City of Canton v. Harris,* 489 U.S. 378 (1989)....................................................8, 9, 10, 11

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) ............................................................19

*Connick v. Thompson,* 131 S.Ct. 1350 (2011) ........................................................8, 10, 11

*Davis v. Fed. Election Comm'n,* 554 U.S. 724 (2008) ......................................................18

*Estelle v. Gamble,* 429 U.S. 97 (1976) ...............................................................................6

*Friends of the Earth, Inc. v. Bergland,* 576 F.2d 1377 (9th Cir. 1978)...........................19

*Gilmore v. Superior Court,* 230 Cal.App.3d 416 (1991)...................................................14

*Gomper v. Visx, Inc.,* 298 F.3d 893 (9th Cir. 2002) ...........................................................4

*Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018) .........................................6, 7

*Hansen v. Black,* 885 F.2d 642 (9th 1989) .......................................................................12

*Huffman v. Parmo,* 2013 WL 3795618, at *11 (S.D. Cal. 2013) .....................................16

*ICR Graduate Sch. v. Honig,* 758 F. Supp. 1350 (S.D. Cal. 1991) .................................19

*Ileto v. Glock, Inc.,* 349 F.3d 1191 (9th Cir. 2003) ...........................................................4

*Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266 (9th Cir. 1982)...........................4

*Johnson v. Duffy,* 588 F.2d 740 (9th Cir. 1978) .................................................................9

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................................................6

*Ky. Fried Chicken of Cal. v. Superior Court,* 14 Cal.4th 814 (1996) ..............15

*Ladd v. County of San Mateo,* 12 Cal.4th 913 (1996) .........................................15

*Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991) ..............................12

*Long v. County of Honolulu,* 511 F.3d 901 (9th Cir.2007) .................................8

*McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1992)..............................................6

*Menotti v. City of Seattle,* 409 F.3d 1113 (9th Cir. 2005) ................................12

*Merritt v. City of Los Angeles,* 875 F.2d 765 (9th Cir. 1989)............................8

*Mitchell v. Dupnik,* 75 F.3d 517 (9th Cir. 1996) ................................................6

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978)......................6, 13

*Mueller v. Auker,* 700 F.3d 1180 (9th Cir. 2012) ...............................................11

*Navarro v. Block,* 250 F.3d 729-732 (9th Cir. 2001) ...........................................4

*Oviatt v. Pearce,* 954 F.2d 1470 (9th Cir. 1992) .................................................9

*Polk County v. Dodson,* 454 U.S. 312 (1981) .....................................................13

*Preschooler II v. Clark County. Sch. Bd. of Trustees,* 479 F.3d 1175 (9th Cir. 2007).........................................................................................................12

*Rhodes v. Stewart,* 488 U.S. 1 (1988) ..................................................................19

*Rotary Club of Duarte v. Bd. of Directors,* 178 Cal.App.3d 1035 (1986) ........16

*Sierra Forest Legacy v. Sherman,* 646 F.3d 1161 (9th Cir. 2011) ....................19

*Simmons v. Navajo City, Ariz.,* 609 F.3d 1011 (9th Cir. 2010 .........................17

*Sprewell v. Golden State Warriors,* 266 F.3d 969 (9th Cir. 2001)......................4

*Taormina v. California Dep't of Corr.,* 946 F. Supp. 829 (S.D. Cal. 1996) ....................16

*Taormina v. Corr. Dep't, State of Cal.,* 132 F.3d 40 (9th Cir. 1997)................16

*Taylor v. List,* 880 F.2d 1040 (9th Cir. 1989).....................................................12

*Toguchi v. Chung,* 391 F.3d 1051 (9th Cir. 2002)...............................................6

*Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996).....................................................13

*U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980) .....................................18

*United States v. Juvenile Male,* 131 S.Ct. 2860 (2011) ......................................18

*Van Ort v. Estate of Stanewich,* 92 F.3d 831 (9th Cir. 1996)........................................9, 13

*Wilkey v. City of Orange,* 295 F.Supp.3d 1086 (C.D. Cal. 2017) .....................................17

*Wilkins-Jones v. City of Alameda,* 859 F.Supp.2d 1039 (N.D. Cal. 2012)..................15, 16

*WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997).................................................6

## <u>RULES/STATUTES</u>

## CALIFORNIA CIVIL CODE

Section 51 .............................................................................................................................2
Section 377.30......................................................................................................................14
Section 377.60......................................................................................................................14

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 8(a)(2) ...........................................................................................................................5
Rule 12(b)(6) ....................................................................................................................4, 20

## TITLE 28 CODE OF FEDERAL REGULATIONS

Section 35.150(a) ................................................................................................................18

## TITLE 42 UNITED STATES CODE

Section 1983.................................................................................................................8, 12, 13
Section 1988........................................................................................................................19

# I.

## INTRODUCTION

On October 2, 2018, the Estate of Paul Silva through its successors-its-interest Leslie Allen and Manuel Silva, and Leslie Allen and Manuel Silva in their individual capacities (collectively, "Plaintiffs") brought suit against the County of San Diego ("County"), William Gore ("Sheriff Gore"), and Alfred Joshua, M.D. (collectively, "Defendants"). The lawsuit arises out of a use-of-force incident and the subsequent death of inmate Paul Silva ("Decedent") at the San Diego Central Jail ("SDCJ").

