# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF PAUL SILVA, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                                    Defendants. | Case No.:  18cv2282-MMA (MSB)<br><br>**ORDER:**<br><br>**(1) DENYING AS MOOT DEFENDANT CRF'S MOTION TO DISMISS [Doc. No. 20]**<br><br>**(2) GRANTING IN PART DEFENDANTS COUNTY OF SAN DIEGO, WILLIAM GORE, AND ALFRED JOSHUA's MOTION TO DISMISS [Doc. No. 30]**<br><br>**(3) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT [Doc. No. 69]** |

On October 2, 2018, Plaintiffs The Estate of Paul Silva, by and through its successors in interest Leslie Allen and Manuel Silva (the "Estate"), Leslie Allen ("Allen"), and Manuel Silva ("Silva") (collectively, "Plaintiffs") filed this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), and various state law claims

1

against Defendants City of San Diego (the "City"), Shelley Zimmerman ("Zimmerman"), Andrew Murrow ("Officer Murrow"), County of San Diego (the "County"), William Gore ("Sheriff Gore"), Alfred Joshua ("Dr. Joshua"), Liberty Healthcare Corporation ("Liberty"), and Community Research Foundation ("CRF"). Doc. No. 1 ("Compl."). Presently before the Court are CRF's motion to dismiss and the County, Sheriff Gore, and Dr. Joshua's (collectively, the "County Defendants") partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. Nos. 20, 30. Plaintiffs opposed both motions (Doc. Nos. 27, 35), to which the moving Defendants replied (Doc. Nos. 28, 36).[1] The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. Nos. 31, 37. For the reasons set forth below, the Court **GRANTS IN PART** the County Defendants' motion.

## BACKGROUND[2]

Thirty-nine year-old Paul Silva ("Paul")[3] suffered from schizophrenia his entire adult life. Compl. ¶¶ 25-26. Paul lived with his father, Silva, and visited his mother, Allen, each morning. Compl. ¶ 27. On February 19, 2018, while visiting Allen, Paul acted out and refused to go home. Compl. ¶ 28. Allen called the San Diego Police Department's Psychiatric Emergency Response Team ("PERT")[4] and requested assistance for a mental health emergency, or a California Welfare and Institution's Code section 5150 psychiatric hold ("5150 hold"),[5] for Paul. Compl. ¶¶ 29, 45. In the past,

---

[1] Defendants CRF were dismissed from the case pursuant to the stipulation (Doc. No. 48) between Plaintiffs and CRF. Doc. No. 56.

[2] Because this matter is before the Court on 12(b)(6) motions to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[3] The Court uses "Paul" to distinguish Paul Silva from Manuel Silva and the Estate.

[4] "PERT provides emergency assessment and referral for individuals with mental illness. PERT pairs licensed mental health clinicians with uniformed law enforcement officers/deputies. The PERT team evaluates the situation, assesses the individual's mental health condition and needs, and, if appropriate, transports individuals to a hospital or other treatment center, or refers him/her to a community-based resource or treatment facility." Compl. ¶ 32. PERT is administered by CRF. Compl. ¶ 30.

[5] "California Welfare and Institutions Code § 5150 authorizes qualified officers or clinicians to involuntarily take into custody a person who, 'as a result of a mental health disorder, is a danger to

Allen had called PERT to assist Paul and on each prior occasion, "a PERT officer would speak to Paul calmly, and Paul would comply with all of their requests." Compl. ¶ 33. However, due to the President's Day holiday on February 19, 2018, PERT was unavailable. Compl. ¶ 31. Allen decided to wait until PERT became available the following day. Compl. ¶ 34. On February 20, 2018, a PERT unit and a patrol unit arrived. Compl. ¶ 35. Allen informed the PERT unit of Paul's psychiatric condition. Compl. ¶ 35. Plaintiffs allege that while in route to the scene of a call, a PERT clinician has the ability to look up any information in the County's health record about that person's previous contact in the mental health system, which gives the clinician a head start before arriving at the scene. Compl. ¶ 36. Thus, the PERT unit allegedly had access to Paul's prior history of acting out when off his medication. Compl. ¶ 37.

