1                    United States District Court

2              for the Southern District of California

3
                                        )
4    THE ESTATE OF PAUL SILVA, et        )
     al.,                                )   No. 18cv2282-L
5                                        )
          Plaintiffs,                    )   November 2, 2020
6                                        )
              v.                         )
7                                        )   San Diego, California
     CITY OF SAN DIEGO, et al.,          )
8                                        )
          Defendants.                    )
9

10
                       Transcript of Proceedings
11            BEFORE THE HONORABLE MICHAEL S. BERG
                   United States Magistrate Judge
12
     APPEARANCES:
13
     For the Plaintiffs:        IREDALE & YOO
14                                   GRACE S. JUN
                                     Attorney at Law
15                              FRANTZ LAW GROUP APLC
                                     WILLIAM PATRICK HARRIS III
16                                   Attorney at Law

17   For the Defendants:        OFFICE OF COUNTY COUNSEL
                                COUNTY OF SAN DIEGO
18                                   ROBERT ORTIZ
                                     Attorney at Law
19

20

21

22   Transcriber:               Dana Peabody, RDR, CRR
                                District Court Clerk's Office
23                              333 West Broadway, Suite 420
                                San Diego, California, 92101
24
     (Transcript prepared from a recording)
25

1              San Diego, California, November 2, 2020

2                              *   *   *

3         THE COURT:  Okay.

4         THE CLERK:  Calling Matter Number 1 on calendar, the

5  Estate of Paul Silva, et al., versus County of San Diego, et

6  al., Case Number 18cv2282, the Honorable Michael Steven Berg

7  presiding.

8      This is a discovery hearing about a dispute between the

9  plaintiff and the defendant County of San Diego.

10     Counsel, please state your appearances for the record.

11         MS. JUN:  Grace Jun on behalf of plaintiffs.

12         MR. HARRIS:  William Harris on behalf of plaintiffs.

13         MR. ORTIZ:  Robert Ortiz on behalf of the County of

14  San Diego and the individually named county defendants.

15         THE COURT:  Okay.  Thank you.

16     Good morning.  We have gone over your filings in detail,

17  and thank you for that.  It was very informative.

18     It's unlikely I'm going to issue a ruling today.  I have a

19  lot of questions.  I want to talk about this CIRB process, and

20  we're probably going to evaluate everything that we get -- we

21  learn today, and we will issue an order.

22     And I know, Mr. Ortiz, you indicate that it's pretty cut

23  and dry because two courts have already ruled on this.  I

24  actually don't find it quite as cut and dry, and I think what I

25  want to go into is, really, the purpose of the CIRB and the

1    confidentiality aspects of it.  And I think those really are

2    the brunt of your objections to turning this over.

3        So most of my questions today, Mr. Ortiz, are going to be

4    directed to you, and I'll start with the CIRB process itself.

5        The "Definition" section of the San Diego County Sheriff's

6    Department procedures define "review board" as an organized

7    body of investigators who review specific incidents and report

8    their findings to a higher authority.

9        So is there a higher authority that CIRB reports to; and if

10   so, who is that?

11           MR. ORTIZ:  No, the more specific discussion is set

12   forth on the next page which discusses the review board in

13   detail, but there's no separate higher review board for CIRB,

14   Your Honor.

15           THE COURT:  Okay.  And the procedure for initiation --

16   procedure said that the preliminary Critical Incident Review

17   Board must convene within two weeks of the occurrence of the

18   critical incident for a preliminary assessment.  Does this

19   occur even if there's been no complaint or demand made to the

20   sheriff's department?

21           MR. ORTIZ:  Yes, Your Honor.  So the CIRB -- when

22   there's a critical incident and there's a possibility of

23   litigation because critical incidents like the case at issue

24   here is involved, they will proceed with CIRB.  And so what

25   we're talking about, a potential lawsuit.  You have to factor

1   in that most of the lawsuits, even though they're 1983

2   lawsuits, they still include state claims.  You're looking at a

3   six-month window to file a government tort claim, so loss -- so

4   the claim and litigation process starts pretty soon after the

5   incident occurs, so they start the process right away because

6   there's a potential from the department's experience and

7   understanding of litigation.

8            THE COURT:  How is the process started?

9            MR. ORTIZ:  In terms -- can you be more specific,

10  Your Honor?

11           THE COURT:  You said they start the process.  So

12  explain that to me, when you say "they start the process."

13           MR. ORTIZ:  Well, when there's a critical incident,

14  the -- there's an investigation -- in Mr. Silva's case by

15  homicide -- that's started immediately.  There is a

16  determination made that there's going to be -- that this is a

17  matter that requires a CIRB because there's the potential for

18  civil exposure, and it is a critical incident where there is

19  the potential for litigation, so --

20           THE COURT:  Not to cut you off.  Is that Mr. Faigin

21  might say, this might be something that we're looking at

22  litigation.  We need to convene a meeting?  I mean, how does

23  this come about?  Who makes that initial determination?

24           MR. ORTIZ:  In conjunction -- the command, in

25  conjunction with Mr. Faigin.

1        THE COURT:  So there must be some person or persons

2   that initially say, we might be facing litigation on X matter.

3   Who would that be, like a commander, a sheriff, the sheriff,

4   Mr. Faigin?  I mean --

5        MR. ORTIZ:  That would be Mr. Faigin.

6        THE COURT:  Okay.  So Mr. Faigin makes this initial

7   determination that CIRB should meet?

8        MR. ORTIZ:  Well, he's involved -- there's no specific

9   person that said alone.  It's the commanders in conjunction

10  with Mr. Faigin, but Mr. Faigin, as the sheriff's chief legal

11  advisor, is involved in that assessment that there's the

12  potential for a lawsuit and civil exposure.

13       THE COURT:  And Mr. Faigin doesn't give testimony,

14  he's listening to the reports of the individuals, correct?

15       MR. ORTIZ:  Correct.

16       THE COURT:  Okay.  Now, is there -- prior to this

17  happening --

18       MR. ORTIZ:  Sorry.  I'm sorry, Your Honor.  When you

19  say "doesn't give testimony," were you referring to within the

20  CIRB, does he -- is that what you mean by "testimony"?

21       THE COURT:  Yes, he's not a witness.

22       MR. ORTIZ:  Not to the underlying incident.

23       THE COURT:  Right.  So let me take a step back.

24     So you first have an incident, right, and --

25       MR. ORTIZ:  Yes.

1          THE COURT:  -- and there's a -- Department of

2    Investigation Services does a report?

3          MR. ORTIZ:  Yes.

4          THE COURT:  And is this -- would you say that this

5    report is privileged and confidential?

6          MR. ORTIZ:  Yes, they -- the Department of

7    Inspectional Services, yes, they're involved in doing the

8    investigation for the CIRB process.  They're the ones charged.

9    There's a separate homicide investigation that would occur

10   because it's a homicide, and in this case, and in all

11   homicides, we turn over the homicide file.

12         THE COURT:  Okay.  So the homicide investigation, to

13   begin with, you would agree, is not a privilege, correct?

14         MR. ORTIZ:  Correct, and that's turned over -- that

15   was turned over.

16         THE COURT:  Right, and so does -- and then DIS does

17   their own separate investigation, or do they take information

18   from the homicide reports for their investigation?

19         MR. ORTIZ:  Well, they do a separate investigation.

20         THE COURT:  But they interview some of these

21   individuals from the homicide team?

22         MR. ORTIZ:  The underlying facts, they would review

23   the reports and the documents compiled by the homicide

24   investigators, and they would --

25         THE COURT:  Yes.

1          MR. ORTIZ:  So they would do their separate

2    investigation.

3          THE COURT:  So some of the information that they have

4    in their report, you've clearly already determined that to be

5    confidential, correct?

6          MR. ORTIZ:  No, the information itself, correct.  So

7    if DIS and CIRB discuss the Paul Silva case, for example, and

8    say it occurred on February 21, 2018, the underlying facts,

9    some of the facts that occurred are not confidential.  The

10    basic underlying facts and the reports itself are not

11    confidential.

12          THE COURT:  And they use those facts in determining

13    what they're going to present to CIRB though, correct?

14          MR. ORTIZ:  The basic facts of the case, yes, would be

15    used as -- I mean, when they're investigating a critical

16    incident, they would utilize the underlying facts that form the

17    basis of the incident, yes.

18          THE COURT:  And so, then, who attends this CIRB

19    hearing?  The representative?  You have a representative from

20    the facility or the unit commander?

