UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF PAUL SILVA, by and through its successors-in-interest LESLIE ALLEN and MANUEL SILVA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 18cv2282-L (MSB)<br><br>**DISCOVERY ORDER**<br>**[ECF NO. 136]** |

    Plaintiffs and Defendant County of San Diego ("the County") have presented a dispute to the Court regarding whether proceedings before the Critical Incident Review Board ("CIRB") and the subsequent reports summarizing the proceedings are shielded from discovery by the attorney-client privilege and the work product doctrine.

    On October 16, 2020, Plaintiff moved to compel responses to three interrogatories and one request for production ("RFP").  (ECF No. 136 at 1-5.)  Plaintiffs' written discovery essentially asks the County to identify any CIRB "internal review, audit, or investigation" of use-of-force incidents by Sheriff's Department employees that were conducted between February 20, 2015 and February 20, 2018; describe the facts of those incidents; and identify and produce any "documents, writings, or tangible things" reflecting the same.  (<u>Id.</u>)  Plaintiffs contend that the requested information is centrally

relevant to their Monell[1] municipal liability claim for failure to investigate, supervise, and discipline deputies for excessive use-of-force, that the County has waived its privilege claims by failing to produce a privilege log, and that given the business purpose and lack of confidentiality in CIRB proceedings, the CIRB proceedings are simply not protected from disclosure.  (ECF No. 136-1 at 19-28.)

In opposition to the instant motion, the County asserts that there is "one straightforward legal question" before the Court—whether the CIRB reports and communications are "privileged and protected from disclosure."  (ECF No. 137 at 2.)  The County asserts that the purpose of the CIRB is to consult with legal counsel and obtain advice in anticipation of litigation, and therefore the CIRB reports are protected by the attorney-client privilege and the attorney work-product doctrine.  (Id. at 4-8.)

Having reviewed and considered the "Plaintiffs' Motion to Compel Discovery Responses from Defendant County of San Diego," (ECF No. 136), the County's opposition thereto, (ECF No. 137), Plaintiffs' reply, ECF No. 138), and after hearing argument from counsel during a hearing on the matter, (ECF Nos. 140, 142), and for the reasons explained below, the Court **GRANTS** the motion to compel further responses to Interrogatories 16, 17 and 18 and RFP No. 46, as follows.

## I.   BACKGROUND

Plaintiffs in this case are Paul Silva's estate and parents, as successors-in-interest.  (See ECF No. 79 at 12.)  Plaintiffs bring this civil rights case against San Diego City and County, law enforcement officers employed therefore, and jail medical service contractors related to the in-custody death of Paul Silva.  (See ECF No. 79.)  The details in the Amended Complaint are many, but the Court very briefly describes them here.

On January 20, 2018, the decedent's mother called San Diego Police Department to request assistance when her son was having a mental health emergency.  (Id. at 6.)

---

[1] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Despite her request for civil assistance and her description of her son's mental health history, San Diego Police Officers arrested Mr. Silva for being under the influence of methamphetamine and booked him into San Diego County Jail, where he was in San Diego Sheriff's Department ("Sheriff's Department") custody. (Id.) After roughly 36 hours during which he exhibited unusual behavior and did not receive any medical or mental health care, Sheriff's Department staff pepper sprayed Mr. Silva, then decided to forcibly remove Mr. Silva from his cell. (Id. at 7-10.) During the cell extraction, Sheriff's deputies shot Mr. Silva with water balls, shot him with a taser, and held him down with a body shield until he became unconscious. (Id. at 10.) Mr. Silva "sustained serious and permanent brain damage, neurological injuries, kidney failure, a collapsed lung, and other life-threatening injuries," and ultimately died after several weeks in a coma. (Id. at 11.)

Among Plaintiffs' many causes of action is one pursuant to Monell against the County, based on its "allowing the use of unlawful and unnecessary force and failing to investigate and discipline deputies for the use of such force." (Id. at 73-78.)

