UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF PAUL SILVA, by and through its successors-in-interest LESLIE ALLEN and MANUEL SILVA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 18cv2282-L (MSB)<br><br>**DISCOVERY ORDER**<br><br>**[ECF NO. 153]** |

Currently before the Court is the December 9, 2020 motion for a protective order to preclude the noticed deposition of Sherriff William D. Gore, filed by Defendants County of San Diego, William Gore, Alfred Joshua, M.D., Anthonny Adraneda, Barbara Lee, Laura Coyne, Michael Lawson, John Douthitt, Julio Rodriguez, Charles Delacruz, Diego Lopez, Aaron Vrabel, Jorge Enciso, Tanner Sherman, Christopher Simms, Ryan Seabron, Harvey Seeley, Cesar Ceballos and Jose Navarro ("County Defendants").  (ECF No. 153.)  Also before the Court is Plaintiffs' December 18, 2020 opposition to the motion ("Opposition"), (ECF No. 158), and County Defendants' December 30, 2020 reply (Reply"), (ECF No 159).  Having considered the briefings and all the supporting exhibits

submitted by the parties, the Court **GRANTS** County Defendant's motion for the reasons set forth below.

## I. BACKGROUND

Plaintiffs in this case are Paul Silva's estate and parents, as successors-in-interest. (See ECF No. 79 at 12.) In claims relevant to this motion, Plaintiffs have named the County of San Diego as a defendant on claims of municipal liability and Sheriff William Gore ("Gore") is named as a defendant in his individual capacity for his deliberate indifference in failing to properly train, supervise, discipline, and investigate his subordinates. (See ECF No. 79 at 56, 59, 62.)

On January 20, 2018, the decedent's mother called San Diego Police Department requesting assistance when her son was having a mental health emergency. (Id. at 6.) Despite her request for civil assistance and her description of her son's mental health history, San Diego Police Officers arrested Mr. Silva for being under the influence of methamphetamine and booked him into San Diego County Jail, where he was in San Diego Sheriff's Department ("Sheriff's Department") custody. (Id.) After roughly 36 hours, during which he exhibited unusual behavior and did not receive any medical or mental health care, Sheriff's Department staff pepper sprayed Mr. Silva, then forcibly removed Mr. Silva from his cell. (Id. at 7-10.) During the cell extraction, Sheriff's deputies shot Mr. Silva with water balls, tased him, and held him down with a body shield until he became unconscious. (Id. at 10.) Mr. Silva "sustained serious and permanent brain damage, neurological injuries, kidney failure, a collapsed lung, and other life-threatening injuries," and ultimately died after several weeks in a coma. (Id. at 11.)

## II. DISCOVERY DISPUTE

County Defendants move for a protective order preventing the deposition of Gore, asserting that the "apex" doctrine prevents Plaintiffs from deposing Gore. (See ECF No. 153.) They argue Gore is a high-ranking official and Plaintiffs have not met their burden of establishing extraordinary circumstances as required by the doctrine to

permit his deposition. (Id. at 1.) Plaintiffs assert they should be permitted to depose Gore regarding his knowledge of the high rate of inmate death at San Diego County jails under his command and his actions or inactions in the face of his subordinates' repeated constitutional violations, topics they argue are directly at-issue in this case. (ECF No. 158 at 1.)

### III.     LEGAL STANDARD

The Federal Rules of Civil Procedure (hereafter "Rules") permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be relevant, the information sought "need not be admissible in evidence"; however, it must be "proportional to the needs of the case." Id. Rule 30 allows a party to take depositions of any person or party by oral examination. However, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense" by, among other things, forbidding a deposition or limiting its scope. Fed. R. Civ. P. 26(c); Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 262 (N.D. Cal. Apr. 4, 2012).

A party seeking to prevent a deposition must generally meet a high burden. Hunt v. Cont'l Cas. Co., No 13-cv-05966-HSG, 2015 WL 1518067, at *1 (N.D. Cal. Apr. 3, 2015) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)) ("Absent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition."). However, for depositions of high-ranking executives or officials – so-called "apex" witnesses – the burden is placed on the party seeking the deposition to show extraordinary circumstances justify the deposition because such discovery creates "a tremendous potential for abuse or harassment" that may require the court's intervention for the witness's protection under Rule 26(c). Apple Inc., 282 F.R.D. at 263. The apex doctrine exists to protect officials from discovery that will burden the performance of their duties, especially given the frequency such officials are typically named in lawsuits, and to protect officials from unwarranted inquiries into their decision-making process. Coleman v. Schwarzenegger, Nos. CIV S-90-0520 LKK JFM P,

C01-1351 TEH, 2008 WL 4300437 at *2 (E.D. Cal. Sept. 15, 2008) (citing In re United States of America, 985 F.2d 510, 512 (11th Cir. 1993) and United States v. Morgan, 313 U.S. 409, 422 (1941)).  Therefore, heads of government agencies in particular "are not normally subject to deposition" absent extraordinary circumstances.  Green v. Baca, 226 F.R.D. 624, 648 (C.D. Cal. 2005) (quoting Kyle Engineering Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979), and collecting cases).

