UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF PAUL SILVA, et al., <br><br> Plaintiffs, <br><br> v. <br><br><br> CITY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 3:18-cv-2282-L-MSB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION [ECF NO. 239]** |

Pending before the Court is Defendants' Keri Cavallo ("Cavallo"), Coast Hospitalist Medical Associates ("CHMA") and Coast Correctional Medical Group's ("CCMG") Motion for Reconsideration of Order Granting in Part and Denying in Part Defendants Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 60.

## I.     BACKGROUND

The Court incorporates the statement of facts as contained in the Order Granting in Part and Denying in Part Defendants' Summary Judgment Motion.

## II.    LEGAL STANDARD

A "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The

1

court may do so on motion or on its own, with or without notice." Federal Rule of Civil Procedure 60(a).

Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed.R. Civ.P. 60(b).

"A court's power to vacate judgments under Rule 60(b) in order 'to accomplish justice' is balanced against 'the strong public interest in the timeliness and finality of judgments.'" *Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022).

## III.  DISCUSSION

Defendants contend that the Court should reconsider its prior Order because it failed to address Plaintiffs punitive damages requests in the following causes of action: Third Cause of Action for deliberate indifference to medical needs, Fourth Cause of Action on the theory of excessive force, and the Twelfth Cause of Action for wrongful death. With regard to the Third Cause of Action for deliberate indifference to serious medical needs, Defendant claims that the Court did not address the element of causation concerning whether a mental health examination would have changed the outcome for Silva. Defendants further contend that the Court applied the incorrect legal analysis regarding the element of causation in the Third Cause of Action regarding Cavallo's decision not to review Silva's medical file prior to her "excited delirium" diagnosis.

//

A. **Punitive Damages**

Punitive damages may be assessed "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). If a defendant's conduct that harmed the plaintiff is malicious, oppressive, or in reckless disregard to the plaintiff's rights, punitive damages may be appropriate. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). "Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another." Ninth Circuit Model Civil Jury Instructions 5.5 (2018) (Updated September 2022). "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." *Dang*, 422 F.3d at 806. An act or omission is oppressive if the defendant "injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff." *Dang,* 422 F.3d at 805; *Fountila v. Carter*, 571 F.2d 487, 493 (9th Cir. 1978).

1. Fourth Cause of Action- Excessive Force and Failure to Intercede

Defendants contend that the Court did not address the issue of punitive damages with regard to the excessive force claim and incorrectly permitted punitive damages on the theory of failure to intervene despite dismissing the claim via partial summary judgment. (Mot. at 8.)

In the operative Complaint, Plaintiffs contend that they are entitled to punitive damages because

> Cavallo acted recklessly and with indifference to Paul Silva's constitutional rights by completely abdicating her responsibility to provide adequate medical care to Mr. Silva, and knowingly exposing Mr. Silva to a risk of serious harm or death by rubber-stamping the decision to extract him from his cell using a heavily armed guards in full tactical gear. Based on her

>perfunctory 1-2 minute observation, Cavallo hastily concurred with the sworn staff's decision and its medically inaccurate and unsupported "excited delirium" diagnosis. Despite having the ability to immediately access a computer in her presence to view Mr. Silva's medical chart, she did nothing to view his records. She acted without consulting any qualified mental health professional, and without reviewing Paul Silva's medical records. On these facts, a reasonable jury could find reckless, callous, or deliberate indifference to Mr. Silva's federally guaranteed rights, warranting the assessment of punitive damages.

(Oppo. at 23 [ECF No. 207.])

### a. Excessive Force Claim

Defendants argue that Plaintiffs have not provided evidentiary support to show that it was reasonably foreseeable that Silva's cell extraction could lead to serious harm or death, particularly in light of the fact that Cavallo was not aware of cell extractions that resulted in any significant injury or use of force or that a cell extraction would actually involve a use of force. (Reply at 10 [ECF No. 220.]) Defendants contend that Cavallo's differential diagnosis of Silva included other medical conditions therefore she was not reckless or indifferent by also including a diagnosis of excited delirium. (*Id*.) Because Cavallo acted in a manner to get Silva medical evaluation and treatment, Defendants claim that her actions were the opposite of reckless and indifferent. (*Id*.)

