1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE ESTATE OF PAUL SILVA, et al.,

Plaintiffs,

v.

CITY OF SAN DIEGO, et al.,

Defendants.

Case No.:  3:18-cv-2282-L-MSB

**ORDER DENYING PLAINTIFFS'
MOTION FOR
RECONSIDERATION
 [ECF NO. 242]**

Pending before the Court is Plaintiffs' Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60 of Order Granting in Part and Denying in Part Defendant City of San Diego's Summary Judgment Motion. Plaintiffs seek limited reconsideration as to claims based on Defendant Officer Murrow's conduct including the Bane Act claim, Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims, and deliberate indifference to a serious medical need claim. (Mot. at 1 [ECF No. 242-1.])

//

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   BACKGROUND

The Court incorporates the statement of facts as contained in the Order Granting in Part and Denying in Part Defendant City of San Diego's Summary Judgment Motion.

## II.   LEGAL STANDARD

A "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Federal Rule of Civil Procedure 60(a).

Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed.R. Civ.P. 60(b).

"A court's power to vacate judgments under Rule 60(b) in order 'to accomplish justice' is balanced against 'the strong public interest in the timeliness and finality of judgments.'" *Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022).

## III.   DISCUSSION

### A.   Bane Act Claim

"The Tom Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). Under the Bane Act, a plaintiff may be awarded damages, injunctive relief, and other "appropriate equitable relief" against a person or persons who "interferes by threats,

1    intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with

2    the exercise or enjoyment by any individual or individuals of rights secured" by federal or

3    state law or the United States or California constitutions. Cal. Civ. Code. § 52.1. To plead

4    a Bane Act claim, a plaintiff must allege that the defendant interfered with his or her

5    constitutional or statutory rights and that the interference was accompanied by actual or

6    attempted threats, intimidation, or coercion. *Id.* "[S]section 52.1 does not require a showing

7    of 'threats, intimidation and coercion' separate from an underlying constitutional

8    violation*." Reese,* 888 F.3d at 1042.  "Any arrest without probable cause involves coercion,

9    and where accompanied by evidence of specific intent to violate the arrestee's Fourth

10   Amendment rights, such an arrest may provide the basis for a Bane Act claim." *Schmid v.*

11   *City and County of San Francisco*, 60 Cal.App.5th 470, 483 (Cal.Ct. Ap. 4th 2021).

12         Plaintiffs contend that the Bane Act claim was improperly dismissed because this

13   Court's determination that Officer Murrow did not have probable cause to arrest Silva is

14   sufficient to show coercion for purposes of the Bane Act. (Mot. at 1). They further contend

15   that Officer Murrow acted with deliberate indifference which satisfies the specific intent

16   requirement for a Bane Act claim. (*Id*. at 2).

17         In its Order denying summary adjudication as to Plaintiff's Bane Act claim, the

18   Court held "[u]nder the totality of the circumstances known to Officer Murrow, who made

19   the arrest, a reasonable jury could find that Officer Murrow did not have probable cause to

20   arrest Silva for being under the influence of methamphetamine." (Ord. MSJ at 12 [ECF

21   No. 240.]) In light of the Court's finding that Officer Murrow did not have probable cause

22   for the arrest, the arrest necessarily involved coercion sufficient to provide the basis for a

23   Bane Act Claim. *See Schmid*, 60 Cal.App.5th at 483. However, as discussed in detail below

24   in Section III.C, Plaintiffs have not sufficiently alleged deliberate indifference, therefore

25   the necessary element of specific intent is not satisfied. *See Luttrell v. Hart*, 2020 WL

26   5642613, *5 (N.D. Cal. 2020)("As to the question of the specific intent inquiry, if a plaintiff

27   adequately pleads a claim for deliberate indifference, which requires a pleading of reckless

28

3:18-cv-2282-L-MSB

1  disregard, then he has sufficiently alleged the intent required for the Bane Act claim.)