The Complaint asserts a myriad of claims against multiple defendants as a result of the incident. The wide-sweeping and conclusory nature of the allegations results in a number of improper and unsupported causes of action against Defendants. First, the Estate's claims for "failure to properly train," "failure to properly investigate," "failure to properly supervise and discipline," and *Monell* liability are not cognizable because the Complaint contains only a conclusory articulation of the factual basis for the claims, fails to allege facts to support causation, and fails to allege prior similar constitutional violations with respect to the failure to train claim. Additionally, the Complaint fails to adequately allege supervisory liability against Sheriff Gore and Dr. Joshua. The Estate's deliberate indifference to medical needs claim against Dr. Joshua also fails because Dr. Joshua did not treat Decedent and the Complaint fails to plead sufficient facts to satisfy the objective deliberate indifference standard. The wrongful death and negligence claims also fail as a matter of law because the claims are asserted collectively by all Plaintiffs, despite the fact that some of the individual parties who have no legal basis to assert the claims. Furthermore, the Estate's Unruh Act claim (Cal. Civ Code § 51) fails as a matter of law because SDCJ does not meet the "business establishment" requirement under the statute and Decedent's mental disability cannot be causally linked to any disparate treatment. Similarly, the Estate's ADA and Rehabilitation Act claims fail because the Complaint lacks factual allegations that Decedent was treated differently as a result of

///

1

1  discriminatory animus. Lastly, the requests for injunctive and declaratory relief are moot

2  and should be dismissed.

3                                            **II.**

4                          **FACTUAL ALLEGATIONS**

5        On February 19, 2018, Leslie Allen called the San Diego Police Department's

6  Psychiatric Emergency Response ("PERT") team for assistance with a "mental health

7  emergency" involving Decedent.  (Complaint, ("Cmplt.") at ¶¶ 25, 26, 28.)  Due to it

8  being a holiday, PERT was allegedly unavailable. (Cmplt. at ¶ 31.)  Decedent's mother

9  then called PERT again on February 20, 2018 and they arrived with a patrol unit.  (Cmplt.

10 at ¶ 35.)  The Complaint explains that SDPD officer Andrew Murrow arrested Decedent

11 under the assumption that he had used illegal drugs and brought him to SDCJ, where he

12 was booked. (Cmplt. at ¶¶ 39, 41, 42.)

13       Plaintiffs claim that Decedent was acting anxious and hyper-verbal while being

14 booked into SDCJ and that the intake staff knew he was diagnosed with schizophrenia.

15 (Cmplt. at ¶¶ 50, 51.)  Plaintiffs allege that during the 36 hours Decedent was in jail, he

16 did not receive any treatment for his schizophrenia or any other mental health services

17 despite being visibly symptomatic. (Cmplt. at ¶¶ 69, 70.)

18       On February 21, 2018, Decedent was acting erratically and running in his cell,

19 throwing himself on the ground, yelling incoherently staring out the window, and

20 crawling and rolling on the floor. (Cmplt. at ¶ 52.)  Deputies allegedly pepper sprayed

21 Decedent and a tactical team was called to remove him from his cell. (Cmplt. at ¶¶ 54,

22 55.)  Decedent exhibited the same bizarre behavior for approximately 22 minutes while

23 waiting for the arrival of the tactical team.  (Cmplt. at ¶ 56.)   Plaintiffs claim that when

24 the tactical team arrived, in order to calm Decedent down, deputies used water balls and

25 tased him. (Cmplt. at ¶¶ 57, 58, 59.)  Plaintiffs allege that six members of the tactical team

26 also held Decedent down by using a body shield on his torso, which caused Decedent to

27 become unconscious. (Cmplt. at ¶¶ 59, 60, 61.)

28 ///

                                            2

1   Decedent was taken to UCSD hospital where it was determined that he had a
2   collapsed lung and other abrasions and injuries.  (Cmplt. at ¶¶ 62, 63, 64.) After being in a
3   coma for several weeks, Decedent passed away. (Cmplt. at ¶ 65.)  The cause of
4   Decedent's death was restraint. (Cmplt. at ¶ 67.)

**III.**

**LEGAL STANDARD**

7   Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that a complaint may be
8   dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6)
9   motion to dismiss challenges the legal sufficiency of the complaint.  *Ileto v. Glock, Inc.*,
10  349 F.3d 1191, 1199-1200 (9th Cir. 2003).  A complaint may be dismissed as a matter of
11  law if it lacks a cognizable legal theory, or if it lacks sufficient facts under a cognizable
12  theory.  *Navarro v. Block*, 250 F.3d 729-732 (9th Cir. 2001).