Officer Murrow—who arrived on the scene with the PERT team and was allegedly aware the PERT team had previously dealt with Paul—"interfered with the appropriate treatment of Paul" and "decided that Paul must have used narcotics despite [Allen's] statement that Paul did not use illicit drugs." Compl. ¶¶ 38-40. Plaintiffs allege that Officer Murrow ignored evidence of Paul's schizophrenic symptoms and need for treatment and instead arrested Paul without probable cause for being under the influence of a controlled substance. Compl. ¶¶ 42-44. Officer Murrow "refused to follow policy and brought Paul to the [San Diego] County Jail, rather than a designated medical facility." Compl. ¶ 41. Plaintiffs further allege that members of the PERT team "did nothing to intervene," and "did nothing to take Paul to a hospital or a mental health treatment facility." Compl. ¶¶ 46-47.

Paul was taken to Central Jail, where intake staff knew Paul suffered from schizophrenia and described him as anxious and hyper-verbal. Compl. ¶¶ 50-51. During the 36 hours he was in jail, no medical staff tended to Paul and he received no medication

---

others, or to himself or herself, or gravely disabled.'" *Horton v. City of Santa Maria*, 915 F.3d 592, 597 n.3 (9th Cir. 2019).

18cv2282-MMA (MSB)

for his schizophrenia or any other mental health services. Compl. ¶ 69-70. On February 21, 2018, deputies saw Paul running around his cell, throwing himself to the ground, yelling incoherently, staring out the window with his mouth wide open, holding his arms out pointing toward the window and walls, and crawling and rolling on the floor. Compl. ¶ 52. Plaintiffs allege that the deputies realized Paul needed medical attention, but failed to call for psychiatric nursing staff or anyone from the medical unit. Compl. ¶ 53. Moreover, Plaintiffs allege that "no medical care provider was consulted or called for diagnosis or treatment." Compl. ¶ 71. Instead, deputies pepper sprayed Paul and called for a Tactical Team ("TT") to remove Paul from his cell. Compl. ¶¶ 54-55. While waiting for the TT for 22 minutes, deputies observed Paul's continued bizarre behavior. Compl. ¶ 56.

When the TT arrived, they shot him with water balls and "[t]asered him for at least 22 seconds while six other members of the [TT] held him down with a body shield over his torso." Compl. ¶¶57-59. "At least six members were on or around his body with a shield placed on top of his torso with two officers pushing down on the shield. One deputy instructed the other[s] to use 'downward pressure with the shield, get your body weight on it.'" Compl. ¶ 60. Deputies heard Paul yell "no, don't do it, sir," before his voice became faint and unintelligible. Compl. ¶ 61.

Paul then became unresponsive and was taken to the UCSD hospital unconscious. Compl. ¶ 62. Plaintiffs allege that the deputies' excessive force caused one of Paul's lungs to collapse. Compl. ¶ 63. Additionally, the medical examiner noted "visible injuries of the head including blood on the forehead, eyebrows and nose; laceration with abrasion on the right eyebrow; contusion to the right eye; upper lip edema; puncture wounds to the torso possibly from the [t]aser; abrasions to the wrist, knuckles, and forearm; puncture wound to the inner thigh[;] and contusions to the left knee and left thigh." *Id.* Additionally, "Paul sustained serious and permanent brain damage, neurological injuries, kidney failure and other life-threatening injuries" that put him "in a coma for several weeks before he ultimately succumbed to his injuries." Compl. ¶¶ 64-

65.  Hospital lab results revealed Paul was negative for any alcohol, amphetamines, opiates, methadone, barbiturates, or cocaine.  Compl. ¶ 66.  The medical examiner ultimately concluded that the manner of death was homicide caused by "restraint, which caused Paul's heart to stop, which resulted in Paul's inability to breathe."  Compl. ¶¶ 67-68.

Plaintiffs allege that all medical staff of the San Diego Sheriff's Department worked under the direction and supervision of Dr. Joshua, who set the policies and procedures regarding medical services.  Compl. ¶ 72.  They allege "[t]here had been a systemic failure to adhere to written policies and procedures with respect to providing adequate health care to inmates in the San Diego County jails," and a "systemic failure in San Diego County to investigate incidents of medical neglect, staff misconduct, excessive force, and deaths in the Jail."  Compl. ¶¶ 73-74.  Plaintiffs allege that sixty inmates in the San Diego County jails died between 2007 and 2012, twelve died in 2013, and sixteen died in 2014.  Compl. ¶¶ 75-77.  Dr. Joshua was aware of these issues because he "told reporters that staff would be trained to be more attentive to signs that might indicate mental distress, like the condition of an inmate's cell or whether someone was refusing meals."  Compl. ¶ 80.  Moreover, Plaintiffs allege that San Diego County officials, including Sheriff Gore, were aware of the systemic problems with "preventable deaths in the jails, but took no action to prevent further Constitutional violations."  Compl. ¶ 78.  In fact, they allege that at the time of Paul's death, "there had been a long-standing custom and practice of inadequate investigations; cover-up of misconduct; and failure to discipline and train deputies and medical staff."  Compl. ¶ 79.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## COUNTY, SHERIFF GORE, AND DR. JOSHUA'S MOTION TO DISMISS