21          MR. ORTIZ:  Yes, they would -- there are the three

22    commanders that are -- a commander from Law Enforcement Court

23    Services and Detention Services, Rob Faigin, the chief legal

24    advisor, and the commander from human resources.  There are

25    also the unit commanders, the DIS that we were discussing, and

1    then when additional areas are to be discussed, then they can

2    request additional individuals attend; for example, from

3    different training units, in-service training, other commanders

4    that they would like to participate in the presentation to the

5    CIRB board.

6             THE COURT:  So they don't have -- they're not regular

7    attendees, it's dependent on the situation?

8             MR. ORTIZ:  Correct.

9             THE COURT:  And the regular attendees would be the

10   division heads --

11            MR. ORTIZ:  Correct.

12            THE COURT:  -- and Mr. Faigin?

13            MR. ORTIZ:  Yes.

14            THE COURT:  And Mr. Faigin is not a voting member,

15   correct?

16            MR. ORTIZ:  Correct.

17            THE COURT:  And do the people that have -- like you

18   indicated might be called in, a weapons training officer or

19   something of that nature, do they attend for the entire

20   session?

21            MR. ORTIZ:  No.  They attend to provide the

22   information that's requested by the CIRB, so they're not

23   sitting in to overhear the voting and the discussions between

24   Mr. Faigin and the other commanders.

25            THE COURT:  So where in the record would I have

1  information about that?

2      MR. ORTIZ:  From Mr. Faigin's declaration that

3  discussed the confidential nature of the CIRB process.

4      THE COURT:  But he didn't indicate who comes and goes

5  and whether they stay for the duration, et cetera?

6      MR. ORTIZ:  Well, the four declarations discuss that

7  it's confidential, and it's not disclosed -- it's not disclosed

8  to the -- any individual deputy that's involved.  That was in

9  the recent declaration that we provided with our opposition.

10     THE COURT:  Right.  But that didn't answer my question

11 as to whether the people come or go or stay for the duration of

12 the meeting.

13     MS. JUN:  Your Honor, also with respect to the

14 sheriff's own policy regarding CIRB, and I'm looking at

15 ECF Number 137-3, which was the policy that the sheriff's

16 department submitted, it says, "The Division of Inspectional

17 Services sergeant, along with the investigator assigned to the

18 incident, must be present, so by policy, there are people who

19 have to be -- are mandatorily required to be present

20 during -- CIRB actually lists quite a few people:  A

21 representative from the facility or unit commander from the

22 employee's chain of command --

23     THE COURT:  Well, stop right there a minute, Ms. Jun.

24 What does that mean, "an employee from the chain of command"?

25 I need a little more information about that.  What would that

1   be?

2           MR. ORTIZ:  Well, it would depend on what the chain of

3   command is for the different incident, Your Honor.  So it could

4   be a lieutenant.  It would depend on the specific chain of

5   command that's at issue with -- in each specific CIRB incident.

6           THE COURT:  And why would that person be there?

7           MR. ORTIZ:  To answer questions and provide

8   information to the legal advisor and the commanders.

9           THE COURT:  About?

10          MR. ORTIZ:  About whatever questions they have

11  regarding the incident.  I mean, whatever information that they

12  need.

13          THE COURT:  How would that person have any information

14  about the incident?  They weren't there, I'm assuming, right?

15          MR. ORTIZ:  Well, if we're making -- I -- we can't

16  make a definitive inclusion on whether they were present or

17  not.  They may have been, but they're there to answer

18  questions.  They want relevant parties with -- who may have

19  information to attend and be available to answer any questions.

20          THE COURT:  I just want to ask you, just so you know,

21  and I have questions about this, but I just want to start with

22  the breakdown, as it were, in like the chain.  So you have an

23  incident.  It would be investigated by the homicide team.  Then

24  DIS on their own would investigate based on a request from

25  Mr. Faigin.  Is that correct?

1        MR. ORTIZ:  It would be.

2        THE COURT:  If they feel litigation might be

3   forthcoming.

4        MR. ORTIZ:  Correct.

5        THE COURT:  So is DIS an agent of Mr. Faigin?

6        MR. ORTIZ:  A legal agent?  Well, Mr. Faigin is the

7   chief legal advisor for the entire sheriff's department, so

8   anyone who is working is at his instruction, so if -- would

9   still be covered under the privilege when Mr. Faigin is

10  seeking -- is involved in assessing CIRB.  So just like any

11  private entity when you have in-house counsel, their

12  communications with an employee regarding a matter that is in

13  litigation or in anticipation of litigation would still be

14  covered by the privilege.

15       THE COURT:  So we have the incident, homicide does an

16  investigation, Mr. Faigin thinks this could be ripe for

17  litigation, so he tells DIS to investigate, they do an

18  investigation, bring it back to CIRB, and then CIRB thinks yes,

19  it is or is not something that should be referred to IA,

20  correct?

21       MR. ORTIZ:  I'm sorry, Your Honor?

22       THE COURT:  No, I just want to make sure I understand

23  the whole -- you know, how the process -- I have questions

24  about it, but I want to understand how the breakdown works.  So

25  start with the investigation by homicide, correct, and then

1   Mr. Faigin -- and stop me at any point if I'm wrong or correct

2   me.  And then Mr. Faigin says this might be ripe for

3   litigation.  I need to get DIS to investigate, so they do an

4   investigation and bring it to the CIRB board.  Is that correct?

5           MR. ORTIZ:  Yes.

6           MS. JUN:  Your Honor --

7           THE COURT:  I'm sorry?

8           MS. JUN:  -- I actually have facts that are different,

9   and I'm taking this from the deposition of Sergeant Moline,

10  which I had attached excerpts, but I have his entire deposition

11  transcript.  He's the sergeant within the Division of

12  Instructional Services or I'm sorry, Inspectional Services,

13  DIS, and according to his testimony, they just do -- they

14  review use-of-force cases.  They routinely review 100 percent

15  use-of-force cases, and there's no indication that Mr. Faigin

16  asks DIS to review anything, and I can submit the excerpt from

17  his testimony if that's helpful to the Court.

18          THE COURT:  Would you agree with that, Mr. Ortiz?

19          MR. ORTIZ:  That DIS does investigation?  They

20  are -- anything involving CIRB, the CIRB process, is at the

21  direction of Mr. Faigin, so in --

22          THE COURT:  I just am trying to figure out how this in

23  a chart would look.  Do you understand?  Like a flow chart.

24          MR. ORTIZ:  Yes, Your Honor.

25          THE COURT:  And so once DIS does their report, Ms. Jun

 1    says it's on their own.  You seem to indicate that it's at

 2    Mr. Faigin's insistence.  In any event, they bring it to the

 3    CIRB board, and then CIRB votes as to whether or not they want

 4    to refer it to IA.  Would that be correct?

 5              MR. ORTIZ:  No, what CIRB does is they do an entire

 6    assessment of the incident and its potential for exposure.

 7    They do as part of that assessment consider and are able to

 8    recommend a referral to IA, but they're also looking at the

 9    potential for future civil exposure, so they do assess whether

10    there are issues involving training or policy and procedures

11    that should be looked at.

12              THE COURT:  Is that in the policy, that they either

13    refer it to IA or prepare it for litigation, one or the other

14    or both?

15              MR. ORTIZ:  I'm sorry, Your Honor.  Is -- in the

16    policy it says that -- the initial language is that the purpose

17    is to confer with counsel in assessing civil exposure.  They

18    review incidents from multiple perspective, including training,

19    tactics, policies, and procedures, with the goal of identifying

20    problem areas and recommending remedial action --

21              THE COURT:  Okay.

22              MR. ORTIZ:  -- so that liability can be avoided in the

23    future.

24              THE COURT:  And then -- I'm sorry.  I didn't mean to

25    cut you off.

1          MR. ORTIZ:  No, go ahead, Your Honor.

2          THE COURT:  And then if IA reviews it and takes action

3   one way or the other, do they bring their recommendation back

4   to CIRB for a vote?

5          MR. ORTIZ:  No, CIRB is not involved in making any

6   I -- internal affairs determinations.

7          THE COURT:  So once IA's involved, that's just a

8   separate entity that has nothing whatsoever to do with CIRB?

9          MR. ORTIZ:  Correct, they do their own investigation

10  and generate their own report and conclusions.