## II.     DISCOVERY DISPUTE

Plaintiffs specifically move to compel further responses to three interrogatories and one request for production.[2] For ease of discussion, Plaintiffs' specific discovery requests and the County's responses thereto are quoted in relevant part below.

Plaintiffs' Special Interrogatory ("Interrogatory") No. 16 states "[f]or the time period of February 20, 2015 to February 20, 2018, did the Sheriff's Department's Critical Incident Review Board (CIRB) conduct any internal review, audit, or investigation of any incident involving the use of force by YOUR officer, deputy, employee, or agent?" (ECF No. 136 at 1-2.)

---

[2] Though Plaintiffs' Notice of Motion indicates that they will be moving to compel further response to RFP Nos. 29 and 46, (ECF No. 136 at 1), the motion itself only describes and briefs argument regarding RFP No. 46.

Interrogatory No. 17 asks the County to "please provide a factual description of each incident in which force was used that CIRB reviewed and/or investigated," if the County conducted such investigations, while No. 18 asks the County to "please IDENTIFY any documents, writings, or tangible reflecting CIRB's" qualifying reviews, audits, or investigations.  (Id. at 2-3.)

Finally, through RFP No. 46, Plaintiffs requested the production of any items identified in Interrogatory No. 18.  (Id. at 4.)

The County objected to each of these "on the grounds that any critical incident review documents would be protected by the attorney-client privilege and work-product doctrine."[3]  (Id. at 2, 3, 4, 5.)

### III. SHERIFF'S DEPARTMENT CRITICAL INCIDENT REVIEW BOARD ("CIRB")

Both Plaintiffs and the County refer to the San Diego Sheriff's Department Policy and Procedures Manual ("the Manual") as a source of information about the CIRB.  (See ECF Nos. 136-1, 136-4, 137, 137-3 at 4-8.)   The official, stated "purpose of this board is to consult with department legal counsel when an incident occurs which may give rise to litigation."  (ECF No. 137-3 at 6.)  It is responsible for carefully reviewing qualifying "incidents from multiple perspectives, including training, tactics, policies, and procedures with the ultimate goal of identifying problem areas and recommending remedial actions so that potential liability can be avoided in the future."  (Id.)  Its focus is

---

[3] To the extent the County raised objections in its responses other than those briefed in the Opposition to this motion, the Court considers them waived.  (See ECF No. 136 at 1-5 (quoting the County's responses objecting to the discovery at-issue on many additional bases); see also Medina v. Cnty of San Diego, Civil No. 08cv1252 BAS (RBB), 2014 WL 4793026, at *16 (S.D. Cal. Sept. 25, 2014)(citation omitted) (finding defendant's work product objection waived when not briefed in opposition to motion to compel); Calderon v. Experian Info. Sols., Inc., 290 F.R.D. 508, 516 n.4 (D. Idaho 2013) ("[W]hen ruling on a motion to compel, a court 'generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel; thus when an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege waived.'")

to assess civil exposure from a given incident.  (Id.)  The Sheriff's Department has described CIRB as a mechanism by which "the Sheriff's leadership team reviews all critical incidents to ensure proper and just responses were administered," with additional objectives of "improv[ing] service delivery," and "identifying problem areas and recommending remedial action."  (ECF No. 36-6 at 2-3.)

The CIRB is comprised of five members: (1) the Commander of Human Resources, who chairs the meetings of the board and does not have a vote; (2) the Chief Legal Advisor, who does not have a vote; (3) a Commander from law Enforcement, who votes; (4) a Commander from Court Services, who votes; and (5) a Commander from Detention Services, who votes.  (ECF No. 137-3 at 6)  It is required to review incidents involving (1) in-custody deaths from other than natural causes; (2) Sheriff's Department employees' use of deadly force; (3) pursuits that result in major property damage or injury requiring hospital admission; (4) any "death or serious bodily injury resulting from action of a member of this Department"; (5) "law enforcement related injuries requiring hospital admittance"; (6) sworn personnel's discharge of a firearm; (7) any other incident that warrants review "in the judgment of the Sheriff, the Undersheriff, Assistant Sheriff, or board member."  (Id. at 7.)