To invoke the protection of the apex doctrine, the party resisting discovery must first demonstrate he or she is a high-ranking official.  Myles v. County of San Diego, No. 15cv1985-BEN (BLM), 2016 WL 4366543, at *3 (S.D. Cal. Aug. 15, 2016).  Once the proposed deponent has done this, "the party seeking the deposition must 'show: (1) the official's testimony is necessary to obtain relevant information that is not available from any other source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources.'"  Id. (quoting Thomas v. Cate, No. 1:05-cv-01198-LJO-JMD-HC, 2010 WL 1343789, at *1 (E.D. Cal. Apr. 5, 2010)); see also Coleman, 2008 WL 4300437 at *2 ("The extraordinary circumstances test may be met where high-ranking officials 'have direct personal factual information pertaining to material issues in an action,' and 'the information to be gained is not available through any other sources[.]'") (quoting Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007)).

## IV.     ANALYSIS

County Defendants assert that Gore "is indisputably a high-ranking official" and is entitled to protection from deposition under the apex doctrine.  (ECF No. 153 at 3.) They further argue there are no extraordinary circumstances to justify Gore's deposition because Gore "has no unique, first-hand knowledge relating to this lawsuit or the incident involving Paul Silva."  (Id. at 4.)  County Defendants finally argue that Plaintiffs have not met their burden of exhausting less restrictive resources, noting they never

propounded any written discovery to Gore and pending Rule 30(b)(6) depositions may render some of the information sought. (ECF No. 159 at 1.)

On the other hand, Plaintiffs claim that to establish Gore's liability, they must show Gore "had notice of widespread and repeated incidences of death or serious injury caused by denial of medical care and/or excessive force" and that he "failed to take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware." (ECF No. 158 at 4.) Plaintiffs argue the only way to obtain such evidence is by deposing Gore because he is the only witness who can testify as to his knowledge and state of mind. (Id. at 4-5.)

### A. Gore is a High-Ranking Official

As a threshold matter, County Defendants must establish that Gore is a high-ranking official to invoke the apex doctrine. According to County Defendants, Gore is a high-ranking official because of his role in overseeing one of the nation's largest law enforcement agencies, which employs more than 4,200 individuals, provides services that span air patrol to investigative operations, and operates detention facilities that house approximately 5,000 inmates at any given time. (See ECF No. 153 at 3-4.) Plaintiffs do not dispute this status. (See generally ECF No. 158.) In fact, Plaintiffs admit Gore holds "the highest position in the San Diego County Sheriff's Department." (ECF No. 79 at 8.)

The law in this district and throughout the Ninth Circuit supports the conclusion that Gore is a high-ranking official. See Ramirez v. Zimmerman, No. 3:17-cv-1230, 2019 WL 2106594, at *6 (S.D. Cal. May 14, 2019) ("It is well established in this circuit and in this district that County Sheriffs, including Sheriff Gore specifically, are considered high-level officials to whom the apex doctrine applies."); Estate of Levingston v. County of Kern, 320 F.R.D. 520, 526 (E.D. Cal. June 22, 2017) ("[C]ourts throughout the Ninth Circuit have determined that the position of sheriff is a high-ranking official to whom the apex doctrine may apply."); Anderson v. County of Contra Costa, No. 15-cv-01673-RS (MEJ), 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017) (finding the sheriff was "an apex

employee or high-ranking official, to whom the apex doctrine applies"); K.C.R. v. City of L.A., No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *6 (C.D. Cal. July 11, 2014) (collecting cases and concluding that "ample authority ... supports the proposition that a sheriff is a high-ranking government official entitled to protection"); Jarbo v. County of Orange, No. SACV 05-00202-JVS, 2010 WL 3584440, at *2 (C.D. Cal. Aug. 30, 2010) (finding that sheriff of Orange County was high-ranking government official not subject to deposition absent extraordinary circumstances); cf. Green, 226 F.R.D. at 649 ("At least one court has suggested that police chiefs, and presumably sheriffs as well, do not constitute high government officials.").