As explained in its Order denying summary judgment on the excessive force claim, there are genuine issues of fact as to whether Cavallo acted with reckless disregard and set in motion the use of excessive force by failing to review Silva's medical information prior to determining that he was suffering from "excited delirium" rather than untreated schizophrenic decompensation. The Court held "a reasonable jury could conclude, viewing the evidence in the light most favorable to the Estate and Silva, that Cavallo's failure to review his medical history, her assessment of excited delirium due to drug use, and failure to convey medical information to the extraction team, put into motion a series of events that led to the predictable outcome of the tactical team's use of excessive force." (Ord MSJ at 20).

Because Plaintiff has demonstrated genuine issues of fact as to whether Cavallo's actions demonstrated a reckless disregard to Silva's rights Defendants' motion for summary adjudication is denied as to Plaintiff's request for punitive damages on the excessive force claim. *See Dang,* 422 F.3d at 807.

### b. Failure to Intercede

Based in part on the Court's finding that Cavallo could not see or clearly hear the force used on Silva, the Court ruled "[t]he Estate has not successfully demonstrated that Cavallo's actions meet the required elements of a failure to intercede claim. Defendant's motion for summary judgment is granted as to this cause of action, and Plaintiffs' failure to intervene claim is dismissed with prejudice." (Ord. MSJ at 22). A fortiori, the remedy for failure to intercede became unavailable with the dismissal. The Court' statement that Plaintiff's punitive damages request could proceed was intended to apply only to the excessive force claim, and not the failure to intervene claim. Defendant's motion for summary adjudication as to this claim is granted.

### 2. Twelfth Cause of Action- Wrongful Death

Defendants argue that the Court granted partial summary judgment on the issue of punitive damages as to all Defendants on the state law medical negligence cause of action therefore the Court should have granted partial summary judgment on the twelfth cause of action for "wrongful death" because it is the same standard as medical negligence. (Mot. at 6-7).

The Court denied CCMG and Cavallo's summary judgment motions as to the California negligence and wrongful death claims, and granted Defendant CHMA's summary judgment motion on medical negligence and wrongful death claims. (Ord MSJ at 35). The Court further held that "there is no evidence in the record to support a request for punitive damages against Cavallo, CCMG, or CHMA for medical negligence" and granted Defendants' summary judgment on the issue. (*Id*. at 36). The Court made no determination on Plaintiffs' request for punitive damages on the wrongful death claim.

A plaintiff may recover punitive damages on a wrongful death claim brought by heirs where there is "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. Civ. Code § 3294 (a). The standard for punitive damages does not differ between a medical negligence claim and a wrongful death claim brought by heirs under a negligence theory. *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105 (Cal. Ct. App. 2d 1992).

Because the Court summarily adjudicated the issue of punitive damages regarding the Thirteenth Cause of Action for medical negligence and the standard is the same for the wrongful death claim in the Twelfth Cause of Action, the Court denies Plaintiffs' request for punitive damages for wrongful death finding there is no evidence in the record to support a request for punitive damages against Cavallo and CCMG. Defendants' motion for summary adjudication as to Plaintiff's request for punitive damages on this claim is granted.

### B. Causation

Defendants contend that the Court did not address the element of causation with regard to Plaintiffs' assertion in the Third Cause of Action that a mental health examination was required prior to Silva's cell extraction. (Mot. at 9). Defendants further assert that the Court did not properly analyze whether the outcome would have changed if Cavallo had not included excited delirium in her diagnosis and had reviewed the medical records. (*Id*. at 10-11).