2  Accordingly, the Court denies Plaintiffs motion for reconsideration on this claim.

3  **B.      Americans with Disabilities Act and Rehabilitation Act Claim**

4  Title II of the ADA provides that "no qualified individual with a disability shall, by

5  reason of such disability, be excluded from participation in or be denied the benefits of the

6  services, programs, or activities of a public entity, or be subjected to discrimination by any

7  such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that

8  "[n]o otherwise qualified individual with a disability shall, solely by reason of her or his

9  disability, be excluded from the participation in, be denied the benefits of, or be subjected

10 to discrimination under any program or activity receiving Federal financial assistance." 29

11 U.S.C. § 794(a). Under both Title II of the ADA and the RA, discrimination on the basis

12 of disability by state or local governments or their instrumentalities is prohibited but the

13 RA applies specifically to programs receiving federal funding. *See* 42 U.S.C. §

14 12131(1)(B); 29 U.S.C. § 794(b). Public entities are vicariously liable for the acts of their

15 employees under both acts. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th

16 Cir.2001). "There is no significant difference in analysis of the rights and obligations

17 created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of Cal.*, 166

18 F.3d 1041, 1045 n. 11 (9th Cir.1999). As a result, courts apply the same analysis to claims

19 under both statutes.

20 Two types of ADA claims are applicable to arrests:

21 (1) wrongful arrest, where police wrongly arrest someone with a disability
   because they misperceive the effects of that disability as criminal activity;
22 and (2) reasonable accommodation, where, although police properly
   investigate and arrest a person with a disability for a crime unrelated to that
23 disability, they fail to reasonably accommodate the person's disability in the
   course of investigation or arrest, causing the person to suffer greater injury
24 or indignity in that process than other arrestees.
25

26 *Sheehan v. City and County of San Francsico,* 743 F.3d 1211, 1232 (9th Cir. 2014)

27 (rev'd on other grounds *City and County of San Francisco v. Sheehan*, 575 U.S.

28 600 (2015).

1  Plaintiffs argue that the Court omitted any discussion of Plaintiffs' wrongful arrest

2  claim under the ADA despite finding all the necessary elements pursuant to *Orr v.*

3  *California Highway Patrol*, 2015 WL 848553, at *17 (E.D.Cal. Feb 26, 2015). (Mot. at 5).

4  Plaintiffs further contend that Defendants did not meet their burden under the ADA to show

5  that accommodation was not feasible. (*Id*. at 6). In addition, Plaintiffs claim that Officer

6  Murrow acted with deliberate indifference by choosing not to transport Silva to a hospital.

7  (*Id*.)

8      *1. Wrongful Arrest*

9  In the Complaint, Plaintiffs do not specifically assert that Silva was wrongfully

10  arrested under the ADA but instead argue that SDPD "assumed Paul's symptoms of

11  schizophrenia were symptoms of drug use" and administered field sobriety tests which a

12  schizophrenic patient cannot pass despite being aware that the call was for "5150"

13  indicating a mental health crisis.  (FAC at ¶ 384).  In addition, Plaintiffs argue that

14  Defendants were deliberately indifferent to Silva's serious medical condition and failed to

15  communicate his condition. (*Id*. at ¶ 388). As a result of these actions, Plaintiffs claim that

16  Defendants failed to provide a reasonable accommodation. In their Opposition to City

17  Defendants summary judgment motion, Plaintiffs more fully address this claim and assert

18  that Silva was wrongfully arrested under the ADA because:

19      Defendants knew from their training that psychiatric conditions may mimic
20      drug use or impairment. Officers are trained to "determine whether the
    impairment is drug or medically related." People with psychiatric disabilities
21      "may be acting in a 'bizarre' manner simply because they are not taking
    their medication. The DRE training manual itself informs officers that the
22      DRE exam protocol is not very accurate in determining stimulant
    intoxication, effective only in 33 percent of the time. Paul was arrested
23      because he spoke rapidly; had disorganized thought; was sweating as a result
    of wearing layers of winter clothes in hot weather; and because he had bad
24      hygiene having been out all night on the streets getting into neighbors'
25      garbage. These are all symptoms and indicators of mental illness as
    illustrated by the previous incident in which the PERT officers took Paul in
26      for evaluations under 5150 for exhibiting these same symptoms.