13  In reviewing the motion, the court must assume the truth of all factual allegations in
14  the complaint and must construe them in the light most favorable to the non-moving party.
15  *Gomper v. Visx, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).  However, a complaint's
16  allegations must show that the plaintiff is entitled to more than merely speculative relief.
17  In fact, "some threshold of plausibility must be crossed at the outset" before a case can go
18  forward.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To meet this "facial
19  plausibility" standard, a complaint must contain "factual content that allows the court to
20  draw the reasonable inference that the defendant is liable for the misconduct alleged."
21  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  This standard "asks for more than a sheer
22  possibility that a defendant has acted unlawfully" and requires facts that are more than
23  "merely consistent with" a defendant's liability.  *Id.*

24  In addition, vague and conclusory allegations concerning government involvement
25  in civil rights violations are not sufficient to withstand a motion to dismiss.  *Ivey v. Bd. of*
26  *Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Nor is the court required
27  to accept as true allegations that are merely conclusory, unwarranted, deductions of fact,
28  or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 969, 988 (9th

3

1    Cir. 2001).  Finally, the court is not bound to accept as true legal conclusions couched as

2    factual allegations, if those conclusions cannot be reasonably drawn from the alleged

3    facts.  *Cholla Ready-Mix Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

4         And the complaint will not survive a rule 12(b)(6) motion "if it tenders naked

5    assertions devoid of further factual enhancement" or if it contains a merely "formulaic

6    recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Federal Rule

7    of Civil Procedure 8(a)(2) requires pleadings to contain a "short and plain statement of the

8    claim showing that the pleader is entitled to relief."  Although Rule 8 does not require

9    detailed factual allegations, plaintiff must allege "more than an unadorned, the-defendant-

10   unlawfully-harmed-me accusation."  *Iqbal* at 1949.

11                                              **IV.**

12                                        **ARGUMENT**

13

14   **A.    The Claims Against Dr. Joshua And Sheriff Gore In Their Individual**
          **Capacities Should Be Dismissed Because They Are Duplicative Official**

15        **Capacity Claims And There Is No Plausible Basis For Personal Liability.**

16        The Complaint alleges that Sheriff Gore was a "policymaker" for the Sheriff's

17   Department, was responsible for promulgating policies and procedures and allowance of

18   the practices/customs pursuant of the department, as well as the supervision and control of

19   deputies involved in the incident.  (Cmplt. at ¶¶ 13, 14.)  Similarly, the Complaint alleges

20   that in his capacity as the Medical Director for the Sheriff's Department, Dr. Joshua

21   oversaw the development and implementation of quality assurance and utilization review

22   policies and procedures.  (Cmplt. at ¶ 16.)  According to the Complaint, Sheriff Gore was

23   sued in his individual capacity.  (Cmplt. at ¶ 15.)  Dr. Joshua, however, was apparently

24   sued in his official capacity.

25        The allegations against Dr. Joshua and Sheriff Gore include: alleged failure to

26   supervise and train subordinate staff (Cmplt. at ¶¶ 205, 206.), failure to provide adequate

27   supervision and discipline to medical staff (Cmplt. at ¶¶ 207, 210.), failure to promulgate

28   and enforce adequate policies and procedures (Cmplt. at ¶¶ 208, 213.),  engaging in a

                                              4

history of ratifying, condoning, and acquiescing to employee misconduct (Cmplt. at ¶¶ 209, 213.), and maintaining a series of "*de facto*" policies (Cmplt. at ¶¶ 225-227.).  These are all policy-based allegations relating to Dr. Joshua and Sheriff Gore's alleged failure to act in their official capacities, rather than upon their personal knowledge of Decedent, knowledge of his medical condition or incarceration, or involvement in his ongoing treatment or conditions of confinement. The Complaint does not allege Dr. Joshua or Sheriff Gore ever contacted Decedent, knew of his condition or incarceration, or instructed anyone to take any action or refrain from taking any action with respect to Decedent.  A lawsuit against an entity's official policy maker in his or her official capacity is but a lawsuit against the entity itself and it is therefore unnecessary to name as defendants both the entity and the official capacity defendant.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  "Official-capacity suits . . . 'generally represent ... another way of pleading an action against an entity of which an officer is an agent.'"  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978).  Accordingly, the claims asserted against Dr. Joshua and Sheriff Gore in their individual capacities should be dismissed.

## B.   The Second Cause Of Action (Deliberate Indifference To Serious Medical Needs) Against Dr. Joshua Should Be Dismissed.

Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: the intentional denial, delay, or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. See *Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976).  In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to accidents, inadvertent failures to provide medical care, malpractice, or even gross negligence, will not suffice to demonstrate deliberate indifference. See *Estelle*, 429 U.S. at 106; see *Toguchi v. Chung*, 391 F.3d 1051, 1059-1060 (9th Cir. 2002); *see also McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) ///

No. 18cv02282-MMA-MSB

1    (*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.

2    1997)).

3          Recently, in *Gordon v. County of Orange,* the Ninth Circuit articulated a new

4    standard for evaluating a deliberate-indifference-to-medical-care claims brought by

5    pretrial detainees.  888 F.3d 1118, 1125 (9th Cir. 2018).  The Court described this new

6    standard as "objective deliberate indifference."  *Id.*  The Ninth Circuit held that a pretrial

7    detainee's Fourteenth Amendment claim for the right to adequate medical care must meet

8    the following elements:

9
10         (i) the defendant made an intentional decision with respect to the conditions
           under which the plaintiff was confined; (ii) those conditions put the plaintiff
11         at substantial risk of suffering serious harm; (iii) the defendant did not take
           reasonable available measures to abate that risk, even though a reasonable
12         official in the circumstances would have appreciated the high degree of risk
           involved. *Id.*
13

14         Here, there are no allegations that Dr. Joshua, either directly or indirectly,

15   participated in Decedent's treatment while he was in custody at SDCJ.  In other words,

16   there is no evidence that intentional treatment decisions by Dr. Joshua put Decedent at

17   substantial risk of suffering serious harm or that Dr. Joshua failed to take reasonable