The County Defendants move to dismiss the following causes of action: the second cause of action against Dr. Joshua; the sixth, seventh, eighth, tenth, and eleventh causes of action against the County Defendants; and the ninth, twelfth, fourteenth, and fifteenth causes of action against the County.  Doc. No. 30-1 at 7-8.

### A.   **Plaintiffs' Voluntary Dismissals**

As an initial matter, Plaintiffs indicate that they "will dismiss the Unruh Act claim against defendants City of San Diego and County of San Diego" and will also "dismiss the wrongful death cause of action pursuant to California Code of Civil Procedure section 377.60 on behalf of the Estate[.]" Doc. No. 35 at 29.  Finally, Plaintiffs "concur that the prayer for injunctive and declaratory relief should be stricken." *Id.*  Accordingly, the Court **DISMISSES** the twelfth cause of action against the City of San Diego and the

County of San Diego and the tenth cause of action on behalf of the Estate of Paul Silva. Further, the Court **STRIKES** Plaintiffs' request for injunctive and declaratory relief.

**B.** **The Second Cause of Action**

The Estate asserts a § 1983 cause of action for deliberate indifference to serious medical needs against Dr. Joshua. Compl. ¶¶ 129-52. Plaintiffs allege that Dr. Joshua "was deliberately indifferent to Paul['s] serious medical needs by failing to properly set forth policies and procedures for proper care of inmates in medical distress." Compl. ¶ 142.

The due process clause of the Fourteenth Amendment guarantees that pretrial detainees receive constitutionally adequate medical and mental health care. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). These claims are evaluated under an objective deliberate indifference standard. *Id.* at 1124-25. To establish a pretrial detainee's medical care claim against an individual defendant, a plaintiff must allege: (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015)). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (internal quotation marks and citations omitted).

7

The County Defendants move to dismiss this cause of action as to Dr. Joshua on the grounds that Dr. Joshua did not participate in Paul's treatment while in custody. Doc. No. 30-1 at 12. The County Defendants claim that Plaintiffs' allegations merely show that Dr. Joshua "adopted or failed to adopt unspecified policies that allegedly caused [Paul] to suffer a constitutional deprivation." *Id.* Plaintiffs counter that Dr. Joshua acted with deliberate indifference "in failing to implement policies for evaluation and treatment of inmates suffering from mental health conditions" who are in "medical distress." Doc. No. 35 at 14-15.

According to the Complaint, Dr. Joshua allegedly "supervised the medical staff and directed and oversaw the development and implementation of quality assurance and utilization review policies and procedures." Compl. ¶ 16. He "set[s] forth the standards, policies and procedures on treatment of inmates," and pursuant to those policies and procedures, Plaintiffs allege Paul "received no medical care despite obvious signs that he was suffering from schizophrenia." Compl. ¶¶ 147-48. In particular, Dr. Joshua "knew that a significant number of inmates booked in Central Jail suffered from serious mental health conditions[,]" knew policies that he implemented "with respect to medical care of inmates suffering from mental health conditions were grossly inadequate[,]" and knew that "jail staff were failing to read the patients' medical charts or that they were ignoring the information contained in the medical records." Compl. ¶¶ 143-45. For example, Plaintiffs allege that Dr. Joshua had knowledge of other instances of inadequate mental health care in the San Diego County Jails. *See* Compl. ¶¶ 81-82, 84-85, 90-93 (listing alleged constitutional violations relating to inmates who exhibited signs of mental distress). At one point, Dr. Joshua allegedly acknowledged the inadequacies by telling reporters "that staff would be trained to be more attentive to signs that might indicate mental distress, like the condition of an inmate's cell or whether someone was refusing meals." Compl. ¶ 80. According to Plaintiffs, Dr. Joshua's failure to set forth procedures on proper care of inmates, "including mandates that inmates who suffer from schizophrenia be observed in Medical; that they be monitored regularly by a medical

doctor; [and] that the inmate be transported to a hospital when exhibiting obvious signs of schizophrenia," evinces his deliberate indifference to Paul's serious medical needs. Compl. ¶ 149.