11         THE COURT:  Okay.  So how --

12         MS. JUN:  I'm just a little confused, Your Honor,

13  because CIRB policy says that the internal affairs

14  investigation, if it's determined that no violation occurred --

15  and again, I'm looking at ECF number 137-3.  It's page 7 of 40

16  at the top ECF header.  It says, "After a case is investigated

17  by internal affairs, the case will be forwarded to the command

18  for review consistent with the department's policies and

19  procedures.  If after an internal affairs investigation it is

20  determined that no violation occurred, then the internal

21  affairs case will be forwarded through the command to be

22  reviewed and approved by the voting members of the Critical

23  Incident Review Board."  So it says it's "approved."  They

24  review it, and they approve it.

25         THE COURT:  Mr. Ortiz?

 1          MR. ORTIZ:  IA determinations are made by internal

 2   affairs, and those -- those decisions are not made by the CIRB

 3   board as to whether the individual involved in any critical

 4   incident violated the policies and procedures.  That is

 5   separate, and that's an item of discovery we had discussed with

 6   plaintiff's counsel in this case.

 7          THE COURT:  So here it says that these reports are

 8   forwarded to CIRB, and CIRB either approved or disapproves.  Do

 9   you agree with that?

10          MR. ORTIZ:  Where are you --

11          THE COURT:  In the "Policy" section of the sheriff's

12   procedures.  I don't have the page.  I can pull it.

13          MS. JUN:  ECF 137-3 at page 7.  This is your

14   attachment to your opposition.  It's at the bottom of that

15   page.

16          MR. ORTIZ:  So that's -- it's not -- it discusses the

17   review and approval of the voting members of the Critical

18   Incident Review Board, which is the commanders, but that is --

19   my understanding is not an adjournment of CIRB to conduct that,

20   it's talking about the members, the voting members, which would

21   be the commanders who are involved in CIRB.

22          THE COURT:  And so are those documents discoverable in

23   your opinion whether internal affairs has taken -- decided to

24   take action on an incident or not?

25          MR. ORTIZ:  Yes, if -- yes, those would not be CIRB

1    materials that were part of the actual CIRB review, and --

2         THE COURT:  Are there materials in this case?

3         MR. ORTIZ:  There are not.

4         THE COURT:  So did internal affairs do an

5    investigation in this case?

6         MR. ORTIZ:  Internal affairs did not.  There was no

7    internal affairs investigation.

8         THE COURT:  Okay.  And what do the commanders do with

9    the internal affairs' determination?

10        MR. ORTIZ:  Well, if there's any internal affairs

11   determination made, that would be part of any internal affairs

12   document.  That wouldn't be checked with -- as part of any CIRB

13   documentation from what I've seen, and as I said, Your Honor,

14   there wasn't internal affairs investigation in this case.

15        THE COURT:  And that would not, as you've indicated,

16   be privileged then?

17        MR. ORTIZ:  Correct, yes, Your Honor, it would not be.

18        THE COURT:  So I want to go back to the investigation.

19   The procedure says that, "The standards and compliance manager

20   of DIS will ensure that a copy of all related reports is

21   forwarded to each member of CIRB."  What reports are we talking

22   about?  The DIS reports?  The homicide reports?  What reports?

23        MR. ORTIZ:  I'm sorry, Your Honor.  Where are you

24   reading from?

25        THE COURT:  Your procedure -- the "Procedure"

 1   section -- hold on.  I've got to find it.

 2        MS. JUN:  It's ECF Number 137-3, page 6 of 40 based on

 3   the top ECF header.

 4        THE COURT:  Yes.  Do you see it there under

 5   "Responsibility"?

 6        MR. ORTIZ:  Yes, Your Honor.

 7        THE COURT:  So what reports are we talking about here?

 8        MR. ORTIZ:  Well, the reports that are typically

 9   involved would be reports relating to the underlying incident

10   or the homicide investigation, so it could be, for example,

11   use-of-force report, body-worn camera footage.

12        THE COURT:  None of those are privileged documents,

13   correct?

14        MR. ORTIZ:  Correct, and those have all been turned

15   over.

16        THE COURT:  All those reports have already been turned

17   over?

18        MS. JUN:  I have not received those reports for three

19   years.  I have not received that.

20        MR. ORTIZ:  The reports regarding this incident, we've

21   produced thousands of pages in discovery.

22        MS. JUN:  Homicide investigation.

23        THE COURT:  But the request for production was for

24   three years.

25        MR. ORTIZ:  We have not produced three years worth of

1    every homicide investigation.  That would -- as part of our

2    objection, we discussed the proportionality.  We're talking

3    tens of --

4            THE COURT:  Hold on, Mr. Ortiz.  That wasn't in there.

5    The only objection I had was attorney-client privilege and work

6    product, but there wasn't any proportionality argument

7    objection made.

8            MR. ORTIZ:  As far as the CIRB documents, Your Honor,

9    we objected to discovery with respect to CIRB on

10   attorney-client privilege, but if we're talking about -- those

11   would not be part of a CIRB file, those aren't --

12           THE COURT:  She's not asking for any homicide ever in

13   the city.  She was asking for homicides that went through CIRB,

14   as I understood it.  Is that correct, Ms. Jun?

15           MS. JUN:  Yes, yes, Your Honor.

16           THE COURT:  So we're not talking about --

17           MR. ORTIZ:  If we're talking about every CIRB,

18   Your Honor, then that involves every major critical incident

19   involving the sheriff's department, which would encompass tens

20   of thousands of pages, and those wouldn't be kept.  Those are

21   not part of the CIRB file.

22           THE COURT:  Well, I'm just trying to cut through some

23   of this, Mr. Ortiz.  The objection that I had was that this was

24   all privileged material and attorney-client privilege and work

25   product, but now you're saying that a lot of these are basic

1   reports that are discoverable and turned other to counsel

2   routinely, so I'm not sure why these weren't turned over, any

3   use-of-force documents.  I mean, this is towards the Monell

4   claim, not necessarily for Mr. Silva.

5           MR. ORTIZ:  Yes, so the request asks for the CIRB.

6   These are not kept as part of CIRB.  The underlying tens of

7   thousands of pages of documents for every critical incident

8   involving the sheriff's department over three years are now

9   part of the CIRB file.  That is kept in the chief legal

10  advisor's office.  These are not part of that file.  The CIRB

11  file is just the privileged communications and work product

12  that are part of the CIRB report, so --

13          THE COURT:  Okay.  Well, let's see if we can narrow

14  this issue a little bit.  Let's look at -- let's look at your

15  answers to interrogatory, first of all, number 16.  Would you

16  agree with me that it calls for a yes-or-no answer?

17          MR. ORTIZ:  Yes.

18          THE COURT:  And the interrogatory reads as follows:

19  To the time period February 20, 2015, to February 20, 2018, did

20  the sheriff's department Critical Incident Review Board, CIRB,

21  conduct any internal review, audit, or investigation of any

22  incident involving the use of force by your officer, deputy,

23  employee, or agent?"  Would you agree calls for a yes-or-no

24  answer?

25          MR. ORTIZ:  Yes, Your Honor, the county would be

1    amenable to supplementing that with a yes answer.

2         THE COURT:  Okay.  So that gets rid of number 16.

3         Now let's look at Number 17.  The interrogatory says as

4    follows:  "If your response is yes to number 16, please provide

5    a factual description of each incident in which force was used

6    that CIRB reviewed and/or investigated."  Is there a reason

7    that we couldn't list incidents and a factual description?  You

8    must have a record of that.  I'm trying to see how that would

9    be privileged.

10         MR. ORTIZ:  The determination -- our argument --

11         THE COURT:  It doesn't say "determination," Mr. Ortiz.

12   It says "factual description."

13         MR. ORTIZ:  The matters that went to CIRB --

14         THE COURT:  It says, "If your answer is yes, please

15   provide a factual description of each incident in which force

16   was used that CIRB reviewed and/or investigated."  What would

17   be privileged about that answer?

18         MR. ORTIZ:  The determination of which matters --

19         THE COURT:  It doesn't ask for a determination.  It

20   asks for a factual description unless you're saying of what

21   goes to CIRB, but a minute ago you said that they investigate

22   every use-of-force case, so I'm having trouble trying to cut to

23   the chase here.  You seem to concede that according to the

24   department procedure, the results of CIRB are shared with the

25   employee involved in the incident, and so I'm assuming that

1    those are not subject to the attorney-client privilege.

2            MR. ORTIZ:  I'm sorry, Your Honor.  Can you repeat

3    that?

4            THE COURT:  Sure.  That the results are shared with

5    the employee, right?