The Department of Inspectional Services ("DIS") also plays a significant role in the CIRB process according to the Manual, the declaration of Lieutenant Chris Cross, and the deposition testimony of DIS Sergeant Aaron Meleen, and Lieutenant Michael Knobbe.[4] (See ECF No. 137-3 at 4-8, 14-16; ECF No. 136-10; ECF No. 136-11.)  A department of the Sheriff's office, the DIS' mission is "to assess internal Department processes and review high risk events in order to create a more efficient and effective operational environment which lends to the delivery of the highest quality public safety services."  (ECF No. 137-3 at 15.)  According to Sergeant Meleen, DIS sergeants review 100 percent

---

[4] Plaintiffs submitted deposition transcripts from another case from Sgt. Meleen and Lt. Knobbe, discussing CIRB reviews and when Internal Affairs investigations are initiated.

of the Sheriff Departments' use-of-force incidents.  (ECF No. 136-10 at 5.)  One of DIS' responsibilities is to facilitate the CIRB "process and board meeting."  (ECF No. 137-3 at 15.)

According to the Manual, the Standards and Compliance Manager of the DIS forwards copies of all related reports from a critical incident to each member of the CIRB prior to a meeting.  (Id. at 6.)  After the reports are received and within a prescribed time frame, the CIRB holds a meeting attended by members of the board, as well as a representative from the Commander of the employee's chain of command, the DIS Standards and Compliance Manager, training unit representatives, the DIS sergeant and investigator assigned to the incident.  (ECF No. 137-3 at 6; accord ECF No. 136-10 at 7-8.)  At the discretion of the chair, other individuals may be requested to attend.  (ECF No. 137-3 at 6; accord ECF No. 136-10 at 8.)  "At the beginning of the CIRB, the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB."  (ECF No. 137-3 at 7.)  The board members may then question the investigator about relevant circumstances.  (Id.)  The CIRB may return the case to the DIS for further investigation at the board's discretion.  (Id.)  Presumably referring to these proceedings, Mr. Faigin asserts that "[t]he communications are confidential."  (ECF No. 137-2 at 3.)  The CIRB is specifically tasked at the end of the presentation with (1) voting on whether a policy violation may exist, where a finding that there may be a violation causes the case to be forwarded to Internal Affairs ("IA") for investigation, and if IA finds there is no violation, the IA case must then be reviewed and approved by the voting members of the CIRB; (2) making training recommendations to the training lieutenant if it identifies significant training issues; (3) raising any identified policy concerns to DIS.  (ECF No. 137-3 at 7-8.)

///
///
///
///

Within a week after the CIRB [meeting], the employee's[5] commander is required to debrief the employee on "the results of the CIRB" and verify having done so in writing. (Id. at 8.) Mr. Faigin states that while results may be conveyed, "[d]etails regarding the internal CIRB discussions are not 'conveyed to the deputies subject to CIRB review.'"

The Standards and Compliance Manager of DIS is required to "prepare a report summarizing the actions and conclusions of the board," including "specific findings with regard to whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department." (Id. at 8.) Lt. Cross explained that among his duties, he must prepare "a confidential CIRB report to the Department's legal counsel, Robert Faigin that summarize[s] the open discussions with legal counsel." (ECF No. 137-3 at 15.) He stated he specifically facilitated the CIRB reviewing Paul Silva's death, and prepared the related report "with the understanding that it was confidential and protected by the attorney-client privilege," and marked as such. He explains that the summary in the report "even includes Mr. Faigin's own thoughts and impressions," and had he known the report might be shared beyond legal counsel, he would have "left out a majority of the details provided in this report." (Id.) Lt. Cross suspects that the Department would stop having the "frank and open discussion with its attorney if it knew that such communications would not be kept in confidence." (Id. at 15-16.)