Based on the foregoing, the Court finds Gore is sufficiently high-ranking to warrant application of the apex doctrine. See Myles, No. 15cv1985-BEN (BLM), 2016 WL 4366543, at *4 (finding Gore a high-ranking government official in part because plaintiff acknowledged he is the "San Diego Sheriff's Department's chief policy maker and highest-ranking government officer").

**B.     Plaintiffs Have Not Shown Extraordinary Circumstances**

The disputed issue in this matter is therefore whether any "extraordinary circumstances" warrant an exception to the apex doctrine. See Coleman, 2008 WL 4300437, at *2. As an initial matter, Plaintiffs argue they should be permitted to depose Gore regarding two different categories of information—(1) Gore's "notice of widespread and repeated incidences of death or serious injury caused by denial of medical care and/or excessive force," on a theory of deliberate indifference (ECF No. 158 at 8), and (2) Gore's knowledge and actions after being informed of the situation regarding Mr. Silva by Mr. Silva's father after Mr. Silva's hospitalization, on a theory of ratification and acquiescence. (Id. at 16.) However, because Plaintiffs' operative complaint against Gore is based solely on a theory of deliberate indifference, the Court will not address Plaintiffs' arguments concerning matters after January 21, 2018.[1]

---

[1] Plaintiffs argue their theory of individual liability against Gore for acquiescence and ratification requires inquiry into his conduct after Paul Silva's death. (ECF No. 158 at 11.) However, the Court is

### 1. Gore has relevant, personal knowledge

Plaintiffs have made a persuasive showing that Gore has personal knowledge of information relevant to this lawsuit, notwithstanding Gore's lack of direct involvement in Paul Silva's death. To begin with, Plaintiffs have successfully pled supervisory liability claims against Gore for his deliberate indifference in the training, supervision, discipline, and investigation of his subordinates. (See ECF No. 147 at 25-27; 28-29; 29-31 (Judge Lorenz' order finding Plaintiffs sufficiently pled these causes of action against Gore).) The failure to train claim requires that Gore "disregarded the known or obvious consequence that a particular omission in [the Sheriff's Department's] training program would cause [department] employees to violate citizens' constitutional rights." Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014). Similarly, Plaintiffs' cause of action for failure to supervise and discipline is based on the premise that Gore had "knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates," and his inaction "amounted to acquiescence in the unconstitutional conduct of his subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

Specifically, Plaintiffs allege Gore knew that a significant number of detainee deaths were caused by inadequate medical care and that County jails frequently booked or housed mentally ill individuals, but that he and the other supervisory defendants failed to properly train deputies on various issues relevant to the constitutional rights of detainees with mental health disorders. (ECF No. 79 at 33-36, 64.) Plaintiffs also allege that Gore knew of prior incidents of misconduct and civil rights violations by his subordinates involving facts similar to those in this case, but that he acquiesced in or

---

unaware of any allegations Plaintiffs' have asserted in their case against Gore that put Gore's conduct after the incident involving Paul Silva at issue. (See ECF No. 79, ECF No. 147 at 28-31.) Therefore, the Court finds that an inquiry into Gore's conduct after the underlying incident would not be proportional for Plaintiffs' case against Gore.

even condoned the unlawful behavior by failing to retrain, discipline, or correct the abusive behavior of his subordinates. (ECF No. 79 at 65-67.)

Accordingly, Gore's lack of direct knowledge of the events that directly caused Paul Silva's death does not immunize him from deposition, because he has knowledge of other directly relevant facts, namely those that relate to his individual liability in this case based on his awareness and disregard of unconstitutional dangers to Paul Silva. Whether he claims or disclaims such awareness, Gore undoubtedly has personal knowledge of his own state of mind and actions, which are directly relevant to Plaintiffs' case against him.

### 2. Plaintiffs have not exhausted less intrusive discovery methods

Notwithstanding Gore's personal knowledge of relevant issues, Plaintiffs have not demonstrated they exhausted "less intrusive discovery methods, such as [] interrogator[ies] or depositions of lower-level employees with more direct knowledge of the facts at issue." Somers v. Digital Realty Tr. Inc., No. 14CV05180EMCKAW, 2016 WL 7157505, at *1 (N.D. Cal. Dec. 8, 2016).