In the operative complaint, Plaintiffs alleged that Cavallo acted with deliberate indifference to Silva's medical needs as follows:

> After Coyne, Lawson, and Douthitt erroneously decided that Paul suffered from excited delirium and arranged for the Tactical Team to extract him, nurse practitioner Keri Cavallo arrived to confirm that Paul needed to be removed from his cell. Defendant Cavallo believed Paul might be suffering from a form of psychosis with which she was unfamiliar. Cavallo observed that Paul appeared frightened, unable to understand events, and was acting in an irrational manner. Cavallo made no attempt to request a psychiatric evaluation to determine if Paul should be immediately admitted to the

Central Jail's internal hospital, the Psychiatric Security Unit (PSU). Cavallo failed to review Paul's JIMS medical history, which stated that he suffered from schizophrenia and diabetes. Had Cavallo reviewed Paul's medical records, she would have known that Paul had not received any psychiatric or diabetic treatment. UCSD hospital records state that Paul had a blood sugar of 30 – a dangerously low level that can cause delusion and render a person unable to comprehend or respond to commands. Instead of consulting with a medical doctor or psychiatrist, and instead of reviewing Paul's medical history to discern the medical basis for his behavior, Cavallo agreed that Paul needed to be forcibly extracted from his jail cell and taken to the hospital.

(FAC at ¶ 195).

The Court denied Defendant Cavallo's motion for summary adjudication on the deliberate indifference to serious medical needs claim. The Court found that Cavallo made an intentional decision with respect to the conditions of confinement when she did not communicate her differential diagnosis to the tactical team and instead agreed with Lawson that Silva was suffering from "excited delirium" from drug use. She made the decision after a brief observation and without a review of Silva's medical files. This is what led to the decision to extract Silva.

1. *Mental Health Examination*

The Court addressed the issue of causation, noting that Plaintiffs' expert, Dr. Venters, testified that "a team led by mental health professionals is needed to attempt to engage with the patient to help de-escalate as well as assess the risk and benefit of physical and chemical restraint." (Order MSJ at 15). He further opined that Silva's behavior was not dramatically worsening, therefore, he thought "it was important to have a mental health consult." (*Id*.).

Defendants' contend this is insufficient evidence to support a finding of causation, and instead argue that Defense expert Dr. Paul Adler stated there was "no psychiatric provider" at the jail that late in the evening, and even if there was, the provider would have the same choice as Cavallo did. (Adler Report Ex F at 8).

Causation requires actual and proximate cause. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). The Court looks to traditional tort law to determine causation, including whether intervening causes have broken the chain of proximate causation. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). "An unforeseen and abnormal intervention ... breaks the chain of causality, thus shielding the defendant from [section 1983] liability." *Id.* (quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir.1989)). However, if the intervening actions were foreseeable, the chain of causation is not broken. *Id.*; *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691-92 (9th Cir. 2019)("the chain of causation is not broken where the intervening decision was foreseeably influenced by the defendant.")

The Court now clarifies that Plaintiffs introduced sufficient evidence to support a finding of causation sufficient to raise a genuine issue of material fact regarding Cavallo's failure to summon a mental health professional to conduct an examination prior to the cell extraction. Dr. Venters clearly indicated that Silva should have had a mental health examination to assist jail staff with stabilizing him and ensuring a proper diagnosis before using lethal force to subdue him. *Thomas v. Newton Int'l Enters*, 42 F.3d 1266, 1270 (9th Cir. 1994) (explaining that expert testimony is itself "sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion"). Accordingly, Defendants' motion for reconsideration regarding the issue of causation is denied, and summary adjudication as to Plaintiffs' Third Cause of Action regarding the failure of Cavallo to request a psychiatric evaluation is denied.