27

28

(Oppo. at 31-32 [ECF No. 225].)

In light of these facts, Plaintiffs argue that "a reasonable juror could determine that the officers should have known that Paul was disabled, and that they arrested him for legal conduct related to his disability." (*Id*. at 31).

Plaintiffs have not cited binding authority to support their argument. While district courts within the Ninth Circuit have concluded that, "[t]o prevail on a theory of wrongful arrest under the ADA, [a plaintiff] must prove that (1) he was disabled; (2) the officers knew or should have known he was disabled; and (3) the officers arrested him because of legal conduct related to his disability," there is no controlling precedent which adopts this rule. *See generally Lawman v. City & County of San Francisco*, 159 F. Supp. 3d 1130, 1147 (N.D. Cal. Feb. 5, 2016*); Orr*, 2015 WL 848553, at *17. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Green*, 563 U.S. 692, 709 n.7 (2011). Accordingly, the Court declines to analyze the claim under this standard.

Moreover, the Ninth Circuit has stated that a plaintiff seeking to recover on a wrongful arrest under the ADA claim needs to "prove intentional discrimination on the part of the defendant." *Duvall*, 260 F.3d at 1138. "This standard is met through a showing of 'deliberate indifference,' which 'requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that ... likelihood.'" *O'Doan v. Sanford*, 991 F.3d 1027, 1045 n.3 (9th Cir. 2021). As discussed below, Plaintiffs have failed to raise a genuine issue of material fact regarding deliberate indifference, therefore, the Court denies Plaintiffs' motion for reconsideration on this ground.

### 2. Reasonable Accommodation

Plaintiffs contend that Officer Murrow did not provide a reasonable accommodation because Murrow did not take Silva to the County Jail "to receive psychiatric or medical services," but instead it was to punish Silva for being under the influence of narcotics.

1    (Mot. at 6). Plaintiffs note that SDPD had transported Silva to a mental hospital in the past,

2    and Silva's mother requested he be transported to a mental hospital, which showed that

3    there was an accommodation available, yet Defendants did not meet their burden to show

4    that the requested accommodation was not feasible or would fundamentally alter the nature

5    of the service, program, or activity, citing 28 C.F.R. § 35.130(b)(7) and *Wong v. Regents*

6    *of University of California*, 192 F.3d 807 (9th Cir. 1999). (*Id*.) Plaintiffs contend that they

7    do not need to show that Officer Murrow intended to harm Silva, but instead can show that

8    Defendants are liable under the ADA because they were deliberately indifferent when they

9    failed to provide a reasonable accommodation to Silva. (*Id*. at 7).

10        The Court held:

11        Plaintiffs argue that "a reasonable accommodation under the ADA was for
          Defendant to take Paul in for mental health treatment as the police had done
12        before", but Officer Murrow transported him to the County Jail where both
          medical and psychiatric services were ostensibly provided. Though he did
13        not take Silva to a psychiatric hospital, the ADA "prohibits discrimination
          because of disability, not inadequate treatment for disability." *Simmons*, 609
14        F.3d 1022.
15

16    (Ord. MSJ at 31-32).