18   measures to abate any supposed risk when a reasonable physician in his position would

19   have done so.  See *Gordon*, 888 F.3d at 1125.  Indeed, the Complaint is devoid of

20   allegations that Dr. Joshua knew, met, interacted with Decedent, or knew of Decedent's

21   alleged medical condition while at SDCJ, or that he instructed anyone to render or

22   withhold medical services from him, or to ignore his need for medical services, or to harm

23   him in any fashion.  The Complaint alleges only that Dr. Joshua by virtue of his alleged

24   policymaking position adopted or failed to adopt unspecified policies that allegedly

25   caused Decedent to suffer a constitutional deprivation. Such allegations are but the basis

26   for an official capacity claim, that is, a municipal federal civil rights claim against the

27   County.  Moreover, the Complaint fails to identify any allegedly deficient policies and

28   ///

1  procedures. Accordingly, the Estate's deliberate indifference to serious medical need

2  claim against Dr. Joshua should be dismissed, with prejudice.

3

4  **C.    The Sixth Cause Of Action (Failure To Train) Should Be Dismissed Because**
   **The Complaint Lacks Plausible Allegations To Support Liability.**

5

6          The mere allegation of "failure to train" does not state a constitutional claim against

7  a municipality.  *City of Canton v. Harris,* 489 U.S. 378, 390-391 (1989).  Indeed, the

8  Supreme Court has expressly noted that "[a] municipality's culpability for a deprivation of

9  rights is at its most tenuous where a claim turns on a failure to train." *Connick v.*

10  *Thompson*, 131 S.Ct. 1350, 1359-60 (2011).  A plaintiff alleging failure to train must

11  show: (1) the training program must be inadequate "'in relation to the tasks the particular

12  officers must perform'"; (2) the city officials must have been deliberately indifferent "'to

13  the rights of persons with whom the [local officials] come into contact'"; and (3) the

14  inadequacy of the training "must be shown to have 'actually caused' the constitutional

15  deprivation at issue." *Merritt v. City of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)

16  (internal citations omitted). As the Supreme Court and Ninth Circuit have highlighted,

17  "[o]nly where a municipality's failure to train its employees in a relevant respect

18  evidences a 'deliberated indifference' to the rights of its inhabitants can such a

19  shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable

20  under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. County of Honolulu*, 511 F.3d

21  901, 907 (9th Cir.2007).

22          1.    The Complaint Contains Improper and Insufficient Conclusory Allegations.

23

24          The Complaint alleges—without factual support—that Defendants failed to

25  "maintain adequate and proper training ... as to the Constitutional rights of inmates"

26  (Cmplt. at ¶ 191), "failed to promulgate corrective policies and regulations" (Cmplt. at ¶

27  192), "failed to train medical and psychiatric doctors and nurses on the necessary care of

28  inmates suffering from serious medical conditions" and "failed to implement policies and

                                                    7

1   procedures with respect to proper training." (Cmplt. at ¶ 193.)  After overloading the

2   Complaint with repeated references to buzzwords like "inadequate training" and

3   unspecified "misconduct" and "violations" (Cmplt. at ¶¶ 197-198), Plaintiffs summarily

4   conclude that the "failure of Defendants to properly train their officers and medical staff"

5   demonstrated deliberate indifference and somehow directly caused Decedent's death.

6   (Cmplt. at ¶¶ 197-200.)

7        These allegations fail to state in what way Defendants failed to train, what specific

8   role Dr. Joshua and Sheriff Gore played with respect to the unspecified training at issue in

9   this case, over what period of time the allegedly inadequate training occurred (i.e. was it

10  before or after Decedent's death), what topics or subjects were not covered in training, and

11  how the inadequate training tied into the specific conduct of jail medical staff on the date

12  of the incident.  Rather, the allegations merely constitute a list of conclusory statements

13  that regurgitate the elements Plaintiffs are seeking to prove, without factual allegations to

14  support them.

15       2.   The Complaint Lacks Factual Allegations to Support Causation.

16

17       Regardless what theory Plaintiffs employ to establish municipal liability – policy,

18  custom or failure to train – they must establish an affirmative causal link between the

19  municipal policy or practice and the alleged constitutional violation. See *City of Canton,*

20  489 U.S. at 385, 391-92; *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996);

21  *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992).

22       The Complaint fails to allege a causal link between the purported lack of training

23  relating to medical and mental health treatment and Decedent's death, which allegedly

24  resulted from a use-of-force incident.  (Cmplt. at ¶¶ 57-67.)  The Complaint fails to

25  address what about the alleged lack of training caused jail staff to act as they are alleged to

26  have acted. Absent such allegations, the Court cannot infer that Defendants set in motion a

27  "series of acts by others which [Defendants knew] or reasonably should [have known]"

28  would cause Decedent's death from alleged excessive force.  *Johnson v. Duffy,* 588 F.2d

8

1   740, 743-744 (9th Cir. 1978).   Accordingly, the Complaint falls short of supplying

2   sufficient allegations to support Plaintiffs' failure to train claim against Defendants.

3         3.   No Pattern of Prior Similar Constitutional Violations.