As noted by the County Defendants, Plaintiffs do not allege that Dr. Joshua was aware of any details regarding Paul's specific condition or that Dr. Joshua was personally involved in treating Paul. *See* Doc. No. 36 at 3 (arguing, without citation to legal authority, that the objective deliberate indifference standard requires "specific identifiable intentional decisions made by a defendant with respect to the inmate patient") (internal quotation marks and alterations omitted). Notwithstanding that, Paul's alleged need for treatment, Dr. Joshua's alleged knowledge of inadequate mental health care in San Diego County jails, and his alleged deficient steps to remedy those inadequacies are sufficient to state a supervisory liability claim against him based on deliberate indifference in the provision of medical care to Paul. *See Starr*, 652 F.3d at 1208 (finding a § 1983 supervisory liability claim sufficiently pleaded where the sheriff in his role as a supervisor had knowledge of constitutional violations in the jail and failed to act, amounting to acquiescence of the constitutional violations); *Luong v. Alameda Cnty.*, No. 17-cv-06675-EMC, 2018 WL 2021244, at *7 (N.D. Cal. May 1, 2018) (finding that a plaintiff need only allege a "reasonable inference" that the supervisor defendant "knew of the constitutional violations of her subordinates and failed to act"); *Sanders v. Los Angeles Cnty.*, No. CV 15-00907 AG (RAO), 2017 WL 8751693, at *8-9 (C.D. Cal. Dec. 27, 2017) (finding that the plaintiff sufficiently alleged a supervisory liability claim even though the defendant was retired when the constitutional violations took place because the plaintiff suffered harm at the hands of the defendant's subordinates "because of the policies, practices and customs that were implemented and set in motion by [the defendant] when he was sheriff"); *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 993-94 (E.D. Cal. 2017) (finding allegations of supervisory liability sufficient where the defendant failed to exercise her authority to admit the decedent to a hospital and where the defendant was responsible for compliance with court orders and had knowledge of the

decedent's condition, of the decedent's need for treatment, and of a court order requiring treatment); *Johnson v. Baca*, No. CV 13-04496 MMM (AJWx), 2014 WL 12588641, at *7-10 (C.D. Cal. Mar. 3, 2014)(finding the plaintiff adequately pleaded supervisory liability claims against the then-sheriff by alleging that he knew of violence on inmates in the county jail, especially mentally ill inmates, and took inadequate steps to prevent it).

As such, the Court **DENIES** the County Defendants' motion to dismiss the second cause of action against Dr. Joshua.

## C.  The Sixth, Seventh, and Eighth Causes of Action

The County Defendants contend the Estate's sixth, seventh, and eighth causes of action for failure to properly train, failure to properly supervise and discipline, and failure to investigate pursuant to § 1983 against the County Defendants should be dismissed for multiple reasons.  Doc. No. 30-1 at 10-11, 13-16.  First, the County Defendants seek dismissal of the individual capacity claims against Sheriff Gore and Dr. Joshua.  *Id.* at 10-11.  Second, the County Defendants challenge the sufficiency of the pleadings with respect to each cause of action.  *Id.* at 13-16.

### 1.  *Individual Capacity Claims*

The County Defendants contend these claims are actually official capacity claims, which are duplicative of the claims against the County and further assert that the allegations do not show the requisite individual liability.  *See id.* at 10-11.

#### a.  Duplicity

According to the County Defendants, the claims against Sheriff Gore and Dr. Joshua should be dismissed because they are duplicative of the municipal liability claims. Doc. No. 30-1 at 10-11.  Here, the sixth, seventh, and eighth causes of action are asserted against Sheriff Gore and Dr. Joshua in only their individual capacities.  Doc. No. 35 at 9. Municipal and supervisory liability present distinct and separate questions.  *See Larez v. City of Los Angeles*, 946 F.2d 630, 640-41 (9th Cir. 1991); *see also Guillory v. Cnty. of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984) ("*Monell* does not concern liability of individuals acting under color of state law").  "Supervisory liability concerns whether

supervisory officials' own action or inaction subjected the [p]laintiff to the deprivation of her federally protected rights." *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1222 (D. Ariz. 2003). "In contrast, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs federally protected rights." *Id.* at 1222-23. As a result, Plaintiffs may assert the sixth, seventh, and eighth causes of action against Sheriff Gore and Dr. Joshua in their individual capacities. For this reason, the County Defendants' argument regarding duplicity fails.