6            MR. ORTIZ:  No, Your Honor.  The --

7            THE COURT:  You don't share the results of CIRB with

8    the employee?

9            MR. ORTIZ:  Well, it depends what you mean by

10   "results."  If you're talking about what was discussed within

11   the CIRB, as Mr. Faigin's declaration points out, that is

12   absolutely not the case.

13           THE COURT:  Okay.  So let me get back to this

14   question.  All use-of-force cases are investigated, correct?

15           MR. ORTIZ:  Not by CIRB.

16           THE COURT:  Okay.  But you have a listing -- you have

17   a listing of all cases investigated by CIRB, right?  They must

18   have documentation of that.

19           MR. ORTIZ:  Yes, Your Honor.

20           THE COURT:  In the past three years, correct?

21           MR. ORTIZ:  Yes.

22           THE COURT:  So why would you -- what would be the

23   privilege?  What privilege would you assert in terms of not

24   providing a factual description of what has been investigated

25   by CIRB?  Not the findings as to what was brought before them.

1   How is that privileged?

2           MR. ORTIZ:  Because it involved the mental thoughts

3   and impressions of counsel as to what matters would go to CIRB.

4           THE COURT:  Wait, wait.  Explain that again.  It's the

5   mental thought of Mr. Faigin as to what matters go there?

6           MR. ORTIZ:  There are circumstances, yes, depending on

7   the incidents, if they decide that it could lead to civil

8   exposure, there are cases that they may determine should go to

9   CIRB, so that would involve Mr. Faigin's thoughts and

10  impressions.

11          THE COURT:  But how is it privileged if it went there?

12  Not if they're just preparing for litigation.  I mean, I'm not

13  asking for the results, just as to whether it went there or

14  not.  How is that privileged?

15          MR. ORTIZ:  Because it would involve Mr. Faigin's

16  thoughts and impressions as to what matters were -- would lead

17  to potential civil exposure in the routine use-of-force case

18  where they decide, well, this one has issues, and we would like

19  to take this matter to CIRB because it can lead to civil

20  exposure.

21          THE COURT:  Well, what about the cases that have been

22  to CIRB, then, and have been involved in civil litigation,

23  right?

24          MR. ORTIZ:  Correct.

25          THE COURT:  That would not be privileged.  Would you

1    agree?  I mean, if they're involved in civil litigation, it's

2    public information, and we're not asking for the results of

3    CIRB, just as to -- as to the facts of the cases that went

4    before them as to the ones that are already public involved in

5    litigation.  How would that be privileged?

6              MR. ORTIZ:  For the same reason it's separate from

7    when the matter actually did go to litigation or not.  Your

8    Honor, that wouldn't be -- I don't think that determination as

9    to whether the plaintiff -- a plaintiff decided to file suit

10   removed any privilege from Mr. Faigin's assessment of a case

11   and determination that a matter should go to CIRB because it

12   could lead to civil exposure.

13             THE COURT:  So I want you to look at document 137-3,

14   page 8 of 40.  This is in the "Sheriff Procedures" section.

15             MR. ORTIZ:  Yes.

16             THE COURT:  Under "Distribution of Reports."  The

17   first sentence.  It says, "Within seven days of the CIRB, the

18   facility or unit commander from the employee's chain of command

19   will meet with the employee and debrief them as to the results

20   of the CIRB," correct?

21             MR. ORTIZ:  Correct.

22             THE COURT:  A minute ago you said that these employees

23   are never informed of the results of the CIRB.

24             MR. ORTIZ:  They are not informed of the internal

25   discussions within CIRB, as Mr. Faigin's declaration points

1   out, they're not informed.

2          THE COURT:  Does Mr. Faigin's declaration say the

3   opposite of the policy of the sheriff's department?

4          MR. ORTIZ:  No, it does not.  The internal

5   confidential communications are not disclosed to the individual

6   employees.

7          THE COURT:  What is disclosed to the employee?

8          MR. ORTIZ:  So, for example, if there is an IA

9   referral, a unit commander saying there's an IA that's going to

10  be opened --

11         THE COURT:  That's a result of the CIRB, right?

12         MR. ORTIZ:  Yes, that --

13         THE COURT:  And this employee was not at that meeting,

14  so you're taking this outside the scope of confidentiality,

15  then, are we not?

16         MR. ORTIZ:  No, Your Honor, we're not because we're

17  not discussing the internal communications that occurred within

18  the CIRB itself.

19         THE COURT:  You're just discussing the results.

20         MR. ORTIZ:  Yes, but that would not be part of the

21  internal communications and discussions and assessment.

22  That --

23         THE COURT:  Isn't the result based on the internal

24  discussions and assessment?

25         MR. ORTIZ:  It is, Your Honor.

1          THE COURT:  And if so, then how does that differ from

2    Interrogatory 17?  I mean, you can't have it both ways,

3    Mr. Ortiz.  You can't say we discussed it, but the results are

4    not confidential, we just don't tell them what it's based on,

5    and all they're asking is give us a factual description,

6    they're not asking you for the results, which you just a minute

7    ago said that was not privileged.

8          MR. ORTIZ:  Well, I think, Your Honor, the term

9    "Results," if there are training changes or an IA

10   investigation, being informed -- or a policy change, those

11   facts itself are not privileged, but the CIRB process and how

12   they arrive to those conclusions are privileged.  And that --

13         THE COURT:  Okay.  So if this -- if a commander says

14   to Employee X, CIRB met, and hey, sorry, unfortunately, this is

15   getting referred to IA, right?

16         MR. ORTIZ:  Yes.

17         THE COURT:  That would happen.  You agree that would

18   happen or could happen?

19         MR. ORTIZ:  If it could -- there's nothing to say that

20   has happened in that manner.

21         THE COURT:  I mean, isn't that according to the

22   sheriff's department "Procedure" section that says they will

23   meet with the employee and debrief them as to the result,

24   right?  I mean, I'm just reading from your manual.

25         MR. ORTIZ:  The manual does say that, Your Honor,

1   correct.

2           THE COURT:  Okay.  And so if they debrief them as to

3   the result, they don't have to say, and here is every

4   investigative report we based it on, they just give them the

5   result, boom, plain and simple, referral or no referral.  They

6   don't have to go into every aspect of what that decision was

7   based on, although I would tend to believe they would, but they

8   don't have to.  That referral result is not privileged,

9   correct?

10          MR. ORTIZ:  Correct.

11          THE COURT:  Okay.  This Interrogatory 17 says, "Please

12  provide factual description of each incident which -- in which

13  force was used that CIRB reviewed or investigated."  They're

14  not asking what is it based on.  They're not asking what

15  reports were used.  They just say give us the factual

16  description.  It can be from nonprivileged investigation, it

17  could be from a homicide report, right?

18          MR. ORTIZ:  The factual decision, yes.  There would be

19  other sources of information to obtain that basic information.

20          THE COURT:  Okay.  And you would agree with me, then,

21  that those other sources would not be confidential, correct?

22          MR. ORTIZ:  The other sources not through CIRB, yes.

23          THE COURT:  Okay.

24          MR. ORTIZ:  That would not be --

25          THE COURT:  So then why could you not answer Special

1    Interrogatory 17?

2           MR. ORTIZ:  We believe that the position that

3    determination as to what goes to CIRB, not the determination at

4    CIRB, that is also privileged, but the determination as to what

5    is going to go before CIRB that that involves the sheriff's

6    chief legal advisor and would be privileged and involves his

7    work product because it's his impressions and thoughts.

8        Your Honor --

9           THE COURT:  Go ahead.

10          MR. ORTIZ:  -- for 16 and 17, to move through these,

11   we would -- the county would provide a list of the -- we can

12   provide a description of all of the deaths -- in-custody death

13   cases.  I think that would be appropriate, and plaintiffs, one,

14   from the PMK notice already have that information, but the

15   county would be amenable to providing a list of all of the

16   in-custody death cases that have -- death cases involving use

17   of force that have occurred in that three-year time period with

18   the description of each case.  Just generally.

19          THE COURT:  Ms. Jun, does that satisfy you?

20          MS. JUN:  Well, I didn't ask for just in-custody

21   deaths.  I asked specifically about cases in which force was

22   used that CIRB reviewed.  I mean, I'm sure there's a lot of

23   in-custody deaths just based on the UT investigation, but I

24   don't understand why it has to be narrowed that way if it's not

25   privileged.