According to Lt. Knobbe, IA investigations are not required for in-custody deaths, or "deaths occurring during or in close temporal proximity or time of a use of force either in a patrol or a jail setting but not including deputy-involved shootings." (ECF No. 136-11 at 3.) And yet, discipline cannot be imposed on deputies unless there is an IA investigation. (Id. at 7.) Generally, an IA investigation can be initiated because of a

---

[5] Although it is not clearly specified in the Manual, the Court understands that the "employee" referenced here is the employee whose actions CIRB reviewed.

CLERB[6], a referral from a supervisor or someone else in a deputy's chain of command, because of litigation, or through a CIRB process.[7] (ECF No. 136-11 at 4.) According to Sgt. Meleen, the review that occurs through CIRB is the only mandatory review that all in-custody deaths are subject to within the Sheriff's Department. (ECF No. 136-10 at 6.)

Robert Faigin, who attended as the Chief Legal Advisor at all the CIRB proceedings during the three-year period for which Plaintiffs requested information, submitted two declarations to support the County's privilege assertions. (ECF Nos. 137-2, 137-3 at 10-12.) He explains that he provides "legal advice in [his] capacity as the Chief Legal Advisor for the Sheriff's Department, with the expectation that all communications are made in confidence and shall remain so, unless disclosed by [him] or at the request of the Sheriff." (ECF No. 137 at 2.) In addition to confirming that the CIRB's purpose is to assess and minimize sheriff's department civil exposure for critical incidents, he explains that the CIRB process and report are not routine and are "structured to allow for communications between key Department staff, with relevant knowledge of the incident, Department policies, procedures, and practices, and the Department's Chief Legal Advisor." (Id. at 2-3.) He further states that the CIRB reports "summarize frank and open discussions that occur during the CIRB meetings," "are confidential and prepared at [his] request and for [his] review," and are confidentially maintained by him in his office in the Legal Affairs Unit of the Sheriff's Department, to be used by Sheriff's legal and County Counsel to assist with litigation strategy. (Id. at 3.) Mr. Faigin maintains that disclosure of "the confidential CIRB report would inhibit [his] ability to provide sound and informed advice as to matters that are likely to result in civil litigation." (Id.)

---

[6] "CLERB" refers to the Citizens' Law Enforcement Review Board, established by San Diego County voters "to independently receive and investigate citizen complaints against deputies and probation officers." (ECF Nos. 136-5; 136-6.)

[7] It is unclear from the testimony of Knobbe whether the CIRB and civil litigation refer to the same or separate mechanisms to initiate an IA investigation.

## IV. LEGAL STANDARD

The Federal Rules of Civil Procedure[8] authorize parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial to be discoverable. Id. District courts have broad discretion to determine relevance for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

An interrogatory may relate to any matter that may be inquired of under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The responding party must answer each interrogatory by stating the appropriate objection(s) with specificity or, to the extent the interrogatory is not objected to, by "answer[ing] separately and fully in writing under oath." Id. at 33(b). The responding party has the option in certain circumstances to answer an interrogatory by specifying responsive records and making those records available to the interrogating party. Id. at 33(d).

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an

---

[8] All further references to Rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody or control." Fed. R. Civ. P. 34(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1). Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and "the burden of clarifying, explaining, and supporting its objections." DIRECTTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

In a civil rights lawsuit brought against state actors under federal law, privilege issues are resolved using federal law. See Kelly v. City of San Jose ("Kelly"), 114 F.R.D. 653, 660 (N.D. Cal. 1987) (citing Kerr v. U.S. Dist. Court for Nothern Dist. ("Kerr"), 511 F.2d 192, 197 (9th Cir. 1975)). For this reason, the Court will apply federal law to the County's privilege claims. Rule 26(b)(5) requires the party withholding "information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material," to "expressly make the claim." Fed. R. Civ. P. 26(B)(5)(A)(i). The asserting party must also "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(B)(5)(A)(ii).