Plaintiffs' Opposition to County Defendants' instant motion suggests that there might be other sources of information indicative of whether Gore had notice of relevant incidents and unconstitutional practices. Specifically, Plaintiffs reference an undated internal PowerPoint presentation that has been reported on in the newspaper, which "documented the following challenges: 'a lack of funding for mental health professionals, lack of training and knowledge for staff and contractors, undetected and under-reported cases of troubled inmates and 9-to-5 clinical hours for mental health providers.'" (ECF No. 158 at 10.) Additionally, Plaintiffs referenced a "2017 grand jury report that urged the Sheriff to appoint a full-time mental health director." (Id.) It seems written discovery and depositions of other witnesses could both reveal those underlying documents, and whether and when they were provided to Gore. Additionally, other witnesses who met with Gore or implemented policies may be able to testify regarding whether responsive actions were taken.

However, Plaintiffs have not asserted that they attempted to obtain any information through written discovery propounded to Gore, nor explained why doing so would be ineffective.[2] (See ECF No. 158.)  The facts of this case do not suggest that any delay caused by written discovery would have resulted in the loss of potential witness testimony, unlike the case relied on by Plaintiffs for the premise that interrogatories would be insufficient.  Cf. Garcia v. County of Riverside, Case No. ED CV 13-616-JGB (SPx), ECF No. 94 (C.D. Cal. Mar. 21, 2017) ("Although the foregoing discussion highlights why there appears to be no adequate substitute for Baca's deposition in this case, ordinarily it would nevertheless be desirable for plaintiff to have at least attempted other discovery means first.  But there is a particular circumstance here that warrants relieving plaintiff of any such requirement, namely, Baca's allegedly deteriorating health status, due to Alzheimer's disease.")  In this case, Plaintiffs waited until after the deadline to serve written discovery had passed before they first noticed Gore's deposition.  (Compare ECF No. 109 at 2-3 (noting that the deadline to serve written discovery expired on March 6, 2020 and would not be continued) with ECF No 153-2 at 5-7 (showing original deposition notice dated October 27, 2020).)  Plaintiffs have not provided any explanation why they did not seek information regarding Gore's knowledge by timely interrogatory.

Even though Plaintiffs plan to take depositions of other supervisory defendants and knowledgeable witnesses pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs do not explain why they did not conduct these depositions prior to attempting to depose Gore or why such depositions are incapable of providing the information necessary for Plaintiffs' case.  Plaintiffs have not explained or shown why other witnesses cannot testify about information or reports they shared with Gore or heard in his presence as evidence of Gore's knowledge.  Similarly, they be able to testify regarding whether Gore or others directed responsive action.

---

[2] While County Defendants assert in their Reply that Plaintiffs did not serve any written discovery on Gore, they regrettably have not submitted any evidence in support of this contention.  (See ECF No. 159, generally and at 2.)

Even the cases Plaintiffs rely on to argue that Gore is not immune from deposition underscore the importance of conducting other discovery prior to noticing the deposition of a high-ranking official witness. (See ECF No. 158 at 16.) In Estate of Levingston, 320 F.R.D. at 528, the court granted a protective order precluding the plaintiffs from taking the deposition of Sheriff Youngblood, but also said it would consider lifting the order if plaintiffs "take the depositions of, or propound other discovery to, those actually involved in the development and implementation of the relevant policies and [] make a showing that they made reasonable efforts to obtain the needed evidence but cannot do so except via a deposition of Youngblood." In Anderson, 2017 WL 930315 at *4, the court required the plaintiff to first depose a Rule 30(b)(6) witness before allowing the deposition of Sheriff Livingston even though his state of mind was considered relevant to the plaintiff's claims of supervisory liability. Finally, in Soto v. County of Sacramento, No. 2:19-cv-0910 TLN DB, 2020 WL 5110372, at *2 (E.D. Cal. Aug. 31, 2020), the court granted Sheriff Jones a protective order barring his deposition because plaintiffs had not demonstrated Sheriff Jones had unique first-hand, non-repetitive knowledge. However, the court left open the possibility of allowing the deposition if, "after conducting additional discovery," plaintiffs were able to establish the sheriff's knowledge was unique. Id. Here, even though Gore has first-hand knowledge relevant to Plaintiffs' case, Plaintiffs have not made a showing that Gore is the *only* source of such information because have not shown they attempted to access such information through written discovery and they have not yet deposed other witnesses who may be able to furnish the evidence they seek.

///
///
///
///
///
///

## V. CONCLUSION

Because Plaintiffs have not exhausted less intrusive means of discovery before seeking Gore's deposition, the Court **GRANTS** County Defendants' motion for a protective order to preclude Plaintiffs from taking Sheriff Gore's deposition.

**IT IS SO ORDERED.**

Dated: January 21, 2021

Honorable Michael S. Berg
United States Magistrate Judge