   2. *"Excited Delirium" Diagnosis and Medical Record Review*

In the Third Cause of Action, Plaintiffs also argue that Cavallo's assessment of Silva put him at substantial risk of serious harm because she provided an "inaccurate and medically unsupported 'excited delirium' assessment based on her false belief that Paul was under the influence of drugs (after only a 1-2 minute observation) without bothering

to review Paul's medical records or consult with a qualified doctor or physician." (Oppo. at 12). Agreeing with Lawson's "excited delirium" assessment, Cavallo provided medical confirmation that supported the cell extraction. (*Id.*) Plaintiffs further asserted that there was nothing in the record to establish that Silva would have been exposed to an imminent risk of harm in the negligible amount of time it would have taken to review the medical records. (*Id.*)

The Court Order stated that "it is unclear from the evidence whether searching Silva's medical history for answers to his behavior would have compromised him any further, or whether that information would have changed the tactical team's decision to use extreme force on Silva." (Order MSJ at 14). The Court now clarifies that Plaintiff produced sufficient evidence to raise a genuine issue of material fact.

A plaintiff in a §1983 action must demonstrate that "the defendant's conduct was the actionable cause of the claimed injury" by establishing "both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cr. 2008). Where the "municipal action was the moving force behind the injury of which the plaintiff complains" and such action violated federal law, proof of causation is "straightforward." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997).

As noted in the Order, Plaintiffs' expert, Dr. Venters, reviewed the video of Silva's behavior in the cell and noted that there was time for Cavallo to review Silva's medical records because his behavior was not dramatically worsening, and that it is "really important for security staff to know if they're going to go in and use force" whether the inmate has medical problems. (Ord. MSJ at 14).

The Court further addressed causation by stating:

> [t]here is a genuine issue of material fact whether Cavallo's assessment, done after briefly peering into the cell with no review of medical records, caused Sgt. Lawson to advise Coyne that a cell extraction was required" noting that "Lawson stated that he 'took [Cavallo's] input as part of the consideration" and that he would defer to her opinion if it differed from his, indicating that her opinion carried great weight with regard to medical

> issues. (Lawson Dec. Ex E at 115:13-24). According to Lawson, he recommended that Silva be extracted to Lt. Coyne. (*Id*. at 113:5-10).

(MSJ Ord. at 17).

Plaintiffs supported this conclusion with Cavallo's testimony explaining that she understood there was a possibility that force would be used if a cell extraction was ordered. (*Id*.) As noted previously, further evidence in support of this conclusion was provided by Plaintiff's expert, Dr. Venters, who noted that a tactical team can modify the level of force used against an inmate, and, it was imperative that the team be provided with any pertinent medical information.

Defendants argue that Plaintiffs failed to meet their burden because they produced only hypothetical evidence from Dr. Venters that does not conclusively show the outcome would have changed if Cavallo had not included "excited delirium" in her differential diagnosis. This argument ignores the cumulative evidence showing that Officer Murrow relied on Cavallo's concurrence that Silva was suffering from "excited delirium" when he reported to Coyne, who then ordered the cell extraction. With Dr. Venters expert opinion that Cavallo had time to gather information from Silva's medical file because Silva was not further decompensating, there is sufficient evidence to raise a genuine issue of material fact regarding actual and proximate causation in claim Three. They further contend that Lt. Coyne testified that nothing would have changed her decision to order the forcible extraction, however in the face of probative evidence that raises a genuine issue of fact, Lt. Coyne's testimony merely demonstrates that a determination of credibility is required which is inappropriate on summary judgment. Fed.R.Civ.P. 56. For this reason, the Court denies Defendants' motion for summary adjudication as to Plaintiff's Third Cause of Action for deliberate indifference to medical needs.

3. *Punitive Damages*

In light of the above, there are genuine issues of material fact with regard to Plaintiffs' Third Cause of Action for deliberate indifference. Accordingly, Defendants

motion for summary adjudication of Plaintiffs request for punitive damages on the Third Cause of Action for deliberate indifference is also denied.

### 3. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for reconsideration. The Court Orders as follows:

(1) Defendants' request for summary adjudication of Plaintiff's request for punitive damages in the Fourth Cause of Action for failure to intercede and in the Twelfth cause of action for wrongful death in their motion for reconsideration is **GRANTED**,

(2) In all other respects the motion for reconsideration is **DENIED**

**IT IS SO ORDERED.**

Dated: May 15, 2023

Hon. M. James Lorenz
United States District Judge