17

18        Whether Officer Murrow recognized Silva's symptoms as indicative of a psychiatric

19    break, or indicative of controlled substance use, a reasonable juror could conclude that

20    Officer Murrow provided a reasonable accommodation by taking Silva to the County Jail

21    because both psychiatric and medical services were available. Moreover, Defendants were

22    not required to rebut Plaintiff's assertion that the requested accommodation, taking Silva

23    to a hospital, was not feasible.  Plaintiffs cite *Wong* in support of their argument. In *Wong*,

24    a medical student was dismissed from the academic program despite a diagnosed learning

25    disability.  192 F.3d at 813. The Court found that Wong was required to establish a prima

26    facie case of discrimination based on his disability by producing "evidence that: (1) he is

27    'disabled' as the Acts define that term; (2) he is qualified to remain a student at the School

28    of Medicine, meaning that he can meet the essential eligibility requirements of the school

with or without reasonable accommodation; (3) he 'was dismissed solely because of [his] disability;' and (4) the school 'receives federal financial assistance (for the Rehabilitation Act claim) or is a public entity (for the ADA claim).'" *Id*. at 816. When analyzing the second element, the Court stated that "Wong bears the 'initial burden of producing evidence' both that a reasonable accommodation exists **and** that this accommodation 'would enable [him] to meet the educational institution's essential eligibility requirements.'" *Id*. at 816-17(emphasis added). Once that evidence is produced, the burden shifts "to the University to produce rebuttal evidence that either (1) the suggested accommodation is not reasonable (because it would substantially alter the academic program), or (2) that the student is not qualified (because even with the accommodation, the student could not meet the institution's academic standards)." *Id*. at 817.

Here, Plaintiffs claim that they have met their burden to show that a reasonable accommodation existed because they showed that Silva had been transported to the hospital multiple times in the past and Silva's mother asked that police take him to the hospital therefore the burden shifted to Defendants to rebut this conclusion. Assuming arguendo that Plaintiffs' have shown that taking Silva to the hospital was a reasonable accommodation, Plaintiffs have not satisfied the second prong to show that "this accommodation 'would enable [him] to meet the educational institution's essential eligibility requirements,'" or some equivalent to Silva's situation. *Wong*, 182 F.3d at 816-17. Plaintiffs omitted discussion of this prong and have not shown an equivalent in the present case, therefore, the burden did not shift to Defendant to produce rebuttal evidence. Accordingly, Plaintiffs' motion for reconsideration is denied as to this ground.

### 3. Animus or malice

Plaintiffs further contend that there is no need to prove that Officer Murrow intended to harm Silva in order to show that Defendants are liable for damages under Title II of the ADA because Plaintiffs can show that Defendants acted with deliberate indifference by failing to provide reasonable accommodation to a disabled person. (Mot. at 7). Because the Court found that Officer Murrow provided a reasonable accommodation to Silva by taking

1  him to a facility where both psychiatric and medical services were provided, Plaintiffs have

2  failed to show that he acted with deliberate indifference under Title II of the ADA.

3  Plaintiffs' motion for reconsideration is denied on this ground.

4      C.      **Deliberate Indifference to Serious Medical Needs**

5  "[C]laims for violations of the right to adequate medical care 'brought by pretrial

6  detainees against individual defendants under the Fourteenth Amendment' must be

7  evaluated under an objective deliberate indifference standard." *Gordon v. County of*

8  *Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). "[T]he plaintiff must prove more than

9  negligence but less than subjective intent—something akin to reckless disregard." *Id*. at

10  1125. "The requisite causal connection can be established not only by some kind of direct

11  personal participation in the deprivation, but also by setting in motion a series of acts by

12  others which the actor knows or reasonably should know would cause others to inflict the

13  constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978). "An

14  unforeseen and abnormal intervention ... breaks the chain of causality, thus shielding the

15  defendant from [section 1983] liability." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837

16  (9th Cir. 1996).