4         The Supreme Court in *City of Canton*, 489 U.S. 378, *Bd. of Comm'rs of Bryan*

5   *County v. Brown*, 520 U.S. 397 (1997), and *Connick*, 563 U.S. at 51 found that a *pattern*

6   *of constitutional violations* is required to demonstrate deliberate indifference for purposes

7   of failure to train. *City of Canton* stated that "a *pattern of constitutional violations"* could

8   put the municipality on notice that its officers confront a particular situation on a regular

9   basis, and that they often react in a manner contrary to constitutional requirements. *City of*

10   *Canton*, 489 U.S. at 397.   If police "so often *violate constitutional rights"* the entity may

11   be on notice of a need for further training. *Id*. at 390 n. 10.   "('[M]unicipal liability for

12   failure to train may be proper where it can be shown that policymakers were aware of, and

13   acquiesced in, a *pattern of constitutional violations* ...').   The existence of a pattern of

14   tortious conduct by inadequately trained employees may tend to show that the lack of

15   proper training, rather than a one-time negligent administration of the program or factors

16   peculiar to the officer involved in a particular incident, is the 'moving force' behind the

17   plaintiff's injury." *Bryan County*, 520 U.S. at 407–08.   Thus, a plaintiff must prove a

18   pattern of constitutional violations from which it can be fairly shown that the challenged

19   program or custom was the moving force of the constitutional violation, and that

20   municipal decision makers were on notice that a new program was called for and their

21   continued adherence to an inadequate approach reflected their conscious disregard for the

22   consequences of their program. *Id.*   In *Connick*, the Supreme Court repeated that "[a]

23   *pattern of similar constitutional* violations by untrained employees is 'ordinarily

24   necessary' to demonstrate deliberate indifference for purposes of failure to train."

25   *Connick*, 563 U.S. at 62.

26         As an initial matter, bare and generalized statistics set forth in a local newspaper

27   that involve jail deaths cannot be construed as prior similar constitutional violations

28   because in-custody deaths may involve a variety of factors that have no relation to the

1   situation in the present action.  (Cmplt. at ¶¶ 75, 76, 77.)    Similarly, allegations

2   involving CLERB, Disability Rights of California, and the Grand Jury also fail to show

3   prior similar constitutional violations involving in-custody deaths under similar

4   circumstances.  (Cmplt. at ¶¶ 83, 84, 86, 87, 95-101, 102, 103-112)  The majority of cited

5   prior incidences involve drug overdoses or withdrawals and suicides.  Based on the

6   allegations in the Complaint, Decedent's lab results were negative for alcohol,

7   amphetamines, opiates, methadone, barbiturates, and cocaine.  (Cmplt. at ¶ 66.)   Thus,

8   prior incidences involving deaths as a result of drug overdoses or withdrawals, such as

9   those alleged in paragraphs 83, 88, 89, are not indicative of a pattern of similar

10  constitutional violations. Similarly, prior incidences involving inmate suicides set forth in

11  paragraphs 85, 90, 91, 92, 93 are also inapplicable. Instead, Plaintiffs are attempting to set

12  forth a pattern by pleading copious amount of information, most of which has absolutely

13  no bearing on the factual allegations in the Complaint.

14          In regards to the Complaint's two allegations of use-of-force situations involving

15  cell extractions of mentally ill inmates (Cmplt. at ¶ 82), the two allegations are insufficient

16  to establish notice and do not satisfy Plaintiffs' burden of pleading a pattern of prior

17  *constitutional violation*s, i.e. where a County employee was found liable for violating an

18  inmate's constitutional rights.  See *Mueller v. Auker,* 700 F.3d 1180, 1194 (9th Cir. 2012).

19  (Four prior incidences were insufficient to put the city on notice such that it could

20  reasonably be said to have been deliberately indifferent to the need for further training.)

21  The Supreme Court's decisions in *City of Canton, Bryan County,* and *Connick* did not

22  provide that merely listing past events is sufficient to support a claim that a municipal

23  federal civil violation by an employee was caused by an inadequate program.  Rather

24  those cases require occurrence of a pattern of constitutional violations.  A constitutional

25  violation does not exist by virtue of an accusation or allegation.  Rather, it must be an

26  adjudicated fact.

27  ///

28  ///

**D.**  **The Seventh And Eighth Causes Of Action (Failure To Supervise, Discipline And Investigate) Should Be Dismissed Because The Complaint Lacks Plausible Allegations To Support Liability.**

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)(quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (internal citations omitted).)  There is no respondeat superior or vicarious liability for supervisors under Section 1983.  *Hansen v. Black,* 885 F.2d 642, 645-6 (9th 1989).   A supervisor can only be liable for constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "The requisite causal connection may be established when an official 'sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms.' " *Preschooler II v. Clark County. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir.2007).