<h4>b.  <u>Individual Participation</u></h4>

The County Defendants next argue there is no plausible basis for individual liability. Doc. No. 30-1 at 10-11. Specifically, the County Defendants contend that Plaintiffs do not allege that Sheriff Gore or Dr. Joshua "ever contacted [Paul], knew of his condition or incarceration, or instructed anyone to take any action or refrain from taking any action with respect to [Paul]." *Id.* at 11. "A supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury," but "this does not prevent a supervisor from being held liable in his individual capacity." *Larez*, 946 F.2d at 645. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks and citation omitted). As such, the mere fact that Plaintiffs do not allege Dr. Joshua or Sheriff Gore ever contacted Paul, knew of his condition or incarceration, or instructed anyone to take any action or refrain from taking any action with respect to Paul does not require dismissal of these claims against them. Accordingly, the County Defendants' argument regarding personal involvement fails.

/ / /

/ / /

### 2. Sufficiency of the Pleadings

Plaintiffs assert two theories of liability against the County Defendants in the sixth, seventh, and eighth causes of action for failure to train, failure to supervise and discipline, and failure to investigate. First, they assert that the County is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for its pattern and practice of unconstitutional conduct. Doc. No. 35 at 19, 21-22. Second, they assert that Sheriff Gore and Dr. Joshua are individually liable as supervisors. *Id.* at 18-19, 21-22.

### a. Legal Standard

Under § 1983, municipalities are considered "persons" and may be liable for causing a constitutional deprivation. *Monell*, 436 U.S. at 690. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent the official policy." *Id.* at 694. Municipal liability may be premised on: "(1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may be fairly said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate." *Gonzalez v. Cnty. of Merced*, 289 F.Supp.3d 1094, 1098 (E.D. Cal. 2017). "[A] custom or practice can be inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233-34 (9th Cir. 2011) (internal quotation marks and citations omitted)

"Allegations of *Monell* liability will be sufficient for purposes of a Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency

involved was obvious and the constitutional injury was likely to occur. *McFarland v. City of Clovis*, 163 F.Supp.3d 798, 802 (E.D. Cal. 2016).

Also, a supervisor may be liable in his individual capacity under § 1983 only if there exists either his or her personal involvement in the constitutional deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Accordingly, "a supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (internal quotation marks and citation omitted).

       b.   Discussion

Here, Plaintiffs' sixth, seventh, and eighth causes of action focus on policies, customs, or practices relating to the provision of medical care. *See* Compl. ¶¶ 191-200; 207-216; 217-233. For example, Plaintiffs allege the County Defendants "failed to train medical and psychiatric doctors and nurses on the necessary care of inmates suffering from serious medical conditions" and "on documenting and reading critical information on medical charts to ensure continuity of care." Compl. ¶ 194-95. They further allege that the County Defendants "failed to provide adequate supervision and discipline to the medical staff who were required to render medical care that meet the standards of the Constitution." Compl. ¶ 207. Moreover, the County Defendants "failed to properly investigate the misconduct of the medical staff despite a history of medical neglect and preventable deaths in the San Diego jails." Compl. ¶ 230. This "longstanding pattern of failing to properly investigate staff misconduct [allegedly] led to the actions or inactions of the deputies and medical staff who denied medical care to [Paul]" and the County Defendants' "failure to supervise and discipline was the moving force behind the misconduct of the deputies, the denial of medical care . . ., and the resulting pain and suffering and death." Compl. ¶¶ 216, 228. In summation, Plaintiffs contend the County

Defendants' failure to train, supervise and discipline, and investigate relating to the provision of medical care were the proximate cause of Paul's death. *See* Compl. ¶¶ 185-233.

The Court finds that the factual allegations do not indicate that the alleged inadequate training, failure to supervise and discipline, or failure to investigate relating to the provision of medical care caused Paul's death.[6] *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (stating that the causal connection must be to the deprivation of which the plaintiff complains). Rather, the factual allegations indicate that Paul's death was caused by the alleged excessive force of Doe Defendants. *See* Compl. ¶¶ 54-61. This alleged excessive force was not a foreseeable consequence of the County Defendants' failure to train deputies and medical staff charged with provision of medical care, failure to supervise and discipline those subordinates, or failure to investigate misconduct relating to medical care which caused deaths of inmates. The Doe Defendants' intervening conduct severed any causal chain between the County Defendants' alleged failure to train, supervise, discipline, and investigate and the Estate's injuries. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.").