 1          MR. ORTIZ:  Well, we're not narrowing it.  We're not

 2    just going to provide matters that went to CIRB.  We would

 3    provide all in-custody deaths and use-of-force death cases, so

 4    this would actually be broader.

 5          MS. JUN:  I'm sorry.  So you're -- I'm a little

 6    confused.  So you're saying the sheriff's department would

 7    provide a factual description of every use-of-force case in the

 8    last three years?

 9          MR. ORTIZ:  That involves the death -- on patrol or in

10    the jail, so this would potentially be broader than simply

11    limiting it to CIRB.

12          MS. JUN:  And then you're still saying that we could

13    not inquire as to whether CIRB reviewed it or, like, whether

14    there was any use-of-force investigation?  Because the

15    problem -- I mean, the Monell claim is about the failure to

16    investigate, right, so it's a two-prong inquiry, like, how many

17    cases are there and what investigation, if any, did the

18    sheriff's department do?

19          MR. ORTIZ:  And that would mean failure to investigate

20    discipline, which is through internal affairs, which we had

21    previously been open to providing statistical information on

22    that category of information.

23          MS. JUN:  I'm a little frustrated because the

24    sheriff's department's response keeps evolving.  Before you

25    told me you weren't going to give me any internal affairs

1    information.

2              MR. ORTIZ:  No, no.

3              MS. JUN:  I just -- this is the problem.  I

4    can't -- we're unable to resolve this amicably because it's

5    just like a constant evolution of the position, and there's

6    always a shifting response about information that I'm asking

7    for.

8              THE COURT:  We're going to get back to that in a

9    minute.  I want to get some more questions about this whole

10   CIRB thing because I really am not quite satisfied with that

11   yet.  So I'm going to get back to Interrogatory 17, 16 and 17.

12      So I want to talk about this investigation, Mr. Ortiz.  And

13   it indicates that video and audio recordings can be available,

14   correct, through the CIRB records?  And what are these?

15             MR. ORTIZ:  It would vary based on the case.  There

16   could be a variety of audio or video.  It could be jail

17   footage, it could be body-worn cameras, it could be audio from

18   a homicide investigation.

19             THE COURT:  Okay.  And then it says that -- the

20   procedure says that, "DIS' sergeant along with an investigator

21   assigned to the incident must be present at CIRB."  Who assigns

22   this investigator?

23             MR. ORTIZ:  My understanding is that's -- no, that

24   would be through DIS.

25             THE COURT:  And what's the purpose of that

 1   investigator's investigation?

 2           MR. ORTIZ:  The purpose of the DIS investigation?

 3   Well, overall, they're assessing the critical incident.

 4           THE COURT:  Right, but simply for IA purposes or for

 5   the CIRB purposes?

 6           MR. ORTIZ:  For CIRB, not for IA.

 7           THE COURT:  Okay.  So is DIS basically the

 8   investigative agency of CIRB?

 9           MR. ORTIZ:  Not solely, Your Honor.  They have other

10   functions.  But they do -- that's part of their role, but

11   that's not their sole function.

12           THE COURT:  And so this investigator, this homicide

13   investigator, is that the one that would be -- that would

14   attend?  Is that what is referred to in Sergeant Moline's

15   testimony or is this someone different?

16           MR. ORTIZ:  Sergeant Moline from the other -- the

17   Bercher case, Your Honor?  I --

18           THE COURT:  Right.

19           MR. ORTIZ:  I'm trying to -- I'm looking at document

20   136-10 and pages -- let's see.  It's page 5 and 6 of 9 in the

21   ECF number, and page -- I guess it sort of skipped around here.

22   What is Your Honor's question?

23           THE COURT:  I'm going to move on for now.  I mean, it

24   has to be something different.

25       The procedure says that, "The investigators involved in the

1    investigation of the critical incident will present facts and

2    circumstances to the members of CIRB."  Is this the same

3    information that's in the reports?

4           MR. ORTIZ:  Just generally speaking, Your Honor, yes,

5    but they would be able to answer questions from the CIRB --

6           THE COURT:  Do they withhold some information from the

7    report and just present it orally to the board?  Did they

8    withhold information --

9           MR. ORTIZ:  I'm not sure I understand.

10          THE COURT:  Perhaps not write a very complete report

11   with the intent to present it all orally to the board in order

12   to keep it under this cloak of attorney-client privilege or

13   confidentiality or work product or do they do a complete

14   report?

15          MR. ORTIZ:  It's presented -- they have an oral

16   presentation to the board.

17          THE COURT:  And the oral presentation -- is there also

18   a paper report that precedes that that the board is in receipt

19   of?

20          MR. ORTIZ:  So that would be -- there's a report that

21   is particular to the Silva case.  There is no report that was

22   prepared for CIRB prior to the CIRB.  There was no report

23   prepared to distribute at the CIRB as an oral presentation.

24   There was a -- the CIRB report was prepared at Mr. Faigin's

25   direction after the CIRB meeting.

1          THE COURT:  And do they have, like, a reporter there

2    or is this recorded?

3          MR. ORTIZ:  No.

4          THE COURT:  Are notes taken that are preserved?

5          MR. ORTIZ:  As a general matter, they do not.  There

6    are no -- there's no one to transcribe the meeting.

7          THE COURT:  So what is the source of the information

8    that is conveyed by the DIS investigator?  Just reading the

9    homicide report?

10         MR. ORTIZ:  As a general matter, they can gather

11   information from a variety of sources.  There's no one source,

12   but that would be one of the sources that would be used.

13         THE COURT:  So this investigator, the DIS

14   investigator, would potentially talk to witnesses, read

15   reports, but not do any written report of his or her own?

16         MR. ORTIZ:  That's correct.

17         THE COURT:  It's all oral presentation at the meeting?

18         MR. ORTIZ:  In Silva, there was no prereport that was

19   prepared.

20         THE COURT:  And so when this investigator, then,

21   testifies before the board or maybe not testifies, but presents

22   his information, is this investigator also questioned about

23   whether the employee violated any policies?

24         MR. ORTIZ:  There's discussions about those general

25   issues, yes, but they -- I can't say what specific questions

1   are asked of the presenters to the CIRB.  It would vary

2   depending on the case, and that's part of the privileged

3   communication.

4        THE COURT:  And does Mr. Faigin preapprove the

5   questions that are asked by the board members?

6        MR. ORTIZ:  No.

7        THE COURT:  At the end of the hearing, how do they

8   determine whether they need additional information?

9        MR. ORTIZ:  The -- well, there's no set way that they

10  would -- it would be a discussion between Mr. Faigin and the

11  commanders if there's a want or need for additional

12  information.

13       THE COURT:  And so there's no report prepared by DIS,

14  and is there a -- would you say there is or is not a report

15  prepared, then, by CIRB?

16       MR. ORTIZ:  There's a CIRB report that is prepared by

17  DIS after the CIRB.  That is the report that's discussed in the

18  declaration that's marked "Privileged Attorney-Client" prepared

19  at Mr. Faigin's direction that he maintains in his office.

20       THE COURT:  And what was the purpose of that report?

21  Just a record of what happened at the meeting?

22       MR. ORTIZ:  Yes.

23       THE COURT:  And so it's just basically -- would you

24  say it's just a summary?

25       MR. ORTIZ:  That would be part of it.  It summarizes

1   the discussions that occurred within the CIRB meeting.

2              THE COURT:  And are these reports shared with anyone?

3              MR. ORTIZ:  No, these reports, as Mr Faigin indicated

4   in the multiple declarations in the different cases, that these

5   are confidential.

6              THE COURT:  I understand.  But does he share it with

7   anyone?

8              MR. ORTIZ:  He does not.

9              THE COURT:  Okay.  So this would just be for his own

10  edification in terms of if the case is ever litigated, he'll

11  have a summary of what was discussed?

12             MR. ORTIZ:  Yes, these are his record of what was

13  discussed at the CIRB.

14             THE COURT:  Okay.  So I'm just curious.  Why would

15  this DIS investigator have to write this report to Mr Faigin if

16  nothing -- it's just for Mr Faigin's knowledge?  Why wouldn't

17  Mr Faigin just keep notes himself and keep them locked away?

18  Why does he need DIS to do a summary for him?

19             MR. ORTIZ:  I mean, there's -- the same reason I

20  think, Your Honor, any attorney, they would have staff or

21  someone take notes or prepares memos on their behalf for them

22  for their file.  I think that's standard to have someone --

23  even if you don't prepare it, but someone at your direction

24  prepare a memo of conversations or meetings to -- as part of

25  the file.