A.     **Attorney-Client Privilege**

The attorney-client privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). When assessing whether communications are protected by attorney-client privilege, the requirements are often formulated as an eight-element test that requires: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that

purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." Myles v. Cty. of San Diego, Case No. 15cv1985-BEN (BLM), 2016 WL 2343914, at *7 (S.D. Cal. May 4, 2016) (quoting United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) and United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)); In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977). It "is a two-way street: 'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures.'" United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997) (quoting United States v. Chen, 99 F.3d 1495, 1501 (9th Cir.1996)).

The attorney-client privilege can protect qualifying communications between government counsel and their government agency clients. Yellowstone Women's First Step House, Inc. v. City of Costa Mesa, No. SACV1401852JVSJDEX, 2018 WL 6164305, at *2 (C.D. Cal. May 9, 2018) (citations omitted), reconsideration denied 2018 WL 6016292 (C.D. Cal. Aug. 3, 2018). However, not all communications with a lawyer are necessarily privileged. United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (internal citations omitted). The attorney-client privilege is strictly construed because it interferes with the discovery of truth. Id. The party claiming the attorney-client privilege must establish both "the relationship and privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)). "[T]hat clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged." North Pacifica, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003) (emphasis in original). Where there may be gray area between communications involving both legal advice and business or administrative purposes, the Court must determine the primary purpose. Id. at 1127-28. The burden to establish that the primary purpose is legal rests on the party asserting the privilege. Id.

///

### B. Work Product Protection

Rule 26(b)(3) sets forth the federal work-product rule, a qualified immunity that protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989). A party seeking production of otherwise discoverable documents protected as work product must "show that it has substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P 26(b)(3)(A). Even if work product is ordered disclosed, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The purpose of the work-product doctrine is to protect "the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely and without reservation." Am. Civil Liberties Union of N. California v. United States Dep't of Justice, 880 F.3d 473, 483 (9th Cir. 2018) (citing Hickman v. Taylor, 329 U.S. 495 (1947)).

The Ninth Circuit requires that a party asserting work product protections to demonstrate (1) the documents are "'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2004) (internal citations omitted).

"[T]he work product doctrine does not protect materials that are prepared in the ordinary course of business." Anderson v. Marsh, 132 F.R.D. 584, 593 (E.D. Cal. 2015). A "dual purpose document" is a document that serves both a non-adversarial purpose and a litigation purpose. See Am. Civil Liberties Union of N. California, 880 F.3d at 485-86. Where such a document, considering its nature and the surrounding facts of the case "would not have been created in substantially similar form but for the prospect of . . . litigation," it "can be fairly said to have been prepared or obtained because of the prospect of litigation." Id. at 485-86 (internal citations and quotation marks omitted).

"When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." In re Grand Jury Subpoena, 357 F.3d at 908.

## V. ANALYSIS

### A. The County Has Not waived Its Attorney-Client Privilege and Work Product Objections.

Plaintiffs first argue that by failing for over seven months to provide a privilege log listing each of the requested CIRB reports, the County has waived its privilege objections. (See ECF No. 136-1 at 21-24.) Plaintiffs explain that at the filing of their motion, the only CIRB document included in the County's privilege log was the one pertaining to Paul Silva's death, despite Plaintiffs' request for the CIRB documents for all use-of-force incidents between January 20, 2015 and January 20, 2018 (a time period that would exclude Mr. Silva's later death). (Id. at 22.) While the County vigorously asserts its attorney-client communication privilege and work product objections in its Opposition to Plaintiffs' Motion to Compel, it does not appear that the County specifically addressed Plaintiffs' waiver argument. (See ECF No. 137.)