17      Plaintiffs seek reconsideration of this Court's determination that the actions of the

18  County Jail broke the chain of causation on Plaintiffs deliberate indifference claim

19  regarding Officer Murrow's actions for the following reasons: (1) the Court applied a

20  subjective standard instead of an objective standard with regard to Officer's Murrow's

21  belief that Silva would receive medical and psychiatric care in the County Jail; (2) there is

22  a material fact for the jury's determination regarding whether Murrow's failure to

23  communicate Silva's schizophrenia to the Jail constituted deliberate indifference; and (3)

24  under the "eggshell skull" doctrine, Silva was a particularly vulnerable person and the

25  foreseeability  requirement does not apply. (Mot. at 8-9). Plaintiffs contend there are

26  material issues of fact which only a jury should determine regarding whether the actions of

27  County staff were foreseeable. (Mot. at 8).

28

3:18-cv-2282-L-MSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14

The Court analyzed Plaintiffs argument under the deliberate indifference standard set forth in *Gordon*, finding: "[t]he first and second elements of deliberate indifference are met here because the evidence shows that Officer Murrow made an intentional decision to arrest Silva for being under the influence of methamphetamine, rather than as a mental health hold, and this decision put Silva at substantial risk of not receiving the appropriate medical care for his schizophrenia." (Order MSJ at 19). However, the Court determined that "Plaintiff has produced no evidence to support the conclusion that Officer Murrow knew or should have known that failing to inform the intake nurse that Silva was an untreated schizophrenic would result in the County neglecting him and performing a forcible extraction that cause Silva's death." (*Id*. at 18-19). The Court found that although Officer Murrow failed to report any information about Silva's untreated schizophrenia to the Jail, the actions of the County in failing to treat Silva and resorting to a forcible cell extraction were determined to be an unforeseen and abnormal intervention that broke the chain of causality. (*Id*. at 20).

15
16
17
18
19
20
21
22
23

As a primary matter, it was objectively reasonable for an officer to believe that Silva would receive medical and psychiatric treatment, if needed, at the Jail. The Jail handles "those with serious medical challenges, those under psychiatric care" and "provides a wide range of medical and psychiatric services, including on-site dialysis, infectious disease control, and dental care. Services are provided by physicians, psychiatrists, dentists, nurses, and clinical social workers. SDCJ's Psychiatric Stabilization Unit is the largest acute psychiatric treatment facility in San Diego County." San Diego Sheriff's Department, San Diego Central Jail, https://www.sdsheriff.gov/Home/Components/FacilityDirectory/FacilityDirectory/58/.

24
25
26
27
28

Next, Plaintiffs argue that the events leading up to Silva's decompensation and eventual death were "created by Murrow's reporting to the Jail that Paul was under the influence of narcotics" claiming without support that whether something is a foreseeable or unpredictable event is a question of fact for a jury to decide. However, a court may determine whether actions are foreseeable based on the facts at bar, and here, the Jail was

10

aware of Silva's schizophrenia diagnosis through independent means. *See Van Ort*, 92 F.3d at 837. The intake nurse, Anthony Adraneda, was informed by Silva that he had schizophrenia and had been previously treated in a psychiatric hospital, and Adraneda conducted a review of Silva's records which confirmed Silva's self-reported schizophrenia. Adraneda told Silva he would refer him to a psychiatric doctor. Silva was not treated as a detainee under the influence who would be placed in a "sobering cell" but instead Silva was moved from one temporary holding cell to another for over 36 hours with no toilet paper, weather appropriate clothing, bedding or food. Under this set of facts, a reasonable juror could find that the causal chain was broken. Accordingly, Plaintiffs motion for reconsideration is denied on this ground.

Finally, Plaintiffs "eggshell skull" argument is not supported by sufficient facts to show that Defendant inflicted harm upon Silva which resulted in liability for further physical injury, therefore the Court does not address Plaintiffs' foreseeability argument and the motion for reconsideration is denied on this ground. *Gibson v. County of Washoe*, 290 F.3d 1175, 1192-93 (9th Cir. 2002)(overruled on other grounds in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Reconsideration.

**IT IS SO ORDERED.**

Dated:  May 22, 2023

Hon. M. James Lorenz
United States District Judge

11

3:18-cv-2282-L-MSB