As with the sixth cause of action for failure to train, the Complaint fails to set forth adequate facts supporting liability for the claims involving failure to train, discipline, supervise or investigate.   The conclusory allegations supporting the seventh and eighth causes of action mirror those alleged with respect to the sixth cause of action.  The Complaint alleges in overarching and generic terms that Defendants each failed to discipline and supervise staff, failed to promulgate policies and procedures, ratified widespread misconduct, were aware of previous instances of "untimely and wrongful deaths" in the jails,  conducted and acquiesced in improper conduct of subordinates, and failed to properly investigate citizen complaints, misconduct and deaths.  (Cmplt. at ¶¶ 205-233.)  Such bare-bones, conclusory allegations without any specific factual foundation cannot support Plaintiffs' claims.  Complaints must contain factual content that

11

1  allows the court to draw a reasonable inference that the defendant is liable for the

2  misconduct alleged.  *Iqbal*, 129 S.Ct.  at 1949.  Here, there is no factual content at all

3  except conclusory and generalized allegations.  Pursuant to case law, the Court should not

4  accept these allegations at true, and should require Plaintiffs to supply specific factual

5  allegations to support their claims.  Moreover, the Complaint fails to allege a plausible

6  causal link between the failure to supervise, discipline, and investigate unspecified

7  incidents and conduct and Decedent's death, which involved a use-of-force that Plaintiffs

8  contend involved excessive force.  Based on the lack of factual allegations, the seventh

9  and eighth causes of action should be dismissed.

10
11  **E.    The Ninth Cause Of Action (*Monell*) Should Be Dismissed Because The
         Complaint Lacks Facts To Support Municipal Federal Civil Rights Liability.**

12         Local governments "may not be sued under § 1983 for an injury inflicted solely by

13  its employees or agents.  Instead, it is when execution of a government's policy or custom

14  ... inflicts the injury that the government as an entity is responsible under § 1983."

15  *Monell*, 436 U.S. at 694.  To survive a motion to dismiss against the County, the

16  complaint must sufficiently allege facts that support four elements: (1) Plaintiff was

17  deprived of a constitutional right; (2) the County had a policy or longstanding custom so

18  persistent and widespread that it constituted a permanent and well-settled policy; (3) the

19  policy amounted to deliberate indifference to plaintiffs' constitutional rights; and (4) the

20  policy was the moving force behind the constitutional violation. *Van Ort*, 92 F.3d at 835;

21  *Bd. of Comm'rs of Bryan County*, 520 U.S. at 402-04; *Trevino v. Gates*, 99 F.3d 911, 918

22  (9th Cir. 1996).  Plaintiff has the burden of proving official policy by more than a "bald

23  allegation." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

24         Here, the Complaint falls far short of supplying sufficient factual allegations that

25  plausibly support the allegations against the County.  The Complaint supplies no factual

26  allegations other than a "formal recitation of the elements of the cause of action," which is

27  insufficient to state a claim for relief. *Twombly*, 550 U.S. at 555.  For example, the

28  Complaint simply lists a myriad of purported customs and practices by Defendants one

after another, without any factual support. (Cmplt. at ¶¶ 233-253.) The unsupported custom and practice allegations are interspersed with allegations containing the buzzword "deliberately indifferent." (Cmplt. at ¶¶ 257-259.) This formulaic recitation of the elements supplies no specific facts on which to support Plaintiffs' claims. In addition, the Complaint fails to supply facts to show deliberate indifference on the County's part. Complaints must contain factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949. Accordingly, the Court should not accept these conclusions at true, and Defendants' motion should be granted.

**F.**  **The Tenth Cause Of Action (Wrongful Death – CCP § 377.60) By The Estate Fails As A Matter Of Law.**

The tenth cause of action, a claim for wrongful death, is advanced by the Estate against Defendants under California Code of Civil Procedure section 377.60, "which is simply the statutorily created *right of an heir* to recover for damages resulting from a tortious act which results in the decedent's death." *Gilmore v. Superior Court,* 230 Cal.App.3d 416, 420 (1991)(emphasis added)(citations omitted). As the *Gilmore* court noted, the statutorily created right was established in favor of a decedent's heirs. Here, the Estate is an improper plaintiff because it cannot legally assert a wrongful death claim against Defendants. Accordingly, the wrongful death cause of action asserted by the Estate against Defendants should be dismissed, with prejudice.

**G.**  **The Eleventh Cause Of Action (Negligence) By Manuel Silva And Leslie Allen Fails As A Matter Of Law.**

A "survival action" is the decedent's cause of action that survived his death. A survival cause of action arises from California Code of Civil Procedure section 377.30 *eq seq.* Under section 377.30, a cause of action that survives the death of a person passes to the decedent's successor in interest and is enforceable by the decedent's personal representative or, if none, by the decedent's successor in interest. Manuel Silva and Leslie Allen properly asserted a negligence claim on behalf of the Estate as Decedent's

13

1  successors in interest.  California's statutory scheme, however, does not authorize "double

2  dipping" by Manuel Silva and Leslie Allen with respect to the negligence claim.  Thus,

3  the negligence claim asserted by Manuel Silva and Leslie Allen, in their individual

4  capacities, fails as a matter of law.

5        Moreover, Manuel Silva and Leslie Allen cannot allege facts sufficient to establish

6  the foundational elements of a negligence claim.  "The elements of a cause of action for

7  negligence are well established. They are: (a) a legal duty to use due care; (b) a breach of

8  such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury."

9  *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996)(internal citations omitted).

10  "[T]he existence of a duty is a question of law for the court."  *Ky. Fried Chicken of Cal. v.*

11  *Superior Court,* 14 Cal.4th 814, 819 (1996).

12        The negligence action fails as a matter of law because Manuel Silva and Leslie

13  Allen cannot allege facts sufficient to establish a legal duty owed by Defendants to them

14  in their individual capacities.  Accordingly, the negligence cause of action by Manuel

15  Silva and Leslie Allen, in their individual capacities, against Defendants should be

16  dismissed, with prejudice.