Based on the foregoing, the Court **GRANTS** the County Defendants' motion to dismiss the sixth, seventh, and eighth causes of action without prejudice and with leave to

---

[6] This case distinguishes from *Estate of Victorianne v. Cnty. of San Diego*, No. 14cv270 WQH (BLM), 2016 U.S. Dist. LEXIS 13029, at *52-58 (S.D. Cal. Feb. 3, 2016), which Plaintiffs attached to their opposition. In *Estate of Victorianne*, the decedent swallowed a baggie of drugs during his arrest and later exhibited signs of medical distress related to overdosing, which ultimately led to his death. *Estate of Victorianne*, 2016 U.S. Dist. LEXIS 13029, at *6-15. Thus, the failure to train, supervise, and discipline subordinates regarding provision of medical care was sufficiently alleged to be the proximate cause of the decedent's death. *See id.* at *52-58.

amend. *See Knappenberger*, 566 F.3d at 942 (noting that a court should grant leave to amend unless plaintiff could not possibly cure the defects in the pleading).

## D.  The Ninth Cause of Action

The County Defendants next seek dismissal of the ninth cause of action for municipal liability asserted by all Plaintiffs and against the County.  Doc. No. 30-1 at 18. Plaintiffs allege that the County failed to set forth policies correcting "systemic deficiencies in San Diego jails' treatment to inmates."  Compl. ¶¶ 241-42.  Specifically, Plaintiffs allege the County either failed to set forth policies or maintained *de facto* policies which ultimately acquiesced the wrongful conduct of deputies and medical staff, amounting to the County's deliberate indifference.  *See* Compl. ¶¶ 239-54.  Plaintiffs' allegations relating to these policies or lack thereof, range from deficiencies relating to training under the ADA and the RA, to a general policy of "permitting unconstitutional and lawless conduct."  Compl. ¶¶ 239-40.  For example, Plaintiffs contend the County "maintained an unconstitutional policy, ordinance or regulation which allowed their deputies and medical staff to deny medical care to inmates."  Compl. ¶ 241.  Plaintiffs also identify several deficiencies in the treatment of inmates, including improper cell checks, inadequate medical staffing, inadequate training on screening, diagnosing, and treating medical and psychiatric conditions, inadequate communication between staff regarding medical information, non-compliant medical policies and procedures, use of unlawful and unnecessary force on mentally ill patients, failure to investigate use of force incidents, failure to train staff on treatment of inmates in medical distress, denying treatment to inmates in medical distress, improper placement of mentally ill inmates, and disbelieving inmate complaints relating to medical conditions and requests for treatment. *See* Compl. ¶¶ 239-54.

As indicated previously, a plaintiff must allege that the "execution of a government's policy or custom . . . inflict[ed] the injury" in order to state a municipal liability claim pursuant to § 1983.  *Monell*, 436 U.S. at 694.  However, conclusory, threadbare allegations that merely recite the elements of a cause of action will not defeat

a motion to dismiss. *Iqbal*, 556 U.S. at 678; *see also Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (noting that "in light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e., 'bare allegations') is no longer viable"). As a result, a conclusory allegation regarding the existence of a policy or custom unsupported by factual allegations is insufficient to state a *Monell* claim.

There are several issues with Plaintiffs' ninth cause of action. First, several of the allegations are duplicative of allegations in the sixth, seventh, and eighth causes of action. As indicated previously, those fail for lack of causation. Second, majority of the allegations in the ninth cause of action are either unsupported by factual allegations or do not establish causation. For example, Plaintiffs allege deficiencies relating to inadequate cell checks or monitoring of inmates, but do not allege that cell checks were inadequate or that deputies were not monitoring Paul. *See* Compl. ¶¶ 50-53. Similarly, Plaintiffs allege deficiencies in medical staffing, but do not allege staffing was inadequate when Paul was in custody. *See id.* Plaintiffs also allege the County failed to adequately train deputies and medical staff on screening and diagnosing inmates needing medical attention, but allege that the intake staff and deputies who observed Paul knew he suffered from schizophrenia or needed medical attention. *See* Compl. ¶¶ 51, 53. They further allege the County had a custom or practice of disbelieving inmate complaints or requests for medical attention, but do not allege Paul ever complained or requested medical attention. *See generally*, Compl. Further, while the ninth cause of action is asserted by the Estate, Silva, and Allen, the Court cannot discern whose constitutional rights or which constitutional rights, were violated by which policies, customs or practices. *See generally*, Compl. ¶¶ 239-62.