1   THE COURT:  And then if they say, you know what?  This

2   is kind of the bad apple we got here.  We should send this over

3   to IA.  How does that happen?  Do they just make a phone call?

4   What's the procedure?

5   MR. ORTIZ:  So that -- well, I believe there's no form

6   that gets processed through CIRB to be sent to IA.  It

7   can -- yes, there can be a phone call.  That would be --

8   THE COURT:  By whom?  Who would make that call?

9   Mr. Faigin?

10  MR. ORTIZ:  No.  There's no one specific person tasked

11  with sending that information -- communicating with IA.

12  THE COURT:  And what would they say?  Would they say,

13  hey, we had this discussion in this CIRB meeting, and, you

14  know, it came out that this guy was quick on the draw.  You

15  guys need to do an investigation?  How would that be presented?

16  MR. ORTIZ:  Well, I don't think I could account for

17  every circumstance.  I just know there's no --

18  THE COURT:  Your procedure and how that works.

19  MR. ORTIZ:  Well, IA -- IA would have their own IA

20  file as to how that would identify how a matter -- an IA

21  investigation is open, so there would be an IA investigation

22  can be opened in a variety of ways, through citizens'

23  complaints, through --

24  THE COURT:  Right, I'm talking about -- I'm only

25  talking about what comes from CIRB.

1          MR. ORTIZ:  There's no CIRB specific document

2     that -- like a form that is sent over to, say, review for IA.

3     There's nothing like that that is part of the CIRB.  Any

4     information about how an internal affairs investigation would

5     be processed would be part of the internal affairs file or

6     documentation.

7          THE COURT:  Part of the process of the review board is

8     to send these matters over to IA.  It's not just for litigation

9     purposes, right?  I mean, for starters, it's not just a

10    litigation board, that it's also for policies and procedures.

11         MR. ORTIZ:  They review them as part of their -- the

12    process to assess civil exposure and potential liability in the

13    future, so that could include, you know, disciplinary policy,

14    procedures training as part of the CIRB process, yes.

15         THE COURT:  Right, so I'm -- your sheriff department

16    procedures on page 7 of 40, ECF document 137-3, it says, "If a

17    majority of the voting members determine that a policy

18    violation may have occurred, a case will be forwarded to

19    internal affairs."  And then so when it said a case will be

20    forwarded, it sounds like from your department's manual it's

21    more than just a phone call.  It sounds like they forward

22    information.

23         MR. ORTIZ:  The CIRB report does not get forwarded.

24    The --

25         THE COURT:  So what would get forwarded?  That's what

1    I'm asking you.

2          MR. ORTIZ:  There's no CIRB documentation that gets

3    forwarded to internal affairs.

4          THE COURT:  Could the DIS investigation information be

5    forwarded?

6          MR. ORTIZ:  As part of internal affairs, they would

7    review all of the underlying reports, the videos, the basic

8    reports that relate to the incident.

9          THE COURT:  So the same information that internal

10   affairs would be reviewing is the same information that the

11   CIRB board would be reviewing?

12         MR. ORTIZ:  The underlying documents, that would be

13   part of it.  I can't say conclusively that that's all internal

14   affairs would review.  They would do their own separate

15   investigation, but that would typically be part of what is

16   reviewed.  Just as a practical matter, you would -- if there's

17   an internal affairs investigation, you would review reports and

18   documents relating to the incident you're reviewing.

19         THE COURT:  Are there any documents that internal

20   affairs reviews that you would claim as privileged regarding an

21   incident of CIRB reviews?

22         MR. ORTIZ:  Under the attorney --

23         THE COURT:  Under any --

24         MR. ORTIZ:  Well, I think it would depend on -- yes,

25   there would be -- there could be a variety of privileges that

1    may apply.

2            THE COURT:  Specifically.

3            MR. ORTIZ:  As to this case, there wouldn't be because

4    the --

5            THE COURT:  There was no investigation report in this

6    case, I understand, but I'm talking about in other cases.

7            MR. ORTIZ:  Your Honor, I think it would be hard for

8    me to say as a general rule what privileges would apply to a

9    hypothetical in terms of an investigation.  There could be a

10   variety -- privacy privileges that different federal privileges

11   official information.  There's a variety of privileges, but I

12   can't say definitively without discussing a specific case which

13   ones could -- or would potentially apply.

14           THE COURT:  So I want to talk to you about these

15   reports for a minute.  Mr. Faigin wrote, "An after-action

16   report should be kept to establish that a review has occurred

17   and to memorialize actions taken by the department."  I'm

18   assuming these are the reports that DIS prepared for him that

19   he keeps locked up, right?

20           MR. ORTIZ:  Are you -- Your Honor, are you reading

21   from the --

22           THE COURT:  Mr. Faigin's declaration.  I don't know

23   which one, quite honestly, because he had a few of them, but he

24   wrote that reaction should be kept -- factually.

25           MR. ORTIZ:  That might be in his -- I think that's in

1  his memo to the county.

2          THE COURT:  Well, there was an article that he wrote

3  for --

4          MR. ORTIZ:  Right.

5          THE COURT:  I think that is from there.  Hold on a

6  second.  Let me pull that up.  Yeah, that's up.  It's in the

7  "Chief Counsel Critical Incident Review Board Creation and

8  Refinement," in that article.

9          MR. ORTIZ:  Yes.

10          THE COURT:  You wrote on page 7 of 8, top of the page,

11  "After-action reports should be kept to establish that a review

12  has occurred and to memorialize actions taken by the

13  department.  A report should include a list of who attended the

14  CIRB meeting and recommendations that came from the meeting.

15  An after-action report should also include confirmation that

16  assigned tasks were successfully completed."  And that's the

17  report, I'm assuming, that you say is locked up, right?

18          MR. ORTIZ:  Correct, Your Honor.  Yes, Your Honor, but

19  just to be clear, this report -- I'm sorry, this document is

20  discussing generally a CIRB process that he wrote for a

21  magazine, not the sheriff's department policies and procedures.

22          THE COURT:  Okay.  But it was this year that he wrote

23  it, right?  Oh, 2011.

24      So in that article, he indicates that these -- on

25  these -- actions taken, do you have any way to know whether the

1    assigned tasks were completed or not?

2         MR. ORTIZ:  Well, they're -- yes, that would be kept

3    as part of the CIRB memo.  It would also be -- it would be part

4    of the CIRB memo, and it would be part of whatever -- if there

5    were changes made, for example, to policies and procedures,

6    those would be kept with the relevant policy and procedure

7    committee or if there was an IA, that would be part of an

8    internal affairs file.

9         THE COURT:  And are you claiming that all those

10   different reports are made for the purposes of litigation?

11        MR. ORTIZ:  The CIRB reports, but what the CIRB report

12   would be privileged, but nothing from -- there was no IA in

13   this case, but any changes relating to policies, procedures, or

14   training would not be privileged.

15        THE COURT:  And so are there reports regarding those

16   changes to policies or procedures?

17        MR. ORTIZ:  No.

18        THE COURT:  No reports are ever --

19        MR. ORTIZ:  Correct, there was no report.

20        MR. HARRIS:  How do we ever know if there's been a

21   policy change based on something coming out of CIRB?

22        MR. ORTIZ:  Well, a request that says what policy

23   changes were made as a result of the incident involving

24   Mr. Silva, that would not be privileged.  That would not

25   involve CIRB.  That's a way to -- I think one of the main

1  issues is that the information that the plaintiffs are seeking

2  relating to discipline or alleged allegations of failure to

3  discipline, training, supervising, those sources of information

4  are available through other areas of the department other than

5  CIRB.  So if you want --

6          MR. HARRIS:  So if plaintiffs were -- if plaintiffs

7  were requesting what policies were specifically changed as a

8  result of the review hearing on Mr. Silva, that would be

9  provided?

10         MR. ORTIZ:  If any changes to policy were as a result

11 of or relating to Mr. Silva's incident, yes.

12         THE COURT:  Okay.  So let me ask you this:  If your

13 sole purpose of having this CIRB hearing is to prepare for

14 litigation, why do we need CIRB at all?  Why don't these

15 individuals just meet in Mr. Faigin's office and say, hey,

16 let's talk about what our civil exposure could be here?

17         MR. ORTIZ:  Well, that's exactly what they do without

18 the office.  They meet in a conference room, but that's exactly

19 what they're doing.

20         THE COURT:  That's the only reason, is just to go over

21 litigation strategy?