"The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the Court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). An objection to an RFP "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claims; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Courts may determine that a general, boilerplate assertion of privilege that is not accompanied or followed by a timely, detailed privilege log does not satisfy the

requirements of Rule 26(b)(5) and results in a waiver of the privilege asserted.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147-48 (9th Cir. 2005).  The Ninth Circuit has provided guidance for determining whether a party has sufficiently supported an attorney-client privilege objection to a Rule 34 RFP.  Courts are to make case-by-case, holistic reasonableness determinations regarding whether a party has waived its privilege, considering "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard."  Id. at 1149.

   The Court first considers whether the County adequately objected to the information requested in Plaintiffs' interrogatories.  The interrogatories do not specifically ask for CIRB reports or information contained within CIRB reports; instead, they ask essentially for information about the existence of certain CIRB reviews, the facts of the underlying incidents under review, and the identification of any document "reflecting" such review.  (See ECF No. 136 at 1-5.)  Therefore, the County's objection, which asserts that "the critical incident review documents would be protected from disclosure by the attorney-client privilege and work-product doctrine," does not directly address why the County is not responding with the information requested in the interrogatories.  For instance, Interrogatory No. 16 simply asks whether the Sheriff's Department's CIRB reviewed any incidents of use of force for a three-year period.  (Id. at 2.)  This interrogatory simply asked for a yes or no answer, and that the County's claims

the CIRB reports are privileged does not necessarily support withholding the answer sought.

While the Court believes the record could support waiver of the County's privilege objections regarding the interrogatories, it notes it was at least clear that the basis of the privilege claim was the nature and purpose of the CIRB's critical incident review. Based on the briefing and discussion with counsel regarding the CIRB proceedings, there has been a history between the County and various plaintiffs' counsel of litigating privilege issues related to the CIRB that is well-known to Plaintiffs' counsel. (See, e.g., ECF No. 136-10 and 136-11 (deposition transcripts regarding CIRB from another case in this district), ECF No. 137-3 at 18-26, 30-33 (orders regarding privilege of CIRB reports in other cases in this district).) Despite any shortcomings that could justify waiver, it appears that the objection was discernible to Plaintiffs, who were able to brief their motion to compel. (See ECF No. 136.) Plaintiffs have not cited to any authority suggesting that objections to interrogatories require a privilege log. Therefore, the Court declines to find the County's privilege objections to the interrogatories at-issue waived, and address the merits of the objections.

Moving to RFP No. 46, the Court notes the specific language thereof, which calls for production of the documents identified in response to Interrogatory No. 18. (See id. at 4.) Since no documents were identified in Interrogatory No. 18, RFP No. 46 did not technically request any documents. Therefore, the County did not waive its privilege by failing to provide a privilege log.

**B.    Interrogatories**

Turning to the County's attorney-client privilege and work product objections, the Court first considers the Interrogatories presented in the instant dispute, Nos. 16, 17, and 18. Interrogatory No. 16 simply asked whether the CIRB reviewed any incidents involving use of force during the specified time. (ECF No. 136 at 2.) At the hearing regarding this motion, counsel for the County indicated that the County was "amenable to supplementing that with a yes answer." (ECF No. 142 at 19-20.) Therefore, the Court

will consider the County's objection to Interrogatory No. 16 withdrawn.  The County is **ORDERED** to provide a supplemental response to Interrogatory Number 16.  The Court now turns addresses Interrogatory Nos. 17 and 18.

   1. **Interrogatory No. 17**

Interrogatory No. 17 asks the County to provide a factual description of each incident involving use-of-force that was reviewed by CIRB during the relevant time.  (ECF No. 136 at 2.)  Though the County's objections only asserted that the "critical incident review documents would be protected from disclosure by the attorney-client privilege and work-product doctrine," counsel for the County asserted at the hearing on this motion that there are circumstances where the very selection of which cases are examined by CIRB may involve the chief legal advisor's thoughts and impressions.  (Compare id. at 3 (objections to Interrogatory No. 17) (emphasis added) with ECF No. 142 at 21-22 (argument at hearing).)  While counsel for the County maintained that the determination regarding whether CIRB conducts a review is privileged in some circumstances, he agreed that there are other, non-confidential sources of information that would provide the factual summaries requested in this interrogatory.  (Id. at 26.)  The Court therefore analyzes the contested issue of whether the identities of which use-of-force cases CIRB reviewed during the relevant period are privileged.