17
18  **H.   The Twelfth Cause Of Action (Unruh Civil Rights Act – CC § 51) By The Estate Fails As A Matter Of Law And Should Be Dismissed.**

19        "To prevail on ... claim under the Unruh Civil Rights Act, [a] plaintiff must

20  establish that (1) []he was denied the full and equal accommodations, advantages,

21  facilities, privileges, or services in a business establishment; (2) [his] disability was a

22  motivating factor for this denial; (3) defendants denied plaintiff the full and equal

23  accommodations, advantages, facilities, privileges, or services; and (4) defendants'

24  wrongful conduct caused plaintiff to suffer injury, damage, loss or harm."  *Wilkins-Jones*

25  *v. City of Alameda*, 859 F.Supp.2d 1039, 1048 (N.D. Cal. 2012)(citations omitted).

26       1.   Jails Are Not Business Establishments.

27        An essential element of an Unruh Act claim is establishing that the conduct

28  involved a "business establishment."  Civ. Code § 51.  Courts have repeatedly held that

14

"[p]risons and jails [] are not business establishments, and therefore, are not subject to suit under the Unruh Act." *Addison v. California Institution for Men,* 2016 WL 8732476, *10 (E.D. Cal. 2016)(citing *Taormina v. California Dep't of Corr.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996), *aff'd and remanded sub nom. Taormina v. Corr. Dep't, State of Cal.*, 132 F.3d 40 (9th Cir. 1997)); see also *Huffman v. Parmo*, 2013 WL 3795618, at *11 (S.D. Cal. 2013) ("[A] state prison does not qualify as a "business establishment" for purposes of California's Unruh Civil Rights Act."); *Wilkins-Jones*, 859 F.Supp.2d 1039, 1049 ("[T]he Unruh Act does not apply to correctional facilities per se.)  Whether a defendant is a "business establishment" is decided as an issue of law.  CACI 3060 (citing *Rotary Club of Duarte v. Bd. of Directors*, 178 Cal.App.3d 1035, 1050 (1986)). As confirmed by the cases cited above, the Estate's Unruh Act claim fails a matter of law because SDCJ is not a "business establishment" under the statute.

## 2.   Decedent's Disability Is Not Causally Linked to Any Purported Disparate Treatment or Action.

The Estate must also plausibly allege that Decedent's "disability was a motivating factor for [] denial of services."  The Complaint contends that Decedent was disabled due to a mental impairment and was "experiencing a medical emergency and required medical assistance by medical care professionals."  (Cmplt at ¶¶ 51-53, 56, 297.)  From there, the Complaint simply concludes that Decedent "was denied these services on the basis of his disability." (Cmplt at ¶¶ 297-298.)

These barebones allegations are insufficient for two reasons.  First, the allegations are conclusions cast as facts. The Court is well within its discretion to disregard such self-serving conclusions. Second, the allegations apply faulty logic to reach the sought-after conclusion.  In sum, Plaintiffs allege that Decedent was entitled to services for his disability but was denied those disability services because of the disability that necessitated the need for services.  This circular reasoning is insufficient to satisfy the *Iqbal/Twombly* pleading standard.

///

No. 18cv02282-MMA-MSB

1    Because SDCJ is not a "business establishment" under the Unruh Act and because

2    there are no facts to plausibly allege that Decedent's disability was a motivating factor in

3    any disparate treatment, granting leave to amend would be futile.  Accordingly, the

4    Estate's Unruh Act claim should be dismissed, with prejudice.

5

6    **I.   The Fourteenth And Fifteenth Causes Of Action (ADA And Rehabilitation Act) By The Estate Fail As A Matter Of Law And Should Be Dismissed**[1]

7        "To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an

8    individual with a disability; (2) he is otherwise qualified to participate in or receive the

9    benefit of some public entity's services, programs, or activities; (3) he was either excluded

10   from participation in or denied the benefits of the public entity's services, programs, or

11   activities, or was otherwise discriminated against by the public entity; and (4) such

12   exclusion, denial of benefits, or discrimination was by reason of [his] disability."

13   *Simmons v. Navajo City, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010.)

14       Under both the ADA and Rehabilitation Act, it is Decedent's burden to establish

15   that "he was excluded from participating in or denied the benefits of the County's

16   services, programs, or activities 'by reason of [his] disability.'"  *Wilkey v. City of Orange*,

17   295 F.Supp.3d 1086, 1092 (C.D. Cal. 2017).  Moreover, "[t]he ADA prohibits

18   discrimination because of disability, not inadequate treatment for disability."  *Simmons*,

19   609 F.3d at 1022 (citing *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996).)  Thus,

20   absent evidence of discriminatory intent, if allegations are that the defendants denied a

21   plaintiff "mental health medication and did not immediately provide him medically

22   necessary care ... these allegations do not state a claim under the ADA."  *Wilkey v. City of*

23   *Orange*, 295 F.Supp.3d  at 1093; see *also Figueira by & through Castillo v. City of Sutter*,

24   2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015) ("[D]efendants cannot have violated

25   the ADA by failing to attend to the medical needs of [mentally] disabled prisoners.");

26   *Brown v. Brown*, 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) ("[T]he, the

27   _____

28   [1] "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

1  underlying allegations appear related solely to the medical care Plaintiff was provided,

2  and the treatment, or lack of treatment, concerning Plaintiff's medical conditions does not

3  provide a basis upon which to impose liability under the ADA."); *Arreola v. California*

4  *Dep't of Corr. & Rehab.*, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017)("Simply

5  alleging a need for services is not enough. [Plaintiff] must plausibly allege that he was

6  denied benefits or programs, or discriminated against, because of a disability.")