The Court reminds Plaintiffs that it must comply with Federal Rule of Civil Procedure 8. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration and citation omitted). Rule 8(d)

instructs that "[e]ach allegation must be *simple, concise, and direct*." Fed. R. Civ. P. 8(d)(1) (emphasis added). If a defendant would have difficulty responding to the complaint, the complaint violates Rule 8. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). Even if a viable cause of action exists, the Court has discretion to dismiss it for failure to comply with Rule 8, particularly where the dismissal is without prejudice and with leave to amend. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1129-30 (9th Cir. 2008); *see also McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit. . . . [R]equiring each averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)."). As such, the Court **GRANTS** the County Defendants' motion to dismiss the ninth cause of action without prejudice and with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (The court "should grant leave to amend … unless it determines that the pleading could not possibly be cured ….")

### E. <u>The Eleventh Cause of Action</u>

All Plaintiffs assert a survival claim for negligence against the County Defendants. *See* Compl. ¶¶ 270-93. The County Defendants contend that Allen and Silva lack standing to bring this claim. Doc. No. 30-1 at 19-20. Even if Allen and Silva had standing, the County Defendants argue they cannot allege facts sufficient to establish a duty owed to them by the County Defendants. *Id.* at 20. Plaintiffs counter that Allen and Silva "are entitled to bring both a wrongful death and survival claim for negligence" and argue they have sufficiently alleged the elements of negligence. Doc. No. 35 at 25-26. However, Plaintiffs appear to concede that only a decedent's personal representative or successor in interest may bring a negligence claim as a survival action on behalf of the decedent's estate. *Id.* (citing *Frary v. Cnty. of Marin*, 81 F. Supp. 3d 811, 843-46 (N.D. Cal. 2015)).

Under California law, a survival action is a personal injury action that belonged to the decedent before death, but which, by statute, "survives" to the decedent's estate for the purpose of recovering damages that would have been available personally to the decedent had he or she lived. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (Ct. App. 2006). California Code of Civil Procedure § 377.30 provides that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest" and such an action "may be commenced by the decedent's personal representative, or if none, by the decedent's successor in interest." Cal. Code Civ. Proc. § 377.30.

Plaintiffs explain that "[t]his action on behalf of the Estate . . . is brought through [Allen and Silva] as the successors-in-interest" and is brought by Allen and Silva "in their own right." Compl. ¶¶ 4-6. Thus, all claims asserted by Allen and Silva are brought "in their own right" and not as successors in interest. In light of the identified capacities of each Plaintiff and Plaintiffs' apparent concession that only the personal representative or successor in interest may bring a negligence claim as a survival action on behalf of the Estate, the Court **GRANTS** the County Defendants' motion and **DISMISSES** with prejudice the survival claim for negligence asserted by Allen and Silva "in their own right" against the County Defendants. To the extent Allen and Silva seek to pursue this cause of action as successors in interest, they must demonstrate their successor in interest standing as defined by Cal. Prob. Code § 6402, Cal. Code Civ. Pro. §§ 377.10 and 377.11, and satisfy Cal. Code Civ. Pro. § 377.32.

"The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The Court has "broad discretion in deciding whether to grant leave to amend and whether to dismiss an action with or without prejudice." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (overruled in part by *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019)). "[C]ourts are only required to grant leave to amend if a complaint can possibly be saved." *Lopez*, 203 F.3d at 1129 (internal quotation marks and citations omitted). The court "may deny leave to amend due to

undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotation marks and citations omitted). Here, Plaintiffs Allen and Silva lack standing to bring the survival claim for negligence in "their own right." Therefore, the claim should be dismissed without leave to amend because amendment of the complaint would be futile.

## F.    The Fourteenth and Fifteenth Causes of Action

The fourteenth and fifteenth causes of action are brought by the Estate and against the County under the ADA and the RA.  Compl. ¶¶ 312-46.  Title II of the ADA, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, section 504 of the RA, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).  "[T]here is no significant difference in the analysis of rights and obligations created by the two Acts."  *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