22         MR. ORTIZ:  Not litigation strategy.  It's to attest

23 an incident where there's the potential for exposure and to

24 see -- and is there any changes we can make that would limit

25 potential exposure in the future because that's what they're

1   doing.  They move people to present the underlying information

2   because the commanders and the attorney don't know the

3   underlying facts as well as other members of the department, so

4   they have individuals present to them.

5            THE COURT:  So what's the whole voting procedure all

6   about then?  I mean, if they're just sitting around to talk

7   about litigation or potential litigation, why are we talking

8   about both?

9            MR. ORTIZ:  Because they -- they're sitting around

10  talking about litigation, but they're making decisions as well

11  based on exposure and liability issues.

12           THE COURT:  Such as what?  Give me, like, an example.

13  I don't mean necessarily this case, but anything.  Just throw

14  out an example.

15           MR. ORTIZ:  Well, if there's a need for a policy

16  change.

17           THE COURT:  So how would that be privileged if that's

18  the case?  Why would that be a privileged matter?

19           MR. ORTIZ:  Well, Your Honor, it depends what you're

20  talking about.  If a policy --

21           THE COURT:  I mean, I can certainly see Mr. Ortiz if

22  they're talking about, hey, we have a potential for litigation

23  here in the following area, and here's what we should prepare

24  for, clearly that's litigation strategies and attorney-client

25  privilege and work product.  I get that.  But if you're talking

1   about, hey, you know, maybe we should have a guy check these

2   people out, you know, two times every hour instead of one, I'm

3   trying to figure out how that's an attorney work product issue.

4   I mean, I guess what I'm trying to figure out here is the whole

5   reason for this CIRB board.  On the one hand you say it's to

6   talk about all these litigation issues and pre-litigation

7   issues, and that's why Mr. Faigin called the people together,

8   and then on the other, you say, well, yeah, we also talk about

9   maybe policies and procedure changes, and the attorneys can ask

10  if any policies or procedures were changed as a result of it.

11  Well, if they were changed as a result, then clearly that's not

12  privileged.  You already said it wasn't.  And then you say, and

13  we also tell an employee, yeah, you might get a referral to IA.

14  That's not privileged, but the information that came out of it

15  is.  I mean, it's sort of like you're throwing up this

16  attorney-client privilege when it suits you, and when it

17  doesn't, you say it's not, so I'm really try to get a handle on

18  what is privileged and what is not.

19          MR. ORTIZ:  Well, Your Honor, just -- just so I'm

20  clear, when there are changes made, I did not say that they can

21  know that those come out of the CIRB.  A request or policies

22  and procedure changes relating to an incident, we would produce

23  those, but to ask for the CIRB report discussing why it was

24  changed, why it's necessary to avoid exposure and liability in

25  this case or in the future as part of the CIRB process would be

1  privileged.

2        THE COURT:  Well, you said there is no report for

3  that, that the only CIRB report is just a summary of the

4  hearing regarding the litigation, so I don't know why there

5  would be any policy and procedure report that you're talking

6  about because you said they weren't made.

7        MR. ORTIZ:  In this case, there was none.  I'm talking

8  about documents relating to a policy and procedure change as

9  part of a policy and procedure committee within the sheriff's

10  department.  That would be separate from CIRB.  Those documents

11  would not be privileged.  They don't involve Mr. Faigin.  They

12  don't involve his assessment of liability.  Those would not be

13  privileged.  The CIRB process to reach that result would be

14  privileged because it involves Mr. Faigin's assessment with the

15  other commanders, and the fact that they both doesn't impact or

16  change the attorney-client privilege assessment, I don't

17  believe it does.

18        THE COURT:  So at these CIRB hearings, do they talk

19  about training of these officers or no?

20        MR. ORTIZ:  Well, as a blanket, general, yes, they can

21  talk about anything that impacts that incident they're

22  reviewing.  It could be a whole range of things that they

23  discuss with Mr. Faigin.

24        THE COURT:  Depending on who they bring in to talk

25  about.

1          MR. ORTIZ:  Depending on who Mr Faigin decides is

2    relevant to bring in to assess a specific incident.

3          MS. JUN:  I don't think, according to your policy,

4    it's not Mr Faigin who makes that determination, though.  It

5    says, "Other representatives may request to attend CIRB at the

6    discretion of the chair," and the chair is the human resources

7    service bureau commander, and I'm looking at ECF Number 137-3,

8    page 6 of 40 at the very bottom.  Who attends CIRB doesn't seem

9    to be at the discretion of Mr Faigin at all.

10          MR. ORTIZ:  It's -- all of the decisions are in

11    consultation with Mr Faigin, who's part of the CIRB.

12          MS. JUN:  Yeah, but that's not what your policy says.

13    "Other representatives may be requested to attend the CIRB at

14    the discretion of the chair."  That's at the bottom of page 6

15    of 40, ECF Number 137-3, and it says -- above that, it says,

16    "Human resource services bureau commander shall chair the

17    meeting."  So it's human resources who gets to decide who

18    attends the meeting, not the legal advisor.

19          MR. ORTIZ:  At the discretion of the human resources

20    chair in consultation -- the chief legal advisor is there for a

21    reason with the commanders.

22          THE COURT:  So what are they voting on, whether or not

23    they're going to make policy changes?  They're not voting on

24    whether they should prepare for litigation.

25          MR. ORTIZ:  No, they're -- the vote -- there's no one

1    specific item that they -- or -- it would be -- involve a range

2    of issues, Your Honor.  There's no specific items that they are

3    voting on.  Whatever they determine would lead to -- whatever's

4    relevant to that case after the assessment with Mr Faigin, the

5    other commanders, and what could expose the department to

6    liability in the future, so it could be a whole range of

7    issues.  But the decision whether to change policy, procedures,

8    training is not made by CIRB.  CIRB doesn't make those

9    decisions.

10           THE COURT:  Your "Policies and Procedure" section

11   says, "If during the Critical Incident Review Board a majority

12   of the voting members determine that no policy violations have

13   occurred, the CIRB case will be forwarded to the standards and

14   compliance manager of the Division of Inspectional Services for

15   the generation of a report consistent with the board's findings

16   at the conclusion of the CIRB."  So are those reports -- those

17   are obviously separate and in addition to the reports that are

18   kept with Mr Faigin, correct?  Because each go to the standard

19   and compliance manager.

20           MR. ORTIZ:  Your Honor, where are you reading from?

21           THE COURT:  Document 137-3, page 8 of 40 at the top of

22   the page.  It says, "CIRB is also tasked with making

23   recommendations for training based upon the analysis of the

24   critical incidents."

25           MR. ORTIZ:  Yes, and that's -- it's a recommendation.

1    Those --

2           THE COURT:   What about these other reports that are

3    kept with DIS?   These seem to be in addition to the summary of

4    the report from Mr Faigin.

5           MR. ORTIZ:   I can say there's no separate DIS report

6    involving Mr. Silva.   There's simply the CIRB report, which is

7    the memo summarizing the CIRB meeting, and the different

8    discussions that occurred during that CIRB meeting.

9           THE COURT:   Give me just a moment.   I'm looking at my

10   notes here.

11      So have any reports been tendered to the plaintiffs

12   regarding policy and procedure changes?

13          MR. ORTIZ:   I don't recall if there has been a request

14   for -- for any changes as a result of Mr. Silva's case.   We

15   produced policy.

16          MS. JUN:   Your Honor, this is Grace Jun.   I

17   specifically issued a PMK deposition notice, a notice of

18   deposition pursuant to Federal Rule of Civil Procedure

19   30(b)(6), and I asked for these things.   I asked for somebody

20   to testify about policy changes that have been made, and as a

21   result of CIRB investigations, and then I've also asked for

22   referrals to internal affairs from CIRB, and the county has

23   objected saying this is all attorney-client privilege.

24          MR. ORTIZ:   The requests if they're all filtered

25   through CIRB, what did CIRB do, then we would object because

1    the CIRB process is privileged.  A request asking for policies

2    and procedure changes or training changes, generally those are

3    different.  It's a different request, so filtering --

4            MS. JUN:  But if -- you're basically giving me the

5    underlying information, and you're just saying that I can't

6    know if it came from CIRB, but if you're providing the

7    underlying information, the underlying facts and circumstances

8    and decisions, then that's not privileged.  You can't say that

9    the underlying facts are privileged if you're able to disclose

10   it.

11           MR. ORTIZ:  And we're not.

12           MS. JUN:  It's not being treated as if it's

13   confidential if you're saying -- you can know the facts, you

14   just can't know if it came from CIRB, well, then that means the

15   CIRB process isn't confidential.

16           THE COURT:  So I'm wondering how you're going to

17   defend a Monell claim if you can't discuss anything in terms of

18   policy and procedures that originated from CIRB.  How are you

19   going to do that?

20           MR. ORTIZ:  Your Honor, the same way every case has in

21   the years --

22           THE COURT:  I haven't done the other cases, so

23   enlighten me.

24           MR. ORTIZ:  Judge Dembin said CIRB is privileged.

25   Judge Adler said CIRB is privileged.

1          THE COURT:  I get what those judges said, but now

2    you're in front of a different judge who's struggling with it,

3    so enlighten me, Mr. Ortiz.

4          MR. ORTIZ:  Well, if the claim is failure to

5    discipline, failure to train, failure to supervise deputies

6    involved in excessive force, then they can request the training

7    and the disciplinary evidence separate from CIRB.

8        Our issue is that they are trying to go to get information

9    through the CIRB process, which is privileged.  Asking for

10   information in every other case that I've handled, including

11   with plaintiff's counsel and our office, they -- other than the

12   ones where CIRB were denied, they were able to pursue their

13   Monell claims.  They have as part of the PMK notice that

14   they -- they looked at 40-plus cases involving use of force

15   involving sheriff's deputies.  They can pursue discovery that

16   does not go through CIRB.  It does not have to involve CIRB to

17   support their Monell claim.  They can seek the training, they

18   can seek the policies and procedures.  That's information they

19   can get that does not have to go through what the CIRB

20   assessment and thought process was.  And so --

21         MS. JUN:  So our Monell claim is a failure to

22   investigate deputies for when they use force, and in many -- I

23   mean, we have -- we know a list of eight cases that I submitted

24   where there were no internal affairs investigations, but there

25   were CIRB investigations, so if we come in and say there's no

1   use-of-force investigation, are you going to come back and say,

2   well, yeah, we did CIRB?

3             MR. ORTIZ:  No, we would never --

4             MS. JUN:  You can't have it both ways.

5             MR. ORTIZ:  And defendants have not and, frankly, in

6   any case that I've ever litigated or that the sheriff's

7   department, we've never raised CIRB.  Plaintiff's counsel at

8   the informal discovery conference raised that same argument

9   that we're using it as a sword and a shield.  I've never seen

10  the department argue in litigation that we have CIRB.  We're

11  meeting the standards because we have CIRB.  That's never been

12  an argument I've ever raised nor do I intend to do that in this

13  case.

14            MS. JUN:  Well, then I'm allowed to come in and say

15  you do no use-of-force investigations, which is as a matter of

16  law deficient under Ninth Circuit authority.

17            MR. ORTIZ:  You're entitled to absolutely argue

18  whatever position you -- yeah, but we don't believe that's the

19  case.  I mean, that's a separate issue.  There is a homicide

20  investigation done with thousands of pages of documents.

21  That's a separate issue, though.

22       Getting to CIRB and Your Honor's question, there are a

23  variety of sources and evidence separate from CIRB that can

24  support the plaintiff's Monell claim.

25            THE COURT:  You know, Mr. Ortiz, I don't know, I don't

1  want you to feel like I'm completely frustrated here, but I'm

2  feeling somewhat frustrated by some of these responses, and I

3  think what I want to do at this point in time is I'm certainly

4  not going to take three years of reports in camera, but I would

5  like to see two reports:  one with a referral to IA and one

6  without.  And it would be within that three-year period, and I

7  would like to review them in camera.  One of these reports that

8  Mr Faigin keeps that you claim are based solely for litigation

9  purposes.  I want to see what they actually contain, if they

10 are simply litigation-type summaries of the hearing or if it's

11 a much more extensive investigative report that should be

12 tendered.  So I'd like to see two of these.  How long do you

13 think it would take to get maybe -- could we do it by the end

14 of this year?

15        MR. ORTIZ:  Your Honor, I'm sorry.  You said one

16 referral to IA and one --

17        THE COURT:  One that would have ended with a referral

18 and one that did not.

19        MR. ORTIZ:  Your Honor, this is -- obviously is a big

20 deal to the department, and I would like to speak --

21        THE COURT:  Well, I'm not turning it over to Ms. Jun.

22 I'm looking at it in camera.

23        MR. ORTIZ:  I understand, Your Honor.  Is the Court

24 intending to issue a ruling with respect to these two reports

25 now, so --

1    THE COURT:  No, I want a better understanding of what

2  we're actually dealing with here because it just -- I'm going

3  to be quite blunt with you.  It seems a little foggy and cloudy

4  at this point in time.  I mean, it just -- I'm just not buying

5  this whole DIS doing no reports prior to coming to these

6  hearings and doing it all off the hip, and then they do a

7  report that Mr Faigin keeps locked away that is basically just

8  for, you know, litigation purposes.  I want to see what these

9  reports contain.  I want to take a look at it.  I'm not saying

10  you're deceiving the Court, but I'm just saying I want to take

11  a look at it.  I'm not impugning anything about you, Mr. Ortiz,

12  and I don't want you to take it that way.

13    MR. ORTIZ:  No, I understand, Your Honor.  Just -- I'm

14  trying to assess what the department -- what the options would

15  be, and if Your Honor wants it by Friday --

16    THE COURT:  Well, why would they be so concerned about

17  if I see one of Mr Faigin's reports?

18    MR. ORTIZ:  We're concerned about attorney-client

19  privilege the same, Your Honor, as any attorney.  If I ask

20  plaintiff's counsel, let me see your emails to your client --

21    THE COURT:  It's a little different for Ms. Jun seeing

22  it as opposed to me, and I'm not the trial judge, I'm the

23  discovery judge.

24    MR. ORTIZ:  Well, I understand, Your Honor, and I

25  just -- if that's Your Honor's ruling, then we'll comply.

1    THE COURT:  Mr. Ortiz, I'll issue an order, and then

2    if you or your department want to take it up, so be it.  I

3    mean, I'm not going to -- I'm not thin skinned.  Don't worry.

4    MR. ORTIZ:  I wasn't implying that, Your Honor.  I

5    will speak with the department today, and if there can be an

6    order to clarify or setting forth that ruling so I can -- that

7    we are -- that's the Court's order to provide them for in

8    camera review by Friday, then I'll discuss it with the

9    department and --

10    THE COURT:  Can you hold on for just one second?  I

11    want to speak for one moment, so hold on.  And I'm not pausing

12    the recording, so I don't want you to say anything to each

13    other because it's still being recorded.

14    (Brief pause in the proceedings.)

15    THE COURT:  Okay.  I'm back.  Thank you.

16    In reflection, I'm going to not have you run any reports at

17    this time, Mr. Ortiz.  We're going to issue an order.  It will

18    come out soon, but just so that you could probably start

19    preparing, I'm going to have -- I'm going to order that you

20    respond to the interrogatory and ROP and prepare a privilege

21    log for any information that you do not wish to provide, and

22    after we see that, then I'll determine if I'm going to take any

23    reports in camera or not.  But for the time being, you don't

24    have to obtain any reports.

25    MR. ORTIZ:  Okay, Your Honor.  Thank you.

```
 1              THE COURT:  You're welcome.
 2         Okay.  Anything further?
 3              MS. JUN:  Your Honor, this is Grace Jun.
 4         I'm sorry, I'm a little confused.  Did you say that you
 5    would issue a written order that addresses all of the discovery
 6    requests?
 7              THE COURT:  Yes.
 8              MS. JUN:  Okay.  Thank you, Your Honor.
 9              THE COURT:  But I just said to give Mr. Ortiz a
10    heads-up so that he can start preparing.  We're going to order
11    that he respond to the interrogatories and document production
12    and prepare a privilege log for any documents he does not wish
13    to provide.  Okay?
14              MS. JUN:  Yes, Your Honor.
15              MR. ORTIZ:  Yes, Your Honor.
16              THE COURT:  I'm going to go off the record unless
17    anybody else wants anything on the record.
18              MS. JUN:  I have a question, Your Honor, but it can be
19    off the record.
20              THE COURT:  Okay.
21                             ---000---
22
23
24
25
```

1                    C-E-R-T-I-F-I-C-A-T-I-O-N

2

3      I hereby certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6      Dated November 7, 2020, at San Diego, California.

7

8
                        /Dana Peabody/
9                       Dana Peabody, Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25