First, because Plaintiffs seek information here, and not a document or other tangible thing prepared by the County, the work product privilege does not apply.  See Fed. R. Civ. P. 26(b)(3).

Next, there are at least two problems with the County's assertion of the attorney-client privilege as to the existence of a CIRB review of any particular incident.  For one, the Manual requires that CIRB review certain types of incidents involving use of force, such as those resulting in an in-custody death, use of deadly force by a department employee, an incident where an action of a member of the department resulted in serious injury or death, or sworn personnel's discharge of a firearm.  (ECF No. 137-3 at 7.)  Disclosure of the fact that the CIRB reviewed any such incidents would therefore not

convey any communications revealing the thoughts or impressions of a legal advisor. While other incidents may be reviewed "in the judgment of the Sheriff, the Undersheriff, Assistant Sheriff, or board member," only one of those eight people is an attorney. (ECF NO. 137-3 at 7.) The County, having the burden of proving the privilege applies, has failed to distinguish between CIRB reviews that were automatically required by the Department's own procedure and those that reflect advice of counsel. In fact, aside from the County's counsel's argument at the hearing on this matter, the County did not submit any written argument or evidence to support the claim that the requested information is privileged. Neither Mr. Faigin nor Lt. Cross claimed that any specific CIRB reviews involving excessive use-of-force were impaneled based on counsel's discretion, or that other conditions exist to make the existence of CIRB review privileged.

That the existence of a specific CIRB review does not reveal the advice of counsel is also suggested by the briefing in the many cases that have been cited to this Court regarding this issue. The County has on several occasions identified the CIRB documents related to the case being litigated, without claiming the existence of the CIRB review was privileged. See Medina v. Cnty of San Diego, Civil No. 08cv1252-BAS (RBB), 2014 WL 4793026 at *15 (S.D. Cal. Sept. 25, 2014) ("The privilege log identifies three items; two are letters from R. Faigin to S. Amos described as 'CIRB report re: officer involved shooting re: Robert Medina.'"); ECF No. 19 in Case No. 15cv686-L(JMA) at 3 (briefing of discovery dispute to Judge Adler, regarding item listed in County's privilege log as "'SDSO Critical Incident Review Board Report,' dated Aug. 20, 2014" with Bates numbers); ECF No. 176 in Case No. 16cv1412-BEN (MDD) at 3 (briefing of discovery dispute to Judge Dembin regarding County's privilege log entry for "Critical Incident Review Board Memo and attendance roster," identified by Bates number, date, sender and recipient); ECF No. 137-3 at 11 (declaration of R. Faigin, Chief Legal Advisor to the Sheriff's Department, discussing the CIRB report prepared regarding the incident underlying this case). By comparison, the type of information sought by Plaintiffs

through the interrogatories at-issue here is less detailed than the information generally required for a party to support a claim of privilege.  See Miller v. Panucci, 141 F.R.D. 292, 302 (C.D. Cal. Jan. 21, 1992) ("Based on these cases, experience has demonstrated that the following list of items are sufficient to sustain the burden of asserting the attorney-client privilege: 1. Date of documents; 2. Author; 3. Primary addressee; 4. Secondary addressee(s); persons copied and recipient (and the relationship of that persons(s) to the client and/or author of the document); 5. Type of documents (e.g., internal memo, letter with enclosures, draft affidavit, etc.); 6. Client (i.e., party asserting privilege); . Attorneys; 8. Subject matter of document or privileged communication; 9. Purpose of document or privileged communication (i.e. legal claim for privilege); and 10. Whether the document or communication is work product or attorney-client privilege.").

Second, the Manual requires that the results of the CIRB be reported to the employee whose actions were subject to CIRB review.  (ECF No. 137-3 at 7.)  Counsel for the County confirmed this in the County's Opposition and at the hearing on this motion. (See ECF No. 137 at 7 ("If plaintiffs want to know what the unit commander told the employee involved in the incident regarding the CIRB results, Plaintiffs can pursue that discovery.") (emphasis in original); ECF No. 142 at 23-27 (confirming the policy requires reporting of results to the employee whose actions are being reviewed).)  The requirement that the results (not the advice of counsel) be communicated to the employee whose actions are being reviewed outside of the attorney-client relationship is incompatible with the idea that the existence of the CIRB review is confidential.

Considering all the foregoing, the County has not demonstrated that existence of any specific CIRB reviews would reveal confidential attorney-client communications. Since counsel for the County confirmed that there are non-privileged sources for the factual summary information about the underlying incidents, the County is **ORDERED** to provide a supplemental response to this interrogatory.

///

///

### 2. Interrogatory No. 18

This interrogatory simply asks the County to identify any documents reflecting the CIRB's internal review of use-of-force cases during the specified period. Because the Court has concluded that the County has not demonstrated the existence of a CIRB review is privileged, either generally or in some subset of the requested cases, the identities of the documents reflecting the CIRB review are also not privileged and the County must provide a supplemental response to this interrogatory.

In summary, the Court **OVERRULES** the County's non-waived attorney-client privilege and work product protection objections to Interrogatories 16, 17, and 18. The County is **ORDERED** to provide supplemental responses to these three interrogatories.

## C. RFP No. 46

This request demands the production of the documents identified in Interrogatory No. 18. (ECF No. 136 at 4.) However, since the County has not responded to Interrogatory No. 18 after asserting the objections discussed above, and has consequently not provided a privilege log identifying and describing the responsive documents that the County claims are subject to the attorney-client privilege or protected by the work product doctrine, the Court lacks sufficient information to consider whether the claimed privileges protect the specific documents, or portions thereof from disclosure. See United States v. Christensen, 828 F.3d 763, 803 (9th Cir. 2015) ("The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be 'strictly confined within the narrowest possible limits.'") (internal citations omitted). The Court does not know with certainty what responsive documents exist, nor which of those or portions thereof the County asserts are privileged. With the understanding that the basic existence of a CIRB review is not privileged, the County should now justify its specific claims of privilege, and will be in a better position to do so "without revealing information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Considering the above determination that the existence of a CIRB review of a specific incident is not privileged, the County must provide a supplemental response to RFP No. 46 that addresses the specific documents identified in response to Interrogatory No. 18. To the extent the County believes certain responsive documents, or portions thereof, are privileged, it must "establish the privileged nature of the communications and, if necessary, [] segregate the privileged information from the non-privileged information." Ruehle, 583 F.3d at 609.

The Court understands that there may still be disputes regarding the County's privilege claims after it provides supplemental responses as ordered here. If such disputes remain, the parties are **ORDERED** to place a joint call to the Court within one week of the County's production of a privilege log to discuss any remaining disputes.

## VI.   CONCLUSION

For the reasons described above, the Court **ORDERS** as follows:

1. The Court **OVERRULES** the County's attorney-client privilege and work product objections to Plaintiffs' Interrogatory Nos. 16, 17, and 18. All objections not briefed by the County in its Opposition to Plaintiffs' Motion to Compel are deemed waived. The County is **ORDERED** to provide supplemental responses to the disputed interrogatories on or before **November 24, 2020**.

2. The County must provide a supplemental response to RFP No. 46 on or before **November 24, 2020**, including a detailed privilege log to support any claims of attorney-client privilege and work product protection asserted by the County.

3. If any disputes remain regarding the County's Supplemental responses, the parties are to place a joint call to chambers no later than **December 1, 2020**.

**IT IS SO ORDERED.**

Dated: November 16, 2020

Honorable Michael S. Berg
United States Magistrate Judge