7          Although the Complaint alleges that Decedent is a qualified person with a

8  disability, the mere allegations that the County did not treat Decedent's schizophrenia

9  does not equate to discriminatory conduct.  The mandate of Title II is that, when the

10  public entity operates a service, program or activity, it must simply ensure that the

11  program "when viewed in its entirety, is readily accessible to and usable by individuals

12  with disabilities."  28 C.F.R. § 35.150(a). The Estate failed to provide any factual support

13  that Decedent was excluded from participating in or treated differently with respect to the

14  services, programs, or activities provided at SDCJ as a result of his mental illness. Rather,

15  the Complaint simply concludes—without any supporting facts or evidence—that Plaintiff

16  was discriminated against due to his disability.  Decedent does not, nor can he, contend

17  that the provision of mental health services was received by other inmates at SDCJ, but

18  that he did not receive the services by reason of his disability.   Thus, the Complaint fails

19  to set forth any allegations that Decedent was treated differently as a result of any

20  discriminatory animus by the County towards individuals suffering from mental illness.

21  Accordingly, Decedent's ADA and Rehabilitation Act claims should be dismissed, with

22  prejudice.

23  **J.**     **The Requests For Declaratory And Injunctive Relief Are Moot And Should Be**
24  **Dismissed.**

25          Article III of the Constitution "restricts federal courts to the resolution of cases and

26  controversies" that are justiciable throughout all stages of the litigation.  *Davis v. Fed.*

27  *Election Comm'n*, 554 U.S. 724, 732 (2008); *United States v. Juvenile Male*, 131 S.Ct.

28  2860, 2864 (2011)(per curiam).  A claim is moot "when the issues presented are no longer

17

No. 18cv02282-MMA-MSB

1   live or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n*

2   *v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation marks omitted).  Mootness

3   presents a question of law that is appropriate for resolution by the court.  *Sierra Forest*

4   *Legacy v. Sherman*, 646 F.3d 1161, 1176 (9th Cir. 2011).

5         1.   <u>Plaintiffs' Prayer for Injunctive Relief Should be Dismissed.</u>

6         To obtain an injunction, the plaintiff must establish that a "real or immediate threat"

7   exists that he will be wronged again.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111

8   (1983).  Where the activities sought to be enjoined have already occurred, and the court

9   cannot undo what has already been done, and there is no prospective harm to the plaintiff,

10  the action is moot and no injunction can be granted.  *ICR Graduate Sch. v. Honig*, 758 F.

11  Supp. 1350, 1354-55 (S.D. Cal. 1991) (citing *Friends of the Earth, Inc. v. Berglan*d, 576

12  F.2d 1377, 1379 (9th Cir. 1978)).

13        Here, the Complaint seeks injunctive relief "requiring [the County] to modify its

14  programs and services to accommodate persons with disabilities."  (Cmplt. at ¶ 328.)  No

15  conduct is alleged to be currently threatened against Plaintiffs.  Moreover, the Complaint

16  lacks any specificity regarding the "programs and services" that require modifications,

17  what those modifications must be, and how injunctive relief requiring unspecified

18  modifications will "accommodate persons with disabilities."  Accordingly, the

19  Complaint's prayer for injunctive relief is improper as a matter of law and should be

20  dismissed.

21        2.   <u>Plaintiffs' Prayer for Declaratory Relief Should be Dismissed.</u>

22        "A declaratory judgment…. is no different from any other judgment. It will

23  constitute relief, for purposes of 42 U.S.C. section 1988, if, and only if, it affects the

24  behavior of the defendant toward the plaintiff."  *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).

25  Notably, the Supreme Court in *Rhodes* noted that declaratory relief, in the form of

26  modifying prison policies, would not have benefitted a deceased inmate.  *Id.*  Thus, once

27  an inmate is no longer exposed to the "challenged policy or practice" injunctive and

28  declaratory relief would have no impact on the claimed rights or injury alleged.  See

1  *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).  The reason is clear—the released

2  inmate is no longer subject to the prison conditions or the policies.

3        Here, because Decedent passed away, declaratory relief would have no impact on

4  his claims.  No exception applies to justify deviating from the well-established  position.

5  Accordingly, the prayer for declaratory relief should be dismissed.

6  **V.**

7  **<u>CONCLUSION</u>**

8        Plaintiffs' repeatedly lists some of the elements of their various claims and

9  conclusions cast as facts.  The Complaint, however, lacks specific factual allegations to

10  support the challenged claims.  Consequently, the Complaint fails the "plausibility" test

11  required under Rule 12(b)(6) and Rule 8.  Moreover, many of the challenged claims are

12  barred as a matter of law.  Based on the foregoing, Defendants' motion should be granted.

13  DATED: December 7, 2018         THOMAS E. MONTGOMERY, County Counsel

14

15                               By: s/ROBERT A. ORTIZ, Senior Deputy
    Attorneys for Defendants County of San Diego,

16                               William Gore and Alfred Joshua, M.D.

17

18

19

20

21

22

23

24

25

26

27

28

19