"Both the ADA and the RA apply in the context of correctional facilities and prohibit disabled inmates from being excluded from participation in inmate services, programs, or activities, including medical programs."  *Atayde*, 255 F. Supp. 3d at 1000 (citations omitted).  There are two ways a plaintiff can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA or RA: (1) discrimination based on disparate treatment or impact; or (2) denial of reasonable modifications or accommodations.  *Id.*  To plead disparate treatment, a plaintiff must allege that other non-disabled individuals without the plaintiff's disability were treated more favorably, and to plead disparate impact, a plaintiff must allege that a facially

neutral policy has a significantly adverse or disproportionate impact on disabled persons. *Id.* at 1001 (citations omitted). To plead a failure to accommodate, a plaintiff must allege that a public entity knew of plaintiff's disability, but failed to provide reasonable accommodations. *Id.* (citation omitted). "A correctional facility's 'deliberate refusal' to accommodate plaintiff's disability-related needs violates the ADA and the RA." *Id.* (citing *United States v. Georgia*, 546 U.S. 151, 157 (2006); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008)). However, the negligent or inadequate provision of medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or RA. *See Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (holding that the ADA and Rehabilitation Act "prohibit[] discrimination because of disability, not inadequate treatment for disability")

The County Defendants do not dispute that Paul qualified as disabled under the ADA and RA or that the jail is a public entity subject to ADA and RA requirements. Doc. No. 30-1 at 22-23. Rather, the County Defendants argue that Plaintiffs cannot show Paul was excluded from the provision of medical care because of his disability. *Id.* Plaintiffs allege that the County denied Paul mental health treatment by "fail[ing] to provide critical medical information." Compl. ¶¶ 319-22, 337, 340-41. According to Plaintiffs, the "outright denial of services" demonstrates the County's discriminatory intent and deliberate indifference. Compl. ¶ 323, 342. The Court disagrees. The gist of Plaintiffs' complaint is that the County's policies, customs, or practices regarding the provision of medical care are inadequate—including failure to communicate medical information between employees and failure to train employees on identifying mental health issues. These allegations do not suggest that Paul was precluded from access to treatment because of his disability. Rather, the allegations demonstrate inadequate identification of the need for treatment. As noted by the Ninth Circuit, "[t]he ADA [and RA] prohibit[] discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022; *see also Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241 (D. Colo. 2009) ("[C]ourts have distinguished between claims

asserted under the ADA that allege that the medical treatment that a plaintiff received or had access to was inadequate, versus claims alleging that a plaintiff was discriminatorily precluded from access to medical treatment altogether."). Accordingly, the Court **GRANTS** the County Defendants' motion to dismiss the fourteenth and fifteenth causes of action. *See Simmons*, 609 F.3d at 1022; *Arreola v. Cal. Dep't of Corr. & Rehab.*, No. 16-cv-03133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017) (noting that the plaintiff "must plausibly allege that he was denied benefits or programs, or discriminated against, because of his disability"). "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (internal citations omitted). As this is Plaintiffs' first attempt to allege ADA and RA causes of action, the dismissal will be without prejudice and with leave to amend.

**G.    Motion for Leave to File First Amended Complaint**

Plaintiffs move for leave to file a First Amended Complaint ("FAC") to: (1) identify newly-discovered defendants who were initially alleged as Doe defendants and (2) set forth one additional § 1983 claim against a newly identified defendant. *See* Doc. No. 69. Federal Rule of Civil Procedure 15(a)(2) instructs that a party may amend its pleading with the opposing party's consent. Here, Defendants filed a notice of non-opposition to Plaintiffs' proposed amendments. As such, the Court interprets Defendants' notice as consent and grants Plaintiffs leave to file a FAC in accordance with this order and their proposed amendments. Accordingly, the Court **GRANTS** Plaintiffs' motion.

**CONCLUSION**

Based on the foregoing, the Court **DENIES AS MOOT** Defendant Community Research Foundation's motion to dismiss (Doc. No. 20) and **GRANTS IN PART** the County Defendants' motion to dismiss (Doc. No. 30) as follows:

18cv2282-MMA (MSB)

1. The Court **DISMISSES** without prejudice and with leave to amend the sixth, seventh, eighth, ninth, fourteenth, and fifteenth causes of action;

2. The Court **DISMISSES** without prejudice the Estate's tenth cause of action;

3. The Court **DISMISSES** with prejudice and without leave to amend Allen's and Silva's eleventh cause of action;

4. The Court **DISMISSES** without prejudice the twelfth cause of action asserted against the City of San Diego and the County of San Diego;

5. The Court **GRANTS** Plaintiffs' motion for leave to file a first amended complaint (Doc. No. 69); and

6. The Court **STRIKES** Plaintiffs' prayer for injunctive and declaratory relief.

**IT IS SO ORDERED**.

Dated: July 17, 2019

Hon. M. James Lorenz
